UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

In re:

PRIME CAPITAL VENTURES, LLC,

                          Debtor.

Case No. 24-10531 (REL)
Chapter 11

---

PAUL A. LEVINE, as the permanent receiver of Prime Capital Ventures, LLC, CHRISTIAN H. DRIBUSCH, as the Chapter 7 trustee of Kris Daniel Roglieri, and COMPASS-CHARLOTTE 1031, LLC

                          Appellants,

       v.

B AND R ACQUISITION PARTNERS, LLC
and JHM LENDING VENTURES, LLC,

                          Appellees.

Civil Case No. 24-cv-00939-(MAD)

## JOINT MOTION FOR STAY PENDING APPEAL

Paul A. Levine, the permanent receiver (the "Receiver") of Prime Capital Ventures, LLC (the "Debtor" or "Prime") appointed by Order dated January 24, 2024 of Judge Mae A. D'Agostino of the United States District Court for the Northern District of New York, Christian H. Dribusch, the Chapter 7 trustee (the "Trustee") of Kris Daniel Roglieri ("Roglieri"), and Compass-Charlotte 1031, LLC ("Compass", and collectively with the Receiver and the Trustee, the "Movants"), by and through their respective undersigned counsel, and pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby respectfully request a stay of the Memorandum Decision and Order entered by the United States Bankruptcy Court for the Northern District of New York in the captioned case on July 23, 2024, which dismissed Prime's bankruptcy case [Bankruptcy Docket No. 85] (the "Dismissal Order"), so that the Movants can prosecute the

above-captioned appeal (the "Appeal").   In support of this Motion, the Movants rely on the
*Declaration of Paul A. Levine in Support of Joint Motion for Stay Pending Appeal* (the "Receiver
Declaration"), filed contemporaneously herewith.   In further support of the Motion, the Movants
respectfully state and represent as follows:

## BANKRUPTCY RULE 8007(b)(2) STATEMENT

1.      In accordance with Bankruptcy Rule 8007, the Movants respectfully request a brief
stay of the Dismissal Order pending appeal therefrom.

2.      Bankruptcy Rule 8007(b)(2) requires that a motion to the district court seeking a
stay pending appeal from a bankruptcy court order must "(A) show that moving first in the
bankruptcy court would be impracticable; or (B) if a motion was made in the bankruptcy court,
either state that the court has not yet ruled on the motion, or state that the court has ruled and set
out any reasons given for the ruling."

3.      In this case, the Bankruptcy Court *sua sponte* considered a stay pending appeal and
held in the Dismissal Order that it would not grant a stay pending appeal but nevertheless stayed
the Dismissal Order "until August 2, 2024, at 4:00 p.m., to provide any aggrieved party time to
seek a stay from the District Court."  *See* Dismissal Order, pg. 14-16.

## PRELIMINARY STATEMENT

4.      As demonstrated below, the Movants here satisfy the four-part test applied by
courts in this Circuit to grant a stay pending appeal.  First, absent a stay, Movants will suffer
irreparable harm, as the automatic bankruptcy stay of 11 U.S.C. § 362 will be lost and may not be
retroactively imposed, even if the Dismissal Order is set aside and Prime's bankruptcy case is
reinstated.  Without the stay, (a) the valuable multimillion dollar preference action against the
Appellees will be forfeited, (b) numerous and disparate litigations against Prime will be allowed

to proceed in an unbridled race to the courthouse, (c) Prime's creditors (the apparent victims of a pervasive Ponzi scheme) will be deprived of the equality of treatment that bankruptcy provides, and (d) estate assets will be dismembered on a piecemeal basis.  Moreover, this could render the Movants' Appeal equitably moot and deprive the Movants of the ability to obtain appellate review of the serious legal questions to be determined.

5.      Second, neither the Appellees nor any other party-in-interest would suffer harm if a stay pending appeal is granted because (a) the real property upon which the Appellees have a lien is insured and, by definition, is not going anywhere, and may possibly appreciate in value; and (b) the Movants only seek a brief stay of the Dismissal Order, as the Movants will seek to expedite the Appeal to the extent the stay is granted.

6.      Third, the Movants' Appeal has a substantial likelihood of success on the merits. The Appeal can be quickly and easily resolved by this Court interpreting its own Receiver Order and confirming that the Receiver had authority to file a bankruptcy case for Prime.  But even if the Appeal is not resolved on that basis, the Dismissal Order is also fatally flawed in that it, among other things, (i) entirely misses key provisions in a Delaware statute, (ii) fails to address or discuss bankruptcy preemption of that Delaware statute, and (iii) is contrary to substantial case law.  If the Bankruptcy Court's reasoning is upheld, the draconian and unthinkable result will be that neither the Receiver, the Trustee, nor Roglieri can file a bankruptcy case for Prime.  All creditors, other than B&R, lose.

