## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PRIME CAPITAL VENTURES, LLC,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 24-10531-REL** |
| **PAUL LEVINE, as the permanent receiver of Prime Capital Ventures, LLC, CHRISTIAN H. DRIBUSCH, as the Chapter 7 trustee of Kris Daniel Roglieri, and COMPASS-CHARLOTTE 1031, LLC,**<br><br>Appellants,<br>v.<br><br>**B AND R ACQUISITION PARTNERS, LLC and JHM LENDING VENTURES, LLC,**<br><br>Appellees. | **Case No. 24-CV-00939-MAD** |

**B AND R ACQUISITION PARTNERS, LLC AND JHM LENDING VENTURES, LLC'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO APPELLANTS' JOINT MOTION FOR STAY PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………3

BACKGROUND…………………………………………………………………….5

 I.  B&R Parties' Dealings with Prime Prior to the Receiver's Appointment………5

 II.  Compass Institutes a Short-Lived Involuntary Bankruptcy
    and the Receivership Action………………………………………………....6

 III. B&R Parties' Judgment and Pre-Bankruptcy Dealings with the Receiver………9

 IV. The Third and Fourth (Final) Receiver's Report, Prime's Bankruptcy, and the
    Motion to Dismiss…………………………………………………………..10

LEGAL STANDARD AND STANDARD OF REVIEW………………………………14

ARGUMENT………………………………………………………………………15

 I.  Appellants Will Not Suffer Irreparable Harm Absent a Stay……………………16

 II.  B&R Parties Will Suffer Substantial Injury if a Stay is Issued…………………18

 III. Appellants are Not Likely to Succeed on the Merits of this Appeal……………18

   A. The Receiver did not have authority to file the Prime Bankruptcy………….18

     1. Courts must dismiss petitions filed by entities lacking the "power of
       management" or the "specific authorization" to file……………………..18

     2. The Receiver holds no "power of management" over Prime and lacked the
       "specific authorization" to file a petition on its behalf, requiring
       dismissal…………………………………………………………………20

   B. Appellants' claims of error regarding the Delaware LLC Act do not establish
     the Trustee's authority to control Prime and are without merit……………...23

   C. Even if the Trustee could establish authority over Prime, any ratification
     would be ineffective in whole or in part……………………………………..25

 IV. Granting a Stay Pending Appeal Would Negatively Impact Public Interests…...26

CONCLUSION…………………………………………………………………...27

Creditors B and R Acquisition Partners, LLC ("B&R") and JHM Lending Ventures, LLC ("JHM," and with together with B&R, the "B&R Parties") file this Response in Opposition[1] to the Joint Motion for Stay Pending Appeal (the "Motion") filed by Paul A. Levine, the permanent receiver (the "Receiver") of Prime Capital Ventures, LLC ("Debtor" or "Prime"), Christian H. Dribusch, the Chapter 7 trustee (the "Trustee") of Kris Daniel Roglieri ("Roglieri"), and Compass-Charlotte 1031, LLC ("Compass", and collectively with the Receiver and Trustee, the "Appellants").

## PRELIMINARY STATEMENT

In an attempt to manufacture urgency and irreparable harm, Appellants' Motion creates a false sense that a stay pending appeal is the sole manner that a "likely…race to the courthouse" among creditors may be prevented. Motion at ¶ 27. Both the Receiver and the Trustee, however, have (and have long had) clear and efficient avenues to protect the rights of Prime's creditors. The Receiver could ask this Court for the authority to place Prime in bankruptcy (and could and should have done so prior to filing the petition or in response to B&R Parties' motion to dismiss). The Trustee could take the appropriate corporate actions to obtain the management powers once held by Kris Roglieri (or seek such authority over said powers in the Roglieri Bankruptcy), or petition the appropriate Delaware Chancery Court. But the Receiver and the Trustee refuse to consider these routes because they are intent on depriving the B&R Parties of their secured interest over an

---

[1] The Declaration of M. Patrick Everman, submitted for the sole purpose of providing documents to the Court, is attached hereto as **Exhibit 1**.

asset that constitutes roughly 6.00% of Prime's currently known assets[2] – no matter the cost[3] to the bankruptcy estate, the receivership estate, or Prime's creditors. For these reasons and others, Appellants cannot show irreparable harm.

As described more fully below (and in the bankruptcy court's order of dismissal, Dkt. 2-8 (the "Dismissal Order")), the Motion fails to meet *any* of the prongs of the four-part test applied by courts in this Circuit to grant a stay pending appeal. Aside from the failure to meet any of the four prongs, let alone all of the four prongs, as is required in the Second Circuit, the Motion makes no attempt to show that the Bankruptcy Court's decision not to extend the stay is an abuse of discretion. Without meeting the burden of showing all four prongs under an abuse of discretion standard, the Motion must be denied.

First, the only irreparable harm that could reasonably be claimed – other than concerns that were and are squarely within Appellants' power to resolve – is confirmation that Appellants cannot avoid B&R Parties' judgment lien, which amounts to a loss of money. Second, B&R Parties will suffer harm if the stay is granted because its right to enforce its judgment lien will be further delayed and the value of the property risks devaluation. Third, Appellants are not likely to succeed on the merits of this appeal because (1) the order appointing the Receiver did not expressly grant authority to file bankruptcy; (2) Appellants' arguments regarding the bankruptcy court's perceived

---

[2] As sworn to by the Receiver on May 28, 2024, Prime's assets totaled $61,564,495.10 of which only $3,750,000.00 constitutes the real property on which B&R Parties hold a domesticated and perfected judgment lien. Prime Bankruptcy, Dkt. 31.

[3] The funds expended by the Receiver (and the firm he appointed without leave of this Court) prosecuting the unauthorized bankruptcy and this appeal are unknown, but are certain to be substantial as shown by the Receiver's sworn disclosure of May 28, 2024 (*Id.*) totaling over $378,000.00 between the two firms. The Receiver has not filed a report with this Court regarding his actions or expenditures since April 18, 2024 (other than the sworn disclosure, *Id.*, filed on May 28, 2024 in regard to fees paid).

errors in interpreting the Delaware LLC law do not establish the Trustee's authority to ratify Prime's bankruptcy petition and are nonetheless without merit; and (3) even if the Trustee has authority, his ratification is ineffective in whole or part. Finally, the public interest will be harmed by "permitting or implicitly recognizing a clearly unauthorized bankruptcy case." Dismissal Order at 15.