7.      Finally, the public interest also weighs in favor of a stay.  Absent entry of a stay pending Appeal, the Movants may be deprived of the opportunity to obtain appellate review of the legal issues addressed in the Dismissal Order in this significant Ponzi scheme case.  Eliminating the Movants' appellate rights would run contrary to public policy and would seriously hurt all

3

other creditors of Prime, other than B&R.  For the reasons set forth herein, the Motion should be granted.

## BACKGROUND

8.      On January 12, 2024, this Court appointed Paul A. Levine to act as temporary receiver with, among other things, exclusive dominion and control over all of the assets, books and records, operations, and business affairs of the Debtor.  *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al., Case No. 24-cv-00055* [Docket No. 12] (MAD/DJS) (N.D.N.Y. 2024) (the "Temporary Receiver Order").[1]  This Court subsequently made Paul Levine's appointment permanent in a January 24, 2024 order [Compass Docket No. 56] (the "Permanent Receiver Order").  A copy of the Permanent Receiver Order is attached to the Receiver Declaration hereto as ***Exhibit A.***

9.      The receiver orders were entered upon the request of Compass.  Compass is one of the largest creditor victims (if not the largest) of Prime and its Ponzi / fraud scheme, with a claim in the principal amount of at least $15,902,250 for a deposit tendered to Prime, but not returned despite demand.  The Receiver has identified dozens of creditors like Compass, who entered into agreements for Prime to fund non-recourse, asset-backed lines of credit whereby the borrower would pay the Debtor an interest credit account payment (each, an "ICA Deposit").  The ICA Deposits identified by the Receiver that have not been returned by Prime to date are upwards of $100 million.

10.     One of the major assets of Prime over which the Receiver was appointed is a luxury home located at 600 Linkhorn Drive, Virginia Beach, Virginia (the "Virginia Beach House") which Prime purchased in January 2023 for $3,750,000 in cash.

---

[1] References to the docket of *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al., Case No. 24-cv-00055* will be cited here in as "[Compass Docket No__]."

18138621.v8

11.     On January 15, 2024 (*after* this Court entered the Temporary Receiver Order), B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (together, "B&R" or the "Appellees") obtained an arbitration award against Prime related to an ICA Deposit they paid which Prime did not return (similar to Compass).   On February 8, 2024 (*after* this Court entered the Permanent Receiver Order, the Appellees then obtained a February 8, 2024 judgment confirming the arbitration award against Prime in the amount of $4,300,000, plus interest and costs, from the New York Supreme Court County of Albany (Index No. 900844-24) (the "B&R Judgment").

12.     On February 9, 2024, the Receiver, in an attempt to protect the assets of Prime for the benefit of all its creditors, filed a motion for an anti-litigation injunction to stay other litigation and collection efforts against Prime.  [Compass Docket No. 118].   On March 19, 2024, This Court denied that motion as not necessary at the time, while recognizing that a stay could be necessary in circumstances where the lack of a stay would lead to "a charge en masse of creditors . . . before the receivership resource pool dries up without so much as a trickle of future income left behind for those too slow in acting to redress their own rights."   [Compass Docket No. 160 at 57-58] (internal citation omitted).  A copy of the March 19, 2024 Decision and Order is attached to the Receiver Declaration as ***Exhibit B***.

13.     On February 15, 2024, Kris Roglieri, the 100% member of Prime, filed a Chapter 11 bankruptcy petition [Case No. 24-10157, Bankr. N.D.N.Y.] (the "Roglieri Bankruptcy Case"), thereby forming a bankruptcy estate of all his assets.

14.     On February 28, 2024, the Appellees domesticated the B&R Judgment to Virginia where it attached as a lien against the Virginia Beach House.

15.     Realizing that the Virginia Beach House would be lost as an asset of the receivership estate if no action were taken (and recognizing that this Court had directed the parties not to file further motions, such as seeking a stay against B&R proceeding with executing on its judgment, pending the Second Circuit appeal challenging the Receiver Order) [Compass Docket Nos. 160 and 163], the Receiver took steps to try to preserve the Virginia Beach House for all of Prime's creditors.  Specifically, on May 14, 2024 (the "Prime Petition Date"), the Receiver filed a voluntary petition on behalf of the Debtor for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"), thereby commencing Prime's chapter 11 case (the "Prime Chapter 11 Case").

16.     As stated in the First Day Declaration (defined below), the precipitating cause of the Receiver filing this bankruptcy case for Prime was the need to commence proceedings within the 90-day preference period under § 547 of the Bankruptcy Code in order to be able to avoid the lien of the B&R Judgment against the Virginia Beach House and preserve its multi-million-dollar value for the benefit of all Prime's creditors.

17.     On May 15, 2024 (the day after the Prime bankruptcy was filed), the Bankruptcy Court granted the uncontested request of the U.S. Trustee, Compass and other creditors to convert the Roglieri Bankruptcy to Chapter 7.   At the same time, the Bankruptcy Court also appointed the Trustee as the chapter 7 trustee with full authority over all assets of Roglieri's bankruptcy estate; including his 100% interest in Prime.