**BACKGROUND**

I.      **B&R Parties' Dealings with Prime Prior to the Receiver's Appointment**

B&R Parties' relationship with Prime began like many other transactions this Court has seen in the Receivership Action (defined below). On November 14, 2022, Prime and B&R entered into a Business Expansion Line of Credit Agreement (the "BELOC") to fund an asset purchase (the "Loan"). Pursuant to the BELOC, B&R was required to deliver to Prime a $4.3MM interest credit account deposit (the "ICA Deposit") which would be used to prepay interest following the closing and funding of the Loan. Although B&R delivered the ICA Deposit to Prime on November 31, 2022, Prime never funded the Loan.

From the outset, the B&R Parties strictly followed the terms of the BELOC. On June 15, 2023, B&R exercised its right to terminate the BELOC and made a demand for the return of the ICA Deposit in accordance with the terms of the BELOC. Prime failed to return the ICA Deposit and, to date, has not returned the ICA Deposit.

Unlike Compass and other creditors, the B&R Parties pursued its legal remedies strictly in accordance with the terms of the BELOC. On, August 24, 2023, the B&R Parties instituted an arbitration proceeding against Prime and Kris Roglieri to obtain the return of the ICA Deposit as well as other claims for damages, conversion, and fraud. On November 20, 2023, the B&R Parties filed a partial Motion for Summary Disposition in accordance with Rule 18 of JAMS

Comprehensive Arbitration seeking an order and award based on the undisputed facts, specifically that Prime was required to return the $4.3MM to the B&R Parties and admitted the same in its pleadings filed in the arbitration.

## II.    Compass Institutes a Short-Lived Involuntary Bankruptcy and the Receivership Action

On December 19, 2023, Compass, 526 Murfreesboro, LLC and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition under Chapter 7 of 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") as to Prime, which the Petitioning Creditors later moved to voluntarily dismiss after threshold eligibility questions regarding the petition were raised by Prime. *See In re Prime Capital Ventures, LLC*, No. 23-11302, (Bankr. N.D.N.Y.), Dkt. 1, 72 and 74. While the bankruptcy court granted the Petitioning Creditors' motion for voluntary dismissal, the case remains pending as the court retained jurisdiction over several issues, including: (i) application by alleged debtor pursuant to Bankruptcy Code § 303 for costs, attorneys' fees and damages, including punitive damages; (ii) application of alleged debtor for a bond; (iii) application to employ interim trustee together with compensation of counsel; (iv) all matters pertaining to the $5MM deposit into alleged debtor's account post-petition; and (v) Bankruptcy Rule 2016(b) disclosures by the attorneys representing the alleged debtor. *Id.*, Dkt. 87.

On January 12, 2024, Compass filed a complaint against Prime and others seeking, among other relief, the appointment of a temporary receiver over Prime. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al*, No. 24-cv-55 (N.D.N.Y.) (the "Receivership Action"). That same day, based upon the relief requested by Compass, this Court entered an Order to Show Cause for the Appointment of a Receiver on an Emergency Basis and for Expedited Discovery (the "Interim Order"), among other things, appointing, on an interim basis, the Receiver. A copy

of the Interim Order is attached to the Everman Declaration as **Exhibit A**. The Interim Order

enumerates the provisional powers and duties of the Receiver as follows:

1.  [E]xclusive dominion and control over all . . . assets, books and records, operations and business affairs . . . .

2.  [A]uthority . . . vested in and extended to (a) all of [Debtor's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located and (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.

3.  [A]uthori[ty] to operate and manage [Prime Capital's] business until further order of Court.

4.  [A]uthori[ty] to take possession of and . . . close [Prime Capital's] existing deposit accounts and open new accounts in the Receiver's name.

5.  [A]uthori[ty] to take any and all actions . . . deem[ed] appropriate in order to ascertain the amount and location of Defendants' assets.

6.  [A]uthori[ty] to retain, employ, and pay for services of individuals or firms selected by the Receiver . . . .

7.  [D]uties and responsibilities of a receiver under law, . . . answerable and account[able] to the Court for the Receiver's activities, . . . maintain[ing] a detailed accounting of his activities . . . .

Ex. A at 2–3.

On January 24, 2024, after briefing and a hearing related to the relief granted in the Interim

Order, *see* Dkt. 2-4 at 2 (recounting the procedural history), this Court entered its Memorandum-

Decision and Order (the "Permanent Order"). The Permanent Order noted that, like B&R and

Prime's BELOC, there was a binding arbitration agreement between Compass and Prime. While

Prime argued the arbitration foreclosed the appointment of a receiver, the Court noted that the

agreement stated that "[t]his clause shall not preclude Parties from seeking ***provisional remedies in aid of arbitration*** from a court of appropriate jurisdiction." Dkt. 2-4 at 8 (emphasis added).

The Permanent Order enumerates the permanent and final powers and duties of the Receiver as follows:

1. [E]xclusive dominion and control over all . . . assets, books and records, operations and business affairs . . . .

2. [A]uthority . . . vested in and extended to all . . . real property, equitable property, tangible and intangible personal property, interest, or assets . . . .

3. [A]uthori[ty] to take any and all actions . . . deem[ed] appropriate in order to ascertain the amount and location of Defendants' assets.

4. [D]uties and responsibilities of a receiver under law, . . . answerable and account[able] to the Court for the Receiver's activities, . . . maintain[ing] a detailed accounting of his activities . . . .

*Id* at 23. The Permanent Order omitted paragraphs 2(a), 3, 4, and 6 from the Interim Order. In other words, the Permanent Order retracted and did not grant to the Receiver on a permanent basis, authority over:

- All claims, demands, or causes of action held by Prime;

- Management of Prime's business;

- The closing of existing deposit accounts and opening new ones in the Receiver's name; or

- The retaining, employing, and paying for professional services in Receiver's discretion without the District Court's intervention.