18.     The Trustee thereafter ratified the filing of the Prime Chapter 11 Case pursuant to a statement of ratification filed with the Bankruptcy Court on July 9, 2024, a copy of which is attached to the Receiver Declaration as ***Exhibit C***.

18138621.v8

19.     More detailed information regarding the Debtor's history, business operations, and the events leading up to the Chapter 11 Case is set forth in the *Declaration of Paul A. Levine Regarding the Debtor's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, which was filed on the Prime Petition Date and is incorporated herein by reference [Bankruptcy Docket No. 5] (the "First Day Declaration").  A copy of the First Day Declaration is attached to the Receiver Declaration as ***Exhibit D***.

20.     On July 23, 2024, the Bankruptcy Court issued the Dismissal Order upon the motion of the Appellees.  In the Dismissal Order, the Bankruptcy Court determined that it would not grant a stay pending appeal but did stay the effectiveness of its order to August 2, 2024.  A copy of the Dismissal Order is attached to the Receiver Declaration as ***Exhibit E***.

21.     On July 29, 2024, Movants filed a Notice of Joint Appeal of the Dismissal Order.

## RELIEF REQUESTED

22.     By this Joint Motion, Movants request that this Court enter an order, in substantially the form attached as ***Exhibit F*** to the Receiver Declaration, staying the effectiveness of the Dismissal Order pending resolution of the Movants' appeal.

## STANDARD OF REVIEW

23.     The Second Circuit has adopted a four-part test for evaluating a motion for a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected."  *See, e.g. Country Squire Assocs. of Carle Place, L.P. v. Rochester Cmty. Savs. Bank (In re Country Squire Assocs. of Carle Place, L.P.)*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (citing *Hirschfeld v. Bd. Of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)).

24.     Movants demonstrate all four of the factors below and respectfully submit that a stay pending resolution of the Movants' Appeal is warranted and should be granted.

## ARGUMENT

### I.     Risk of Irreparable Injury to Prime Estate Absent a Stay

25.     Movants face irreparable harm if a stay is not entered because the loss of appellate rights "cannot be redressed by a legal or equitable remedy following a trial." *In re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012); *see also Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm exists "where, but for the grant of the equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").

26.     Courts have routinely found irreparable harm in circumstances where a party may be deprived of appellate rights if a stay is not entered. *See ACC Bondholder Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y.2007) (holding that "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied" (emphasis in original)); *see also In re Country Squire*, 203 B.R. at 183 (staying a foreclosure sale where it was "apparent that absent a stay pending appeal . . . the appeal will be rendered moot," resulting in a "quintessential form of prejudice" to [the appellant]"); *In re St. Johnsbury Trucking Co*., 185 B.R. at 690 (finding significant irreparable injury where denying a stay would threaten government's ability to appeal a bankruptcy court's decision); *Lutin v. U.S. Bankr. Ct.* (*In re Advanced Mining Sys., Inc.*), 173 B.R. 467, 468-69 (S.D.N.Y. 1994) (finding irreparable injury prong met where, absent a stay of the bankruptcy court's order, the distribution of assets to creditors would moot any appeal); *cf. In re "Agent Orange" Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986) (declining to lift the court's

own stay of the implementation of a district court's scheme for the distribution of a settlement award because "[p]arties objecting to the settlement and the distribution scheme have a right to appellate review," and "[d]istribution of the challenged settlement award before its validity has been tested would deprive those parties of that right.").

27.     In this case, the Dismissal Order contains significant and controversial legal rulings that the Movants respectfully submit constitute reversible error, or at a minimum, present serious questions of law.  If the Court does not grant the requested stay, the assets of the Debtor's estate may no longer be available to be administered for the benefit of all creditors.  Rather, it is likely that the Debtor's numerous creditors will each seek to enforce their respective interests against the Debtor's assets causing the proverbial "race to the courthouse" (or the "charge en masse of creditors", as stated in this Court's prior order).  Should this occur, the Debtor's estate, the assets of which should be administered for the benefit of all creditors, faces a risk of substantial monetary loss because it is probable that only a select few creditors will realize any benefit from the disposition of the Debtor's assets, resulting in some creditors potentially receiving no recovery on account of their claims against the Debtor.  Indeed, with regard to Compass, this Court has already held that Prime's insolvency and Compass' risk of an unenforceable judgment satisfies the irreparable harm test for Compass.  [*See* Compass Docket No. 160, at 25 ("[I]t is the Court's opinion that Prime Capital's insolvency is likely and imminent such that a judgment could not be enforced against it and Plaintiff would, in turn, be irreparably harmed.")].