*See also* Dkt. 2-5, Receivership Action, Dkt. 160 at 24-25, 41 (explaining the purpose of appointing the Receiver was to maintain the status quo and locate missing funds in aid of arbitration).

### III.    B&R Parties' Judgment and Pre-Bankruptcy Dealings with the Receiver

On January 15, 2024, the Arbitrator granted the B&R Parties' Motion for Summary Disposition and awarded the B&R Parties $4.3MM in monetary damages against Prime (the "Award"). A copy of the Award is attached to the Everman Declaration as **Exhibit B**. On January 18, 2024, the B&R Parties applied for an order to confirm the Award, filed as *In the Matter of the Application of B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC v. Prime Capital Ventures, LLC*, Index No. 900844-24, Supreme Court, State of New York, Third Judicial District, Albany County (the "Confirmation Proceeding"). On January 31, 2024, while the Confirmation Proceeding was pending, counsel for Compass (copying other creditors and the Receiver) contacted counsel for B&R Parties and inquired about B&R Parties' plans for the confirmed judgment. A copy of this email correspondence is attached to the Everman Declaration as **Exhibit C**. Compass's counsel suggested that perhaps the Receiver "might need to right away consider getting an anti-litigation injunction from the federal court." *Id*. at 8. On February 2, 2024, B&R Parties and the Receiver agreed that Receiver would not oppose the Confirmation Proceeding and B&R Parties would provide 15 days' notice prior to any enforcement of the judgment. *Id*. at 1-2.[4]

The Award was confirmed by a judgment dated February 8, 2024 (the "Judgment"). A copy of the Judgment is attached to the Everman Declaration as **Exhibit D**. The Receiver moved for an anti-litigation injunction in this Court on February 9, 2024 (the "Anti-Litigation Motion"). A copy of the Anti-Litigation Motion is attached to the Everman Declaration as **Exhibit E**. While the Anti-Litigation Motion recognized B&R Parties' Judgment, it did not mention B&R Parties' stated

---

[4] These communications and agreements are noticeably absent from the Background section of Appellants' Motion.

intent to domesticate the Judgment in Virginia with the purpose of procuring a judgment lien on the Virginia Beach House or seek any specific relief related to the B&R Parties' Judgment or the Virginia Beach House. *Id*. After filing the Anti-Litigation Motion, the Receiver took no action to prevent B&R Parties' domestication of the Judgment in Virginia.

On February 12, 2024, counsel for B&R Parties provided the Receiver notice of its intention to domesticate the Judgment in Virginia Beach, Virginia.[5] A copy of the February 12, 2024 email is attached to the Everman Declaration as **Exhibit F**. On February 28, 2024, B&R Parties, pursuant to Virginia Code 8.01-465.3 filed notice of the Judgment in the City of Virginia Beach, Virginia Judgment Lien Docket as Instrument No.202404002909 (the "Judgment Lien"). A copy of the Judgment Lien is attached to the Everman Declaration as **Exhibit G**. The Judgment Lien creates a judgment lien against any and all real property held by Prime located in Virginia Beach, VA. *See* Ex. G. This Court denied the Anti-Litigation Motion on March 19, 2024. *See* Dkt. 2-5 at 55-59. The Court's order noted that the Receiver was only overseeing two (now one) entities and cited two cases approving anti-litigation injunctions with significantly more complex entities and litigation challenges. Dkt. 2-5 at 57-58. It is unclear where Appellants' premise that this Court inferred in such order that there would come a time in the Receivership Action where an anti-litigation injunction would become necessary.

## IV.    The Third and Fourth (Final) Receiver's Report, Prime's Bankruptcy, and the Motion to Dismiss

On February 7, 2024, prior to filing the Anti-Ligation Motion, the Receiver filed its Third Report of Permanent Receiver (the "Third Report"), wherein he expressed his understanding of not only the limitations of his role, but also the need for the Court's discretion and authority. A

---

[5] Again, these communications are notably absent from the Background section of Appellants' Motion.

copy of the Third Report is attached to the Everman Declaration as **Exhibit H**. In the Third Report, the Receiver states: "[t]he Receiver is also beginning to formulate, *if the Court allows and to be submitted at the appropriate time*, a proposal and plan with regard to the eventual disposition of funds; after a claims' noticing, submission and review process." *Id.* The Receiver went on in footnote 3 of the Third Report to say: "[i]n no manner is the Receiver attempting to usurp any function of the Court. Rather, he has received numerous inquiries from injured parties and, as a result, and based on prior experience in such matters and in bankruptcy court, the Receiver has begun to think about such things and shares those thoughts in this report." *Id.*

On April 18, 2024, the Receiver filed its Fourth Report of Permanent Receiver (the "Fourth Report"). A copy of the Fourth Report is attached to the Everman Declaration as **Exhibit I**. In the Report, the Receiver provided an update to known litigation activities related to Prime, including providing the Receiver's plans. Ex. I at 8-9 ("The Receiver anticipates resolving the case"; "the Receiver anticipates reaching an agreement in the near future."; "the Receiver is ready to immediately serve subpoenas"). The Report also includes an update on the Roglieri Bankruptcy and the Receiver's proposed actions. *Id*. at 17 ("The Receiver intends to file an adversary proceeding….") While the Report includes a summary description of B&R Parties' litigation status, and was filed nearly two months after the Judgment Lien was obtained, the Receiver provided no indication to this Court, or interested creditors, of his intention to place Prime in bankruptcy. *Id*. at 9. The Receiver has not filed a report with this Court since the Report.

On May 14, 2024, the Receiver,[6] purportedly on behalf of Prime Capital, initiated this bankruptcy case by filing a petition for relief under Chapter 11 of the Bankruptcy Code (the "Prime

---

[6] The bankruptcy petition is signed by Stephen Donato of Bond, Schoeneck & King, PLLC, counsel hired by the Receiver. As noted above, the Permanent Order removed express authority for the Receiver to hire outside firms without Court intervention.