28.     Further, the bankruptcy automatic stay, once lost, may not be retroactively imposed even if the Dismissal Order is set aside and the Debtor's bankruptcy case is reinstated. *See In re Lomagno*, 320 B.R. 473 (1st BAP 2005) ("In an analogous situation, since reopening a case does not "undo" any of the statutory consequences of the closing of a case, the automatic stay is not

retroactively reinstated upon a case being reopened."); *see also De Jesús Saez*, 721 F.2d 848, 851–52 (1st Cir. 1983) (holding that dismissal of bankruptcy case lifted automatic stay and permitted foreclosure sale even where dismissal was later reconsidered); *Weston v. Rodriguez (In re Weston)*, 110 B.R. 452 (E.D.Cal.1989), *aff'd*, 967 F.2d 596 (9th Cir.1992) (holding that foreclosure sale after dismissal was not violation of automatic stay even where dismissal was reversed on appeal and bankruptcy reinstated); *In re Shaw*, 16 B.R. 875 (9th Cir. BAP 1982) (when bankruptcy court entered order of dismissal, automatic stay was immediately terminated); *G.E. Capital Mortg. Servs. v. Thomas (In re Thomas)*, 194 B.R. 641 (Bankr.D.Ariz.1995).

29.     This means that once out, the cat likely cannot be put back in the bag.  Should the Appellees, or any other creditors, foreclose on the Virginia Beach House or seize any other assets of Prime, it may not be possible to undo such actions.  Indeed, it is even possible that a foreclosure of the Virginia Beach House could moot the appeal.  *See Lashley v. First Nat'l Bank of Live Oak (In re Lashley)*, 825 F.2d 362 (11th Cir.1987) (holding that automatic stay could not be retroactively applied to void foreclosure sale).  Thus, although Movants do not concede that this Appeal would be definitively mooted by the termination of the Stay, the mere risk that this Appeal *could* be mooted supports a finding of irreparable harm to the Debtor's estate.  *See In re St. Johnsbury Trucking Co.*, 185 B.R. 687, 690 (S.D.N.Y. 1995).  Such risk is a "quintessential form of prejudice."  *In re Adelphia*, 361 B.R. at 348 (citations omitted).  Irreparable harm also clearly exists as to Compass who could be left with an uncollectible claim against a clearly insolvent Debtor, while other creditors, but in particular the Appellees, freely make off with the Debtor's limited assets.

30.     Additionally, as disclosed in the Debtor's schedules, an excerpt of which is attached to the Receiver Declaration as ***Exhibit G***, the Debtor is a defendant in numerous lawsuits.  Absent

this Court granting the Stay, such lawsuits would be authorized to resume immediately, forcing the Debtor to defend such lawsuits simultaneously at great legal expense resulting in irreparable harm to the Debtor and the Debtor's estate.  As this Court stated in *State Employees Federal Credit Union*, "[t]he potential mooting of an appeal, coupled with the risk of substantial monetary loss, is sufficient to establish irreparable injury." *State Emps. Fed. Credit Union v. S.G.F. Properties, LLC*, No. 1:15-CV-00418 (MAD), 2015 WL 7573220, at *3 (N.D.N.Y. Nov. 25, 2015) (*citing, In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992)).

31.     In light of the foregoing, it is indisputable that, absent a stay, Movants will suffer irreparable harm.

## II.     No Harm will Result to the Appellees if the Motion is Granted

32.     While the denial of the stay would irreparably harm Movants, the entry of an order staying the Dismissal Order will not cause substantial injury to any other party to this proceeding, including the Appellees.

33.     In determining whether any party in interest will suffer "substantial" injury if a stay is granted, a court must balance the injury to the non-moving party-in-interest with the injury to the party that will be irreparably harmed absent a stay.  *See In re Country Squire Assocs*., 203 B.R. 182, at 184 ("In measuring whether any such injury would be 'substantial,' it is appropriate to compare it with the irreparable harm [movant] will suffer if the foreclosure sale is not stayed."); *see also In re Adelphia*, 361 B.R at 352-54, 368 (granting a stay of effectiveness of plan confirmation despite finding that the stay would result in substantial financial injury to non-movants).

18138621.v8

34.     Here, in contrast to the irreparable harm that the Debtor and its estate will suffer if the stay is not granted, other parties-in-interest, including the Appellees, will suffer little or no harm.

35.     The Virginia Beach House is one of the Debtor's main assets available to repay its many creditor victims.  Upon information and belief, the Virginia Beach House is not vacant, and not at risk of deteriorating in value during the time needed for Movants to prosecute this Appeal. The Receiver has paid for insurance on the Virginia Beach House and will maintain that insurance pending the Appeal.  The insurance is fully paid for through January 31, 2025.[2]  Moreover, other than the Appellees' lien and a notice of pendency filed by the Receiver, the Virginia Beach House is unencumbered, so entry of a stay pending resolution of this Appeal will not result in harm to any other creditor constituencies.  Further, the Appellees have not commenced foreclosure or judgment enforcement proceedings, so a stay will not stop any ongoing action.