Bankruptcy"). *In re Prime Capital Ventures, LLC*, No. 24-10531, (Bankr. N.D.N.Y.). According, to Paul Levine's Bankruptcy Declaration (the "Bankruptcy Declaration"), the Receiver's sole and unequivocal purpose for filing the Prime Bankruptcy was to preserve a possible avoidance action of the Judgment Lien under § 547 of the Bankruptcy Code. See Bankrupty Declaration, Dkt. 2-7 ¶ 4.  Despite the Receiver's ninety-one (91) day notice of intent to domesticate the Judgement (Ex. F, Feb. 12 Email), the Receiver's awareness of his limited role and need for this Court's permission for disposition of assets (Ex. H, Third Report), seventy-six (76) day notice of the filing of the Judgment Lien, and a past history of seeking authority for the filing a such a bankruptcy from this Court,[7] the Receiver did not seek authority from this Court prior to his filing[8].

On May 15, 2024 (the day after the Prime Bankruptcy was filed), the pending Chapter 11 individual bankruptcy for Kris Roglieri (the "Roglieri Bankruptcy") was converted to a Chapter 7 bankruptcy and the Trustee was appointed. Following the Trustee's appointment, the Trustee and the Receiver had multiple disagreements over who could or should steer the Prime Bankruptcy. *See* Prime Bankruptcy Dkt. 36, 37, 38, 40, 41 and 51; *see also*, *In re Kris Roglieri*, No. 24-10157, (Bankr. N.D.N.Y.), Dkt. 197, 204 and 205. The fact these fights over the power to manage the Debtor even exists underscore the fatal flaws of the Prime Bankruptcy case right from its inception.

---

[7] The Bankruptcy Court's Order identified Mr. Levine's past appointment as a receiver in a case with similar facts. Dismissal Order at 9-10; *SEC v. Ryan*, Case No. 10-cv-00513, 2011 U.S. Dist. LEXIS 160515 (N.D.N.Y. May 3, 2011). *Id*. In that case, despite being granted specific authority to "commence and prosecute bankruptcy cases" in the temporary appointing order, Mr. Levine nonetheless submitted an application to the District Court to commence a bankruptcy. *Id*.

[8] While Appellee's take note that the Memorandum and Decision Order entered by this Court in the District Court Case (Dkt. 2-5) directed that no parties were allowed to file further motions or letter briefs, the Receiver had no qualms with filing a Letter Brief seeking clarity and guidance as to proceeding with discovery on April 9, 2024 (Receivership Action, Dkt. 164) to which this Court reminded the Receiver that such actions were not allowed unless in connection with arbitration (Receivership Action, Dkt. 170 – Text Order).

On May 31, 2024, Prime Capital (by and through its then counsel, Hogan Lovells) moved to dismiss this case on the basis that the Receiver lacked authority to file the petition, which motion was later withdrawn. Prime Bankruptcy Dkt. 36 and 40. On the same day that Prime Capital filed its motion to dismiss (and prior to withdrawal of the same), the Chapter 7 Trustee filed a letter with this Court stating that the estate of Roglieri is the sole member of Prime Capital, meaning the Chapter 7 Trustee, as representative of the same, was the only individual able to file the Motion to Dismiss. Prime Bankruptcy Dkt. 40. Consistent with that authority, the Chapter 7 Trustee gave notice of withdrawal of the motion to dismiss, which issue was mooted by the subsequent withdrawal of the motion (by and through Hogan Lovells). *Id.*; Prime Bankruptcy Dkt. 37.

On June 25, 2024, B&R Parties filed a motion to dismiss (the "Motion to Dismiss") pursuant to 11 U.S.C. § 1112(b) arguing that the Receiver did not have authority to file the Prime Bankruptcy. A copy of the Motion to Dismiss is attached to the Everman Declaration as **Exhibit J**. On July 9, 2024, the Trustee filed a purported ratification of the Receiver's filing of the Prime Bankruptcy. Dkt. 2-6. The purported ratification provided no evidence or legal authority supporting the Trustee's authority to control Prime. *See Id*. On July 10, 2024, "Prime" (through counsel the Receiver appointed on behalf of Prime), the Trustee, and Compass filed objections to the Motion to Dismiss. Among other arguments, each of the parties argued that the Trustee had authority to ratify the Prime Bankruptcy petition. On July 16, 2024, the bankruptcy court held a hearing on the Motion to Dismiss. While local rules do not permit a movant to submit reply papers, counsel for B&R Parties responded at the hearing to each of the Appellants' arguments, including the ratification arguments.[9]

---

[9] Appellants complain that "Delaware Code 18-304 was not even mentioned in the Appellees' Motion to Dismiss nor the response papers, but rather, was raised for the first time orally during the hearing." Motion at ¶ 4, n.4. But Delaware Code 18-304 is critical to the sole case cited for

On July 23, 2024, the bankruptcy court entered the Dismissal Order and held: "the Receiver did not have the authority to file" the Prime Bankruptcy and "the Trustee's ratification is ineffective." Dismissal Order at 11, 13. In considering whether to dismiss the Prime Bankruptcy based on these findings, the Bankruptcy Court further held "[t]o permit this case to continue would be for the Court to sanction misuse of the Bankruptcy Code." *Id*. at 13. Moreover, the dismissal would not harm creditors because Prime's assets "remain under the control of the Receiver." *Id*. Finally, the Bankruptcy Court considered whether it would grant a stay pending appeal of the Order. The Bankruptcy Court held it would not because: 1) "the only harm [Appellants] could claim would be a loss of monetary funds"; 2) a stay would "further frustrat[e] the B&R Parties' right as established in arbitration and a court of law"; 3) Appellants "would be less than likely to succeed on appeal"; and 4) a stay would "further condone an unauthorized filing, which runs counter to the public goal of the bankruptcy system." *Id*. at 15.

On July 29, 2024, Appellants filed a Notice of Joint Appeal of the Dismissal Order. On July 30, 2024 Appellants filed an application for an Order to Show Cause which this Court entered on July 31, 2024.