36.     What is clear, however, is that the interests of Movants and the Appellees are perfectly aligned with regard to the treatment of the Virginia Beach House, *i.e.* it needs to be sold so that the cash proceeds are available for payment to creditors.  The only place at which the parties part ways is *after* the property is turned into cash, with the Appellees wanting 100% of the funds for themselves and Movants wanting the funds available for all similarly situated creditor victims on a *pro rata* basis (as would be the case if the Dismissal Order is reversed and the Prime Bankruptcy allowed to continue).  The most that the Appellees could argue in the way of harm is that a stay would delay turning the Virginia Beach House into cash.  Not only is such time delay not "substantial" harm, but it can easily be cured by allowing the Receiver to move forward with a sale of the Virginia Beach House pending the Appeal, with the proceeds being deposited with

---

[2] A copy of the current insurance policy is attached to the Receiver Declaration as ***Exhibit H***.

18138621.v8

the Court for disposition.  This would ensure that no time would be lost pending Appeal for any party, including the Appellees.  Proceeding in this manner would be more likely to maximize the value of the Virginia Beach House than would a judgment execution sale.

37.     In sum, the Debtor and its estate will be irreparably injured if the requested stay is not granted, while no parties-in-interest will be injured if the stay is granted.

**III.     Movants are Likely to Succeed on Appeal**

38.     The Movants are likely to succeed on the merits of this appeal because the Dismissal Order is clearly wrong in multiple material respects.

**A.  *The Bankruptcy Court Missed Key Language in a Statute*.**

39.     *First*, the Bankruptcy Court erroneously held that the Trustee is unable to ratify the bankruptcy filing of Prime because "Roglieri ceased to be a member of Prime upon filing" of Roglieri's personal bankruptcy petition.  *Dismissal Order* at 12.  To reach that conclusion, the Bankruptcy Court stated: "Under Delaware law, '[a] person ceases to be a member of a limited liability company upon' the filing of a voluntary bankruptcy petition."  6 Del. C. § 18-304(1)(b) Id.  While this is a correct quotation from the statute, it is an *incomplete* quotation and misses key language which entirely changes the outcome when dealing with an LLC owned by a single member.

40.     The full relevant language of 6 Del. C. § 18-304 reads as follows:

> A person ceases to be a member of a limited liability company upon the happening of any of the following events:
>
> (1) Unless otherwise provided in a limited liability company agreement, **or with the consent of all members**, a member: . . .
>
> (b) Files a voluntary petition in bankruptcy . . . .

(Emphasis added).

41.     As discussed above, Roglieri filed his own voluntary bankruptcy petition with the Bankruptcy Court.  In doing so, as the 100% member of Prime, he clearly gave consent to his own voluntarily filed petition such that his filing was "with the consent of all members" of Prime because he is the only member of Prime.  The provisions of § 18-304 are similar to provisions in most LLC statutes and are designed to protect partners from being forced into business with unknown third parties.  If Prime had been a multi-member entity, the analysis would be different. But since it was 100% owned by Roglieri, the statute is clear that the bankruptcy filing did <u>not</u> terminate Roglieri's membership interest in Prime.

42.     The Bankruptcy Court clearly erred by missing the "or with consent of all members" language of the statute.[3]

43.     Indeed, any other interpretation of the statute would lead to absurd results in the context of a single member LLC.  The practical effect of the Bankruptcy Court's ruling would be that <u>no one</u> could file a voluntary bankruptcy for Prime - not the Receiver (as the Bankruptcy Court ruled the Receiver Order is not broad enough); not Roglieri (as the Bankruptcy Court ruled that he was divested of being a member of Prime by virtue of his bankruptcy filing); and not the Trustee (as his rights are limited to the rights of Roglieri, as he steps into Roglieri's shoes).  Putting bankruptcy aside, the lower court's determination would leave a single member LLC where its member filed a bankruptcy petition, rudderless and without a person to manage its affairs to do such things as continue its business, pay its taxes, and the myriad other things that businesses do every day.  Imagine the situation where an individual who is a single member of a profitable LLC is forced to file a bankruptcy case for reasons unrelated to that LLC.  Under the lower court's

---

[3] No party below argued that Roglieri ceased to be a member of Prime upon Roglieri's personal bankruptcy filing, and this proposition appeared for the first time in the Dismissal Order.  Indeed, Roglieri argued to this Court that his personal bankruptcy automatic stay should be extended to cover Prime and his other entities "because they are wholly owned by Mr. Roglieri", not that they <u>used to be</u> owned by Roglieri.  [Compass Docket No. 160].

14

decision, that single member could not operate the LLC to fund in monies to support a plan of reorganization to pay creditors.  Such an impractical outcome further demonstrates why the Bankruptcy Court's ruling was clearly erroneous.