## LEGAL STANDARD AND STANDARD OF REVIEW

Courts in the Second Circuit consider four factors when determining whether to grant a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has

---

Trustee's authority to control Prime in his Response to the Motion to Dismiss. *See* Trustee's Objection, ¶ 12; *Modanlo v. Mead*, 2006 WL 4486537, at *5 (D. Md. 2006) ("Once Debtor filed his voluntary bankruptcy petition, NYSI was 'dissolved' under" 18-304(1) and 18-801(a)"). B&R Parties were and are free to discuss the authority on which Appellants relied. Furthermore, as stated above, local rules did not allow B&R Parties from to submit reply or "response" papers so oral argument was its first *opportunity* to raise arguments.

demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (quotations and citations omitted). "Failure to satisfy any one of these criteria is fatal to the debtor's motion." *In re 1567 Broadway Ownership Assocs.*, 202 B.R. 549, 553 (S.D.N.Y. 1996); *see also In re CPJFK, LLC*, 496 B.R. 65, 68 (Bankr. E.D.N.Y. 2011) ("The burden on the movant is a 'heavy' one") (citing *In re DJK Residential, LLC*, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008) and *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir.1995)). "To be successful, the party must 'show satisfactory evidence on all four criteria.'" *Id*. (quoting *In re Turner*, 207 B.R. 373, 375 (2d Cir. BAP 1997)).

As this Court has consistently held, Judge Littlefield's decision not to extend the stay pending appeal must be reviewed for an abuse of discretion. *State Emps. Fed. Credit Union v. S.G.F. Properties, LLC*, 2015 WL 7573220, at *2 (N.D.N.Y. Nov. 25, 2015) (quoting *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995)).

## <u>ARGUMENT</u>

Appellants' Motion does not explain why Judge Littlefield's previous denial of a stay pending appeal amounted to an abuse of discretion. This Court and others have held that, while such failure may not be a jurisdictional defect, such a failure weighs in favor of denying a stay. *State Employees Fed. Credit Union v. S.G.F. Properties, LLC*, 2015 WL 7573220, at *3 (N.D.N.Y. Nov. 25, 2015); *In re World Trade Bus. Ass'ns, Inc.*, No. 13-Misc.-44-A, 2013 WL 6441506, at *5 (W.D.N.Y. Dec. 9, 2013). As explained below, each of the factors weigh in favor of denying the stay and the Dismissal Order was not an abuse of discretion.

## I.     Appellants Will Not Suffer Irreparable Harm Absent a Stay

It is well established in this Circuit that "an injury compensable by money damages is insufficient to establish irreparable harm." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F.App'x 779, 781 (2d Cir. 2010) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). As recognized by the Dismissal Order, "the only harm that denial of a stay would cause is the inability to avoid the B&R Parties' judgment lien…Therefore, the only harm that the moving party could claim would be a loss of monetary funds." Dismissal Order at 15. Appellants make two main arguments in an attempt to get out from under this rule.

First, Appellants argue that a risk of being "deprived of appellate rights" may constitute irreparable harm. Although Appellants cite numerous cases,[10] none are applicable here. Many of the cases discuss a stay pending an appeal of a bankruptcy court's plan confirmation order. *See, e.g. In re Adelphia Commc'ns Corp.*, 361 B.R. 337 (S.D.N.Y. 2007) ("Mootness of an appeal of a bankruptcy court order confirming a plan of reorganization under chapter 11 is presumed when the reorganization plan has been substantially consummated during the pendency of the appeal."); *In re Advanced Mining Sys., Inc.*, 173 B.R. 467, 469 ("The inevitable result…is that a denial of a stay would moot the appeal and deny the [appellants] *any recovery*.") (emphasis added). In the context presented by Appellants' cases, *substantially all* funds would be disbursed to numerous creditors during the appeal.

---

[10] One line of cases cited by Appellants appears to support an argument that the avoidance action which this appeal is attempting to keep viable may have already run based on the bankruptcy court's dismissal. *See In re Lomago*, 320 B.R. 473, 481 (1st Cir. BAP 2005) ("reopening a case does not 'undo' any of the statutory consequences of the closing of a case, the automatic stay is not retroactively reinstated upon a case being reopened."). To the extent Appellants' believe an inability to bring an avoidance action against B&R Parties' Judgment Lien effectively moots this appeal, B&R Parties submit that has already occurred.

That is not what we have here. Rather, Appellants ask this Court to focus on an avoidance action (that is not even in existence) which would not affect roughly 94% of the currently known Prime estate. This Court has held that is not sufficient to constitute irreparable harm. *State Employees Fed. Credit Union v. S.G.F. Properties, LLC*, 2015 WL 7573220, at *3 (N.D.N.Y. Nov. 25, 2015) (distinguishing cases finding irreparable harm because they "involve the potential for a complete loss of a creditor's claims absent a stay, or the loss of a different, substantial right in addition to the potential mooting of their appeal."). Moreover, while the *reason* Appellants are prosecuting this appeal is a possible derivative action, the *substance* of this appeal is whether the Receiver had authority to file or the Trustee had authority to ratify the Prime Bankruptcy. If the B&R Parties were to enforce the Judgment Lien and foreclose on the Virginia Beach House during this appeal, Appellants' right to litigate their appeal would not be mooted. The only difference would be a reduction (roughly 6.00%) of the currently known Prime's assets for division among creditors – in other words, a loss of money.

Second, Appellants craft a straw man out of the possibility of the proverbial "race to the courthouse." Motion at ¶ 27. This argument is devoid of any specific risk and cannot constitute irreparable harm. *In re Trib. Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012) ("[T]o establish irreparable harm, a movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent."). This Court already held that the Receiver may protect against any such concerns. Dkt. 2-5 at 59 (holding anti-litigation injunction is unnecessary despite pending litigation). Finally, both the Trustee and the Receiver have legal mechanisms to pursue the orderly distribution of Prime's assets. Most notably, the Receiver could simply seek authority to place Prime in bankruptcy from this Court and re-file the petition.

Because Appellants have failed to demonstrate irreparable harm, the Court may deny the Motion without further analysis.