**B.  *The Bankruptcy Court Erred by Failing to Consider Bankruptcy Code Preemption of State Law***.

44.    *Second*, in addition to missing language of the Delaware statute, the Bankruptcy Court also failed to consider the fact that federal bankruptcy law preempts any state statute that purports to strip a debtor of an asset as a result of filing a bankruptcy petition.   Specifically, Section 541 of the Bankruptcy Code provides that the commencement of a case creates an estate comprised of all property wherever located, and by whomever held. 11 U.S.C. § 541; *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 91 (2d Cir.1988) ("It is well established that a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located.").   That includes, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case, including membership interests in a limited liability company.  *See id*.

45.    State statutes which purport to strip a debtor of property rights as a result of filing a bankruptcy petition are preempted by § 541 of the Bankruptcy Code.  This exact issue was dealt with in *In re Envision Healthcare Corp.*, 655 B.R. 701 (Bankr. S.D. Tex. 2023).  In that case, the bankrupt debtor owned a 25% membership interest in a Delaware limited liability company.  Upon the debtor's filing, the other members of the Delaware LLC claimed that the debtor had lost its membership interest in the LLC as a result of Section 18-304 of the Delaware Limited Liability Company Act (the exact statute in this case).  The *Envision* court, in a detailed analysis, held that the debtor had <u>not</u> lost its membership interests upon its bankruptcy filing because "Section 18-

304 of the Act directly conflicts with, and must give way to, § 541 of the Bankruptcy Code." *Id.* at 712.

46.     Courts in the Second Circuit and elsewhere have reached similar conclusions when interpreting the limited liability company acts of other states.  *See Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.*), 648 B.R. 434, 456 (S.D.N.Y. 2022), *appeal withdrawn*, No. 23-71, 2023 WL 2944995 (2d Cir. Feb. 1, 2023) (holding that state "laws cannot be read to terminate or modify LLC membership interests solely due to a bankruptcy filing, as the law would then act to 'deprive the trustee of that interest.'"); *In re Prebul*, No. 1:11-CV-214, 2012 WL 5997927, at *11 (E.D. Tenn. Nov. 30, 2012) (holding that all of the debtor's rights as of the petition date were vested in the trustee, "including those as a member", and that state law that "required the dissolution of [an LLC] upon [a debtor's] bankruptcy [is] in contravention of the Bankruptcy Code."); *In re Woodfield*, 602 B.R. 747, 756 (Bankr. D. Or. 2019) (holding that a "[d]ebtor's rights as an LLC member cannot be terminated or modified solely as a result of his bankruptcy petition. Any provision of the Operating Agreements or the LLC Act that purports to vitiate [a] [d]ebtor's voting rights is unenforceable in bankruptcy under § 541(c)(1)"); *Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 647, 656 (Bankr. N.D. W. Va. 2012) ("[B]ecause non-economic rights are property of the estate and fit under the canopy of § 362(a)(3), the provision in the Defendants' Resolution that disassociates the debtor is void.... § 541(c)(1) acts to vitiate the application of the Operating Agreement calling for dissolution upon the [debtor's] bankruptcy filing."); *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding that "under § 541(c)(1), an interest of the debtor in property becomes property of the estate, 'notwithstanding any provision in an agreement ... that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under this title.'").

18138621.v8

47.     Consequently, as Mr. Roglieri's sole membership interest in Prime did not terminate, and thus became property of the Roglieri Bankruptcy Case estate pursuant to Bankruptcy Code section 541(c), the Trustee was well within his authority to ratify the Prime Chapter 11 Case filing.

48.     Accordingly, the Dismissal Order is also clearly erroneous for failing to consider or find that the Delaware statute is preempted by the Bankruptcy Code.[4]

**C.   *The Bankruptcy Court Erred by Holding that Filing the Prime Bankruptcy was Outside the Receiver's Powers under the Receiver Order*.**

49.     *Third*, the Bankruptcy Court erred by holding that the Receiver did not have authority under the Receiver Order to file the Prime Chapter 11 Case.  This error by the Bankruptcy Court is the easiest ground for reversal by this Court as it is simply a question of this Court interpreting its own prior orders and does not require even addressing the ratification issue.[5]

50.     The Bankruptcy Code does not establish who has authority to file a bankruptcy petition, so courts look to the state law governing the debtor to determine authority.  *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) ("The Court recognizes that the Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, bankruptcy courts initially look to the state law governing the entity.") (citations omitted).

51.     In cases involving a receiver's authority to file, courts also look to the language of the order appointing the receiver in the first instance.  *See In re StatePark Bldg. Grp., Ltd.*, 316

---

[4] Delaware Code 18-304 was not even mentioned in the Appellees' Motion to Dismiss nor in the response papers, but rather, was raised for the first time orally during the hearing.  Thus, the Bankruptcy Court did not have the advantage of briefing on this topic.
[5] At the hearing on the Dismissal Motion, the Receiver offered to bring the question of interpretation of the Receiver Order to this Court in the first instance, but the Bankruptcy Court declined that offer.