## II.      B&R Parties Will Suffer Substantial Injury if a Stay is Issued

Appellants have failed to demonstrate that no parties will be substantially harmed by a stay. The Motion does not even address the harm the bankruptcy court held B&R Parties will suffer: the delay's "further frustrating the B&R Parties' right as established in arbitration and a court of law." Order at 15; *see also Medien Patent Verwaltung AG v. Warner Bros. Enter. Inc.*, 2014 WL 1169575, at *2 (S.D.N.Y. Mar. 21, 2014) ("In addition to the axiom that 'justice delayed is justice denied,' it is a practical reality that the longer litigation lasts, the more expensive it will be."). Appellants also make unsubstantiated claims that the condition and value of the Virginia Beach House will not be reduced during the pendency of this appeal. Motion at ¶ 35. While Appellants state that they do not *think* the Virginia Beach House is vacant, that is not a sufficient basis to proclaim it is "not at risk of deteriorating in value" during the appeal.[11] *Id*. Indeed, if Appellants cannot say for certain whether the Virginia Beach House is even occupied, they cannot speak to the nature of its upkeep. Nor can Appellants guarantee the current market value of the home will be the same at the end of the appeal. The diminution of value of B&R Parties' secured interest in the Virginia Beach House would constitute substantial harm.

## III.     Appellants are Not Likely to Succeed on the Merits of this Appeal

### A.   The Receiver did not have authority to file the Prime Bankruptcy.

1.   *Courts must dismiss petitions filed by entities lacking the "power of management" or the "specific authorization" to file.*

---

[11] It is B&R Parties understanding that Kimberly Humphrey, a Third-Party Defendant in the Receivership Action and alleged co-conspirator of Kris Roglieri, is residing the home. B&R Parties have serious and justified concerns about her interest and ability to maintain the Virginia Beach House in a satisfactory manner.

"The filing of a bankruptcy petition 'is a *specific* act requiring *specific* authorization.'" *In re 3P Highstown, LLC*, 631 B.R. at 210 (emphasis added) (quoting *In re N2N Commerce, Inc.*, 405 B.R. at 41).[12] And "the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law 'to institute the proceedings.'" *Hager v. Gibson,* 108 F.3d 35, 39 (4th Cir. 1997) (quoting *Price*, 324 U.S. at 106). Unsurprisingly, then, "[i]f a bankruptcy petition is filed by an entity lacking the 'power of management' in the corporate context, 'the bankruptcy case *must be dismissed* for want of legal authority to do so.'" *In re 3P Highstown, LLC*, 631 B.R. at 209–10 (emphasis added) (quoting *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. 689, 691 (Bankr. W.D. Pa. 2018)) (citing *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858–59 (Bankr. N.D. Ill. 2014)). Indeed as recognized by the bankruptcy court's Order, "it is unclear whether the Court has any discretion regarding dismissal." Dismissal Order at 14 (citing *Price*, 324 U.S. at 106); *In re 3p Highstown, LLC*, 631 B.R. at 208.

So fundamental is this pre-requisite that, like subject matter jurisdiction, the "Court may raise the issue *sua sponte*." *In re 3p Highstown, LLC*, 631 B.R. at 208. Moreover, "should a court find that a debtor, who acts on behalf of a corporation, filed bankruptcy without the prerequisite authority, 'the Court . . . would be required to dismiss [that] unauthorized filing *even if § 1112(b) were not in the Bankruptcy Code*.'" *In re 3p Highstown, LLC*, 631 B.R. at 208 (emphasis added) (quoting *In re ComScape Telecom., Inc.*, 423 B.R. at 830) (collecting cases). And applicable case law's use of "corporation" need not blur the lines here—"[t]his precept of law operates in all corporate cases, including in those cases filed by a limited liability company." *In re*

---

[12] *See In re Arko Properties, Inc.*, 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997) ("It is well-settled that a bankruptcy filing is a specific act requiring specific authorization.") (quoting *In re Stavola/Mansion Electric Co.*, 94 B.R. 21, 24 (Bankr. D. Conn. 1988)) (collecting cases).

*Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. at 691 (citing *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003)).

2. *The Receiver holds no "power of management" over Prime and lacked the "specific authorization" to file a petition on its behalf, requiring dismissal.*

With the stakes and stage set, the question presented here becomes plain: was the Receiver "vested with 'the power of management'" such that he had "the requisite authority to file [Prime Capital's] bankruptcy petition"? *In re East End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (quoting *Price*, 324 U.S. at 104). Because he was not and did not, "the bankruptcy case must be dismissed . . . ." *In re 3P Highstown, LLC*, 631 B.R. at 209–10 (quoting *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. at 691) (citing *In re NNN 123 N. Wacker, LLC*, 510 B.R. at 858–59).

To start analysis, generally, "[s]tate law governs whether a business entity is authorized to file a petition in bankruptcy." *In re East End Dev., LLC*, 491 B.R. at 638 (citing *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996)); *see also In re Avalon Hotel Partners, LLC*, 302 B.R. at 380. This case presents something different than general, though—a receivership. With a receiver, while state law may still have a role to play (though, the result is the same regardless of what source of authority the Court looks to), the first port of call is the order appointing the receiver. *See e.g.*, *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575, 2023 WL 4111338, at * 3 (Bankr. D.N.J. June 20, 2023) (addressing receiver appointment order prior to state law analysis, which dictated same result). That's because a receiver's "authority is wholly determined by the order of the appointing court." *Nyland (CF8) Ltd.*, 839 F.2d at 98; *Security Pc. Mortg. & Real Estate Servs., Inc. v. Rep. of Philippines*, 962 F.2d 204, 211 (2d Cir. 1992) ("As a court-created entity, a receiver has only those powers provided for in the appointment order and may perform only those acts expressly authorized by the appointing court."); *Daro Indus. v. RAS Enters.*, 44

N.Y.2d 969, 970–71 (1978) ("We would only add that the powers of a temporary receiver are limited to those enumerated in the appointing order. Since the temporary receiver in this case was not expressly granted the power to sue for claims of the corporation arising before his appointment, that power is retained by the corporation.") (internal citations omitted).