18138621.v8

B.R. 466, 472 (Bankr. N.D. Tex. 2004) (holding that the language of the receiver order and state law authorized the receiver to file a bankruptcy petition.); *In re Whittaker, Clark & Daniels, Inc.*, 2023 WL 4111338, at *3 (Bankr. D.N.J. June 20, 2023) (analyzing language of receiver's authority under appointment order before analyzing state law).

52.     As set forth more completely below, the language in the Receiver Order could not be more expansive because it conferred upon the Receiver "exclusive dominion and control over all of the assets, books and records, operations, and business affairs of the Debtor."  [Compass Docket No. 160, at 51 (holding that the Receiver "retains exclusive control over the business [of Prime] at this time.")].  The decision of whether to file a bankruptcy petition surely constitutes "operations" and a "business affair" of a company.

53.     It is also clear that "exclusive dominion and control over . . . assets" includes the power to take steps (even legal steps) to "protect" those assets.  That is clear from the words of the Receiver Order itself.  "Control" means "the direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee".  *Black's Law Dictionary* (12th ed. 2024) (also saying that "dominion" means "control; possession").  And "exclusive" means "limited to a particular person, group, entity or thing."  *Id.*

54.     Moreover, if there were any questions about the Receiver's power to take steps to "protect" assets of the receivership estate, such questions were definitely answered by later orders of this Court.  For instance, this Court allowed the Receiver to protect Prime's assets when it refused to stay the Receiver Order pending Prime's appeal, stating that any stay would cause "irreparable harm [to Compass] in the form of an unenforceable judgment should they succeed on the merits of their claims." [Compass Docket No. 160, at 29].  And the Court further allowed the

Receiver to protect assets *through legal action* by recognizing his filed complaint in the name of Prime against third-party defendants and granting a pre-judgment attachment "over the monies related to Prime Capital that can be verifiably traced as being sent from Prime Capital to the Third-Party Defendant entities."  *Id*. at 53.  There simply is no daylight between the Receiver filing a lawsuit to obtain a pre-judgment attachment to protect assets of Prime from third parties and filing a bankruptcy petition to similarly protect those assets.  In both instances, each action was clearly within the scope of the powers conferred by the Receiver Order.  Without the power to protect assets by the filing of a bankruptcy petition, the receivership would in this case be an empty gesture as creditors execute on the assets the Receiver has located.

55.     Moreover, the Receiver Order also provided that the Receiver's authority is "vested in and extended to all of [Prime's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature."  Causes of action, which the Appellees argue fall outside of the Receiver's authority, are property interests under state law.  *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) (analyzing when a cause or action accrues before holding that "[w]ithout doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become 'property of the estate.'").  Indeed, the issue of the Receiver's authority to take legal action on behalf of Prime was recognized not only by this Court but has already been adjudicated by another court of competent jurisdiction.  *See* Decision and Order entered by Supreme Court, New York County, in *ER Tennessee, LLC v. Prime Capital Ventures, LLC, et al.,* Supreme Court, New York County, Index No. 650231/2024, attached to the Receiver Declaration as ***Exhibit I***.

56.     The Bankruptcy Court noted that the Receiver did not seek clarification or further authority from the District Court regarding the scope of the Receivership prior to filing the

bankruptcy petition for Prime.  As set forth above, the Receiver's authority under this Court's order was broad enough to allow his decisive action for the protection of Prime's assets for the ultimate benefit of all creditors, so no request for clarification was needed.  However, the Movants also respectfully note for this Court's consideration that as of the Prime Petition Date, the Second Circuit appeal of the Receiver Order was still pending, and this Court had specifically directed the parties not to file any further motions until the Second Circuit appeal was resolved.  This impediment was only recently removed on June 17, 2024, when the Second Circuit appeal was dismissed with the consent of the Trustee and Prime (through the Hogan firm), at which time it was conceded by Prime that the Trustee has full authority over Prime.  A copy of the Second Circuit dismissal is attached to the Receiver Declaration as **Exhibit J**.

57.    Accordingly, the Bankruptcy Court erred because the Receiver Order is broad enough to confer the Receiver with the authority to file the Prime Chapter 11 Case.

**IV.    The Public Interest Favors Entry of a Stay Pending Appeal**

58.    The public interest strongly supports the issuance of a brief stay maintaining the *status quo* to allow Prime to prosecute its Appeal without the threat of the 90-day preference period and other applicable statutes of limitations or repose lapsing.  *In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015) (recognizing the "public interest in protecting the right to appellate review [especially] when it can be done without undue prejudice to the side that won below."); *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994) (holding that "it would not be contrary to the public interest to restrain the creditors pending debtor's appeal of the Bankruptcy Court's [chapter 11 dismissal] order; should debtor be successful on appeal (which is likely), it will be able to seek the protection of the Bankruptcy Code.").