Here, the Permanent Order contains no grant of managerial authority, nor any authority to direct litigation or the claims of the Debtor. As noted by the Dismissal Order, this Court *removed* those powers from the Receiver, after having initially granted them in the Interim Order. *Compare* Ex. A at 2–3, *with* Dkt. 2-4 at 20-21. The Court need not go further. After all and again, it is only those with the "power of management" that have the "specific authorization" to file a petition initiating a bankruptcy case. *In re 3P Highstown, LLC*, 631 B.R. at 209–10. Because the Permanent Order contains no such grant of authority, the Receiver lacked the ability to make the "specific act" of filing the petition here, and "the bankruptcy case must be dismissed . . . ." *Id.*

The Dismissal Order also made clear that Appellants' reliance merely on the first and second clauses of the Permanent Order ignores both the remaining clauses and the context in which the Receiver was appointed. Dismissal Order at 6-7 ("But it is the third clause that defines the scope of the Receiver's authority. Specifically, '[t]he Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate *in order to ascertain the amount and location of Defendants' assets*."). This Court knew and knows how to grant managerial rights and use that term. *See* Ex. A at 2–3. The fact this Court *retracted* that grant, alongside another right relating to management of Prime (the right to control litigation and claims), is proof positive that there's nothing "specific" to be found in the more general grants of control over Prime, such as over its "operations and business affairs . . . ." Dkt. 2-4 at 20-21. Even if doubt existed, case law shows just how reticent courts are to read into general grants the right to file a petition.

In *In re Whittaker, Clark & Daniel, Inc.*, an appointment order granted, among other things, "the power and authority to fully administer all assets . . . ." *In re Whittaker, Clark & Daniel, Inc.*, 2023 WL 411338 at *3. The order went on to provide a number of more "specific powers and duties afforded to the Receiver . . . none of which include[d] the exclusive power to file for bankruptcy or deprive the Board of that right." *Id.* Because of this language, the Receiver argued that only he had the right to file a petition for relief, not the underlying Board and sought dismissal of the petition filed by the Board on that basis. *Id.* at *1–2. While a receiver arguing a board lacks authority to file a petition presents the photo negative of the issue here, the reasoning and ruling denying the Receiver's motion stays on point:

> Here, Mr. Protopapas is a receiver. His duties are limited to those that can be inferred from the statute or those set forth in the Receivership Order. He is not a custodian acting in place of the Board and, absent a court order affording him such status, he is not the entity authorized to file for bankruptcy.

*Id.* at *6. When considering the gravity of the authority involved here, the *Whitaker* court "would expect an explicit direction in that regard in [the] Receivership Order." *Id.* at *5.[13]

Here, no such explicit direction exists. At best, only general authority over assets found its way into the Permanent Order, which specifically excluded the right to control litigation and the

---

[13] *Whitaker* is but one of many cases standing for the proposition that "the exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief . . . [A] corporation may not be precluded by state law from availing itself of federal bankruptcy law." *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720–21 (Bankr. D. Mass. 1994) (quoting *Cash Currency Exch., Inc. v. Shine,* 762 F.2d 542 (7th Cir. 1985)) (quoting, in turn, *International Shoe Co. v. Pinkus,* 278 U.S. 261 (1929)); *see also In re Orchards Village Invest., LLC*, 405 B.R. 341, 349 (Bankr. D. Or. 2009) ("[A] state court receivership proceeding cannot be used to preclude a debtor from seeking federal bankruptcy protection, in spite of the broad authority granted to receivers in their appointment orders, such as the appointment order in this case.").

management of the Debtor. As such, no authority to file existed and the Dismissal Order should be affirmed.

B. Appellants' claims of error regarding the Delaware LLC Act do not establish the Trustee's authority to control Prime and are without merit.

The crux of the Dismissal Order regarding the Trustee's authority is that Appellants made a "mere assumption" that the Trustee had the authority to control Prime. Dismissal Order at 13. Indeed, an unsupported claim of the Trustee's authority is fatal to Appellants' ratification argument because "[t]he burden of establishing ratification falls on the party asserting it." *In re Pinnacle Land Grp., LLC*, No. 17-23339-GLT, 2018 WL 4348051, at *9 (Bankr. W.D. Pa. Sept. 10, 2018) (citing *Yiannatsis v. Stephanis*, 653 A.2d 275, 280 (Del. 1995)).[14] Appellants make the same fatal error here, and nothing in the Motion demonstrates that the Trustee has or had the authority to control Prime. The Motion instead assumes "Mr. Roglieri's sole membership interest in Prime…became property of the Roglieri Bankruptcy Case estate…." Motion at ¶ 47. Rather than provide support for that statement (or explain how it could coexist with the Receiver's interpretation of his own authority), the Motion complains about the Dismissal Order's interpretation of a provision of the Delaware LLC statute (without a single citation to case law supporting their interpretation) and claims that same provision is preempted. Motion at ¶¶ 39-48. Even accepting Appellants' arguments as correct (they are not), this Court would not have a basis to find that the Trustee did, in fact, have the authority to control Prime.

Appellants' Trustee arguments, even if they could provide a basis for reversing the Dismissal Order, are nonetheless meritless. The Motion's complaints about the Dismissal Order's

---

[14] Because the question of who has authority to file bankruptcy is determined by state law and Prime is a Delaware LLC, Delaware law governs whether the Trustee properly ratified the Prime Bankruptcy. *In re Pinnacle*, 2018 WL 4348051 at *9 ("Because Pinnacle was formed in Delaware, and in the absence of any other controlling provision within its operating agreement, Delaware law will determine whether a valid ratification occurred.").

interpretation of 6 Del. C. § 18-304 are belied the Trustee's case law cited for his authority to place Prime in bankruptcy. The Trustee cited *In re Modanlo*, 2006 WL 4486537 (D. Md. Oct. 11, 2006), where a single-member LLC was placed into bankruptcy by a Trustee for the sole member's individual bankruptcy. In *Modanlo*, the single member LLC was held to have been dissolved by operation of 18-304 and 18-801 following the sole member's individual bankruptcy. *In re Modanlo*, 2006 WL 4486537 at *5. The *Modanlo* trustee, unlike the Trustee here, took steps to resuscitate the LLC under Delaware law and amended the LLC's operating agreement to grant himself authority to place that entity in bankruptcy. *Id*.