18138621.v8

59.     It is well settled that "[t]he interests of creditors are a significant determinant of the public interest in a bankruptcy case."  *See In re Taub*, No. 08-44210, 2010 WL 3911360, at \*6 (Bankr. E.D.N.Y. Oct. 1, 2010); *see also In re Plasterer*, No. 8-22-71632-LAS, 2023 WL 6217801, at \*8 (Bankr. E.D.N.Y. Sept. 25, 2023) (same); *In re Drs. Hosp. of Hyde Park, Inc.*, 376 B.R. 242, 249 (Bankr. N.D. Ill. 2007) (holding that "[t]he public policy behind bankruptcy is the equality of distribution to creditors within the priorities established by the Code within a reasonable time.").

60.     In essence, the Court's analysis of the public interest factor requires consideration of "how a stay decision has consequences *beyond* the immediate parties."  *In re Blockfi, Inc.*, 2024 WL 358112, at \*9 (Bankr. D.N.J. Jan. 30, 2024) (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015)) (emphasis added).  And while "the public interest ... recognizes the desirability of implementing the legitimate expectations of creditors ... to get paid," *In re Chemtura Corp.*, 2010 WL 4638898, at \*8 (Bankr. S.D.N.Y. Nov. 8, 2010), the Movants respectfully submit that the public interest demands a review of what is in the best interest of all creditors.

61.     The public interest is not served here by placing the interests of one creditor, the Appellees, over the interests of every other creditor.  If a stay were not granted, the Appellees would be permitted to pursue recovery from the assets of Prime, leaving other creditors with significantly fewer assets from which to receive distributions than if the Dismissal Order was overturned.  The lack of a stay pending appeal would deprive the other creditors of the protection of the automatic stay which prevents the race to the courthouse which would allow the dismantling of Prime's remaining assets, many of which the Receiver has located.  Moreover, the estate would lose the ability to avoid B&R's Judgment lien, a multi-million-dollar asset and potentially the biggest asset available to pay creditor victim claims.  This Court previously recognized that when dealing with an insolvent company with multiple lawsuits against it, a Court order was needed to

prevent one creditor from obtaining all available assets to the detriment of others; that is exactly the reason a stay is needed now.  [Compass Docket No. 160, at 26 (holding that appointment of Receiver over Prime was necessary because "there are numerous cases against Prime Capital across the country" and without a receiver, the first to get a judgment would get Prime's assets and "there would be no money left to enforce a judgment in Plaintiff's favor.")].

62.     Rather than allowing a major asset of the Debtor's estate to be taken from it, this Court should maintain the *status quo* by staying the effect of the Dismissal Order until the issues raised in the Appeal can be fully considered and resolved by this Court. Such a stay should be entered prior to August 2, 2024, at 4:00 p.m., when the temporary stay in the Dismissal Order expires.

63.     Accordingly, in light of the foregoing, the Movants respectfully submit that the public interest is well served by granting a brief stay requested by this Motion.

<u>**NO PRIOR REQUEST**</u>

64.     No previous motion for the relief sought herein has been made to this or any other Court.

<u>**NOTICE**</u>

65.     The Movants will provide notice of this Joint Motion to all parties listed on the Notice of Appeal and all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Movants submit that no other or further notice is necessary or required.

[Signature Pages Follow]

18138621.v8

Dated:  July 30, 2024

    Syracuse, New York            BOND, SCHOENECK & KING, PLLC

By:       /s/ *Stephen A. Donato*

    Stephen A. Donato (Bar Roll No. 101522)
    Edward J. LoBello (Bar Roll No. 512829)
    Justin S. Krell (Bar Roll No. 704364)
    Andrew S. Rivera (Bar Roll No. 700712)
    One Lincoln Center
    Syracuse, New York 13202
    Tel: (315) 218-8000
    Fax: (315) 218-8100
    Email:  sdonato@bsk.com
           elobello@bsk.com
           jkrell@bsk.com
           arivera@bsk.com

*Proposed Counsel to Prime Capital Ventures, LLC*

Dated:  July 30, 2024       THE DRIBUSCH LAW FIRM

    Albany, New York

By:       /s/ *Christian H. Dribusch*

    Christian H. Dribusch, Esq.
    187 Wolf Road
    Suite 300-020
    Albany, New York 12205
    Telephone No.: (518) 227-0026
    Email:  cdribusch@chd-law.com

*Chapter 7 Trustee of the Estate of Daniel Kris Roglieri*

18138621.v8

Dated:  July 30, 2024         NOLAN HELLER KAUFFMAN LLP
       Albany, New York


By:        /s/ *Justin A. Heller*
        Justin A. Heller, Esq.
        Matthew M. Zapala, Esq.
        80 North Pearl Street, 11th Floor
        Albany, New York 12207
        (518) 449-3300


PARKER POE ADAMS & BERNSTEIN LLP


        William L. Esser IV, Esq. (pro hac vice)
        620 South Tryon Street
        Suite 800
        Charlotte, North Carolina 28202
        Telephone No.: (704) 335-9507
        Fax No.: (704) 334-4706
        Email:  willesser@parkerpoe.com

*Counsel for Compass-Charlotte 1031, LLC*

18138621.v8