Appellants' preemption argument also does not stand up to scrutiny. First, the Dismissal Order relied on Prime's operating agreement to explain that the Trustee does not have managerial authority over Prime (not the Delaware statute). Dismissal Order at 12 ("Furthermore, Prime's operating agreement makes it clear that the Trustee did not receive management authority upon the transfer of Roglieri's interest in Prime."). Like in the Bankruptcy Court below, Appellants fail to even discuss Prime's operating agreement. Additionally, this issue has been analyzed by the Delaware Supreme Court, which held: "Section 18-304 [and other similar provisions] are not preempted by the Bankruptcy Code to the extent that they divest members who file for bankruptcy of the right to participate in the management of the company but not of their economic rights." *Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 at *3 (Del. 2021) (unpublished). Because Section 18-304 means that a member who files for bankruptcy "ceases to be a member, but becomes an assignee with the economic rights specified in § 18-702(b)," it is not preempted by the Bankruptcy Code. *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 762 (Del. Ch. 2004). While a single bankruptcy judge in Texas recently disagreed, it appears that the ruling stands alone – despite the pervasiveness of Delaware entities.

C. <u>Even if the Trustee could establish authority over Prime, any ratification would be ineffective in whole or in part</u>.

In their Objections to the Motion to Dismiss, the Trustee and Receiver relied on *In re Grace*, 366 B.R. 302 (Bankr. Del. 2007), for the idea that the Trustee can ratify the filing. As explained by B&R Parties at the hearing, this reliance is entirely misplaced. First, *Grace* and the cases cited within it make clear that "the unauthorized filing of a voluntary petition for a corporation could be ratified by the ensuing conduct of persons *with the power to have authorized it **originally**….*" *Id*. at 305 (citing *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997). Here, the Prime Bankruptcy was filed on May 14, 2024. At that time, the only person who could have ratified the petition was Kris Roglieri. Mr. Roglieri has not ratified the filing, either expressly or by acquiescence. The Trustee was not appointed – and his position did not come into existence – until a day after the filing on May 15, 2024. Simply put, the Trustee did not have the authority to ratify the Receiver's filing on May 14 and thus, his ratification now is ineffective.

Second, the *Grace* case, while recognizing that ratification *can be* retroactive, held that a purported ratification following the bar date to file proofs of claim was ineffective. *Id*. at 306. The *Grace* court held that "ratification is not effective when it takes place after a deadline." *Id*. (citing *Fed. Elec. Com'n v. NRA Political Victory Fund*, 513 U.S. 88 (1994); *see also Cook v. Tullis*, 85 U.S. 332 (1874); Restatement (Second) of Agency § 90 (1958) ("If an act to be effective in creating a right against another or deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time."). Here, B&R Parties are secured creditors with a property right against Prime's real property in Virginia. By filing the unauthorized petition, the Receiver was specifically attempting to reserve the right to interfere with that property right via a § 547 avoidance action. Between the May 14 filing and the Trustee's July 9, 2024 purported ratification, the 90 day period for a transfer to be subject to a § 547 avoidance

25

action expired. Accordingly, any ratification would be ineffective as to B&R Parties' Judgment Lien rights under § 547.

## IV.     Granting a Stay Pending Appeal Would Negatively Impact Public Interests

As recognized by the Dismissal Order, a stay would harm the public interest. Specifically, granting a stay "would be to further condone an unauthorized filing, which runs counter to the public goal of the bankruptcy system." Dismissal Order at 15. Appellants have implied B&R Parties' prosecution of their rights against Prime is somehow inappropriate. Motion at ¶ 11 (emphasizing the B&R Parties received their arbitration award after the Interim Order and confirmed the award after the Permanent Order). Nothing could be further from the truth. Like other creditors, B&R Parties fell victim to a brazen Ponzi scheme. Unlike other creditors, B&R Parties pursued their claims strictly in accordance with the BELOC, obtained an arbitration award and judgment against Prime, and enrolled that Judgment. All along the way, B&R Parties kept the Receiver informed – and even delayed obtaining the Judgment Lien, allowing the Receiver the opportunity to pursue the Anti-Litigation Motion. Despite the denial of that motion and the clear implication of limited authority, the Receiver unilaterally decided to expand his authority and attempt to place Prime in bankruptcy (expending untold – literally since May 28, 2024 – funds which the Receiver was appointed to protect for Prime's creditors). The Receiver's unauthorized filing was and is an attempt to inappropriately wield the Bankruptcy Code for purpose of depriving B&R Parties of their real property interest. The Motion now attempts to use the Code as a shield, claiming Appellants must be afforded the right to protect their avoidance action. Motion at ¶ 58. It is not in the public interest to encourage the Receiver's filing of a "clearly unauthorized bankruptcy case." Dismissal Order at 15.

## <u>CONCLUSION</u>

For the reasons stated above, this Court should deny Appellants' Joint Motion for Stay

Pending Appeal.

Dated: August 2, 2024.                              **BALCH & BINGHAM LLP**


   /s/ *M. Patrick Everman*
M. Patrick Everman
(NY Pro Hac Vice Bar No. 705654)
(MS Bar No. 104870)
Balch & Bingham LLP
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: (601) 965-8162
E-mail: peverman@balch.com


/s/ *Matthew W. McDade*
Matthew W. McDade (*PHV pending*)
Balch & Bingham LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 214-0414
E-mail: mmcdade@balch.com

*Attorneys for B and R Acquisition Partners,
LLC and JHM Lending Ventures, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of August, 2024, a copy of this Response has been electronically filed with the Clerk of the District Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.  Additionally, I hereby certified that I have electronically mailed a copy of this Response to counsel for Appellants' and the Office of the United States Trustee.

*/s/ M. Patrick Everman*
M. Patrick Everman
*Attorney for Appellees, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC*
