**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PAUL A. LEVINE, ESQ.** *as Permanent Receiver*
*over Prime Capital Ventures, LLC*, **PRIME CAPITAL**
**VENTURES, LLC, COMPASS-CHARLOTTE,**
**1031, LLC, and CHRISTIAN H. DRIBUSCH, ESQ.,**
*as Chapter 7 Trustee in the Matter of Kris Daniel*
*Roglieri,*

                                     **Appellants,**

      **vs.**                                   **1:24-CV-939**
                                               **(MAD)**

**B AND R ACQUISITION PARTNERS, LLC and**
**JHM LENDING VENTURES, LLC,**

                                     **Appellees.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LEMERY GREISLER, LLC** | **PAUL A. LEVINE, ESQ.** |
| 677 Broadway - 8th Floor | |
| Albany, New York 12866 | |
| Attorney for Permanent Receiver | |
| over Debtor Prime Capital Ventures, LLC | |
| | |
| **BOND, SCHOENECK & KING, PLLC** | **ANDREW SCOTT RIVERA, ESQ.** |
| One Lincoln Center | **EDWARD J. LOBELLO, ESQ.** |
| 110 West Fayette Street | **JUSTIN S. KRELL, ESQ.** |
| Syracuse, New York 13202 | **STEPHEN A. DONATO, ESQ.** |
| Proposed Attorneys for Debtor Prime | |
| Capital Ventures, LLC | |
| | |
| **DRIBUSCH LAW FIRM** | **CHRISTIAN H. DRIBUSCH, ESQ.** |
| 187 Wolf Road, Suite 300-20 | |
| Albany, New York 12205 | |
| Attorney for Chapter 7 Trustee in the | |
| Matter of Kris Daniel Roglieri, Case No. | |
| 24-10157 | |
| | |
| **NOLAN HELLER KAUFFMAN, LLP** | **JUSTIN A. HELLER, ESQ.** |
| 80 State Street, 11th Floor | **MATTHEW M. ZAPALA, ESQ.** |

Albany, New York 12207
Attorneys for Creditor Compass-Charlotte 1031, LLC

**BALCH & BINGHAM**                                    **M. PATRICK EVERMAN, ESQ.**
188 E. Capitol Street – Suite 1400
Jackson, Mississippi 39201
Attorney for Appellees B and R Acquisition Partners,
LLC and JHM Lending Ventures, LLC

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is a motion for a stay pending appeal from Paul A. Levine, the permanent receiver (the "Receiver") of Prime Capital Ventures, LLC ("Prime"), Prime, Christian H. Dribusch, the Chapter 7 trustee (the "Trustee") of Kris Daniel Roglieri ("Roglieri"), and Compass-Charlotte 1031, LLC ("Compass", and collectively with the Receiver and the Trustee, "Appellants"). *See* Dkt. No. 2. Appellants seek to stay enforcement of an order of the United States Bankruptcy Court entered on July 23, 2024, dismissing a Chapter 11 bankruptcy petition filed by the Receiver pending resolution of Appellants' appeal. *See id.* Appellees B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC respond in opposition. *See* Dkt. No. 12. Appellants reply. *See* Dkt. No. 13.

For the following reasons, Appellants' motion for a stay pending appeal is denied.

### II. BACKGROUND

In November of 2022, Prime and Appellees entered into a Business Expansion Line of Credit Agreement to fund an asset purchase whereby Prime would fund Appellees' credit line. *See* Dkt. No. 12 at 5. Appellees transferred an interest credit account ("ICA") deposit in the amount of $4.3 million to Prime on November 31, 2022. *See id.* On August 24, 2023, Appellees

2

initiated an arbitration proceeding against Prime and Roglieri to obtain their ICA deposit of $4.3 million because Prime never funded the loan. *See id.*

On December 19, 2023, Compass, 526 Murfreesboro, LLC, and Newlight Technologies, Inc., as other creditors of Prime, filed an involuntary bankruptcy petition against Prime. *See In re Prime*, No. 23-11302 (Bankr. N.D.N.Y.), Dkt. No. 1. Through the bankruptcy proceedings, Compass learned that Prime had contracted with 405 Motorsports LLC, Berone Capital Equity Fund I, LP, Berone Capital Fund, LP, Berone Capital LLC, and/or Berone Capital Partners LLC (the "Berone Defendants") to assist in gaining access to credit lines. Prime also asserted that the Berone Defendants held millions of dollars in a bank account on behalf of Prime. The Berone Defendants never appeared in the bankruptcy action and the creditors later moved to dismiss the action. *See id.*, Dkt. No. 74. The Bankruptcy Court granted the request. *See id.*, Dkt. No. 87.[1]

On January 12, 2024, Compass initiated an action in this Court against Prime and the Berone Defendants. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, No. 1:24-CV-55 (N.D.N.Y.), Dkt. No. 1. Compass alleges that Prime and the Berone Defendants defrauded Compass into a credit loan agreement in which Compass paid Prime $15,902,250 as an ICA deposit, and Prime never paid Compass the contracted $79,511,250 loan. *See id.* at ¶¶ 117-37. In its complaint, Compass also lists other companies who alleged similar conduct as Compass including B and R Acquisition Partners, Camshaft Cre 1, LLC, The Lion Group DFW, LLC, Sturm, and Newlight Technologies. *See id.* at ¶¶ 138-39.

On the same day that it filed its complaint, Compass also moved for a preliminary injunction, requesting, in pertinent part, that the Court appoint a permanent receiver over Prime

---

[1] The Bankruptcy Court retained jurisdiction over limited issues not relevant to the present motion to stay.

and the Berone Defendants.  *See* Dkt. No. 6.  The Court entered an Order to Show Cause which appointed a temporary receiver over Prime and the Berone Defendants pending briefing and a hearing on the appointment of a permanent receiver.  *See* Dkt. No. 8.  The Court appointed Paul Levine, Esq. of the law firm Lemery Greisler LLC, as the temporary receiver and granted him powers and duties as follows:

1. The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants.

2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to (a) all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located and (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured or un-matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.

3. The Receiver is hereby authorized to operate and manage Defendants' business until further order of Court.

4. The Receiver is hereby authorized to take possession of and, in his discretion, close Defendants' existing deposit accounts and open new accounts in the Receiver's name.

5. The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets.

6. The Receiver is authorized to retain, employ, and pay for the services of individuals or firms selected by the Receiver in his discretion and in consultation with Plaintiff to assist in the performance of the Receiver's duties.  It shall not be grounds for an attorney's disqualification that the attorney is affiliated with the Receiver's law firm.

7.  The Receiver shall have the duties and responsibilities of a
    receiver under law, shall be answerable and account to the Court
    for the Receiver's activities, and shall maintain a detailed
    accounting of his activities, including without limitation, any
    and all funds collected and used for any purpose.

8.  The Receiver shall not be liable for any debts or liabilities of
    Defendant.

*Id.* at 2-3.  Prime responded in opposition to the appointment of a receiver.  *See* Dkt. No. 12.

On January 15, 2024, an Arbitrator in Appellees' action granted their motion for summary disposition and ordered that Prime immediately return their $4.3 million ICA deposit.  *See Levine*, No. 24-939, Dkt. No. 12-3.  On January 18, 2024, Appellees moved to confirm the award in Supreme Court, State of New York, Third Judicial District, Albany County.  *See* Dkt. No. 12 at 9.

On January 22, 2024, the Court held a show cause hearing during which Prime objected to the appointment of a receiver.  *See Compass*, No. 24-55, Text Minute Entry 01/22/204.  The Berone Defendants did not appear at the hearing.  *See id.*  Two days later, the Court issued a Memorandum-Decision and Order appointing Mr. Levine as permanent receiver over Prime and the Berone Defendants.  *See* Dkt. No. 56.  In doing so, this Court recognized that "[t]he appointment of a receiver is considered to be an extraordinary remedy . . . ."  *Id.* at 12 (quoting *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)) (additional quotation omitted).  The Court explained that it was appointing the permanent "receiver to help answer the million-dollar questions of whether Plaintiff's ICA payment still exists and where it is located."  *Id.* at 18.  The Court next addressed the extent of the Receiver's authority.  *See id.*

The Court first noted that "[a] receiver's 'authority is wholly determined by the order of the appointing court.'"  *Id.* (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988)).  The Court also explained that "[t]he Second Circuit has expressed strong reservations as

to the propriety of allowing a receiver to liquidate [an estate]. . . .  In addition, because

receivership should not be used as an alternative to bankruptcy, [the Second Circuit has]

disapproved of district courts using receivership as a means to process claim forms and set

priorities among various classes of creditors."  *Id.* (quoting *Eberhard v. Marcu*, 530 F.3d 122, 132

(2d Cir. 2008)) (additional quotation, citation, and quotation marks omitted).  The Court therefore

granted the Receiver the following powers:

> 1. The Receiver shall have and retain and is hereby granted
> exclusive dominion and control over all of the assets, books and
> records, operations and business affairs of Defendants.
>
> 2. The Receiver's authority hereunder shall be, and hereby is, vested
> in and extended to all of Defendants' real property, equitable
> property, tangible and intangible personal property, interest, or
> assets of any nature, wherever located.
>
> 3. The Receiver is authorized to take any and all actions the
> Receiver, in his sole discretion, deems appropriate in order to
> ascertain the amount and location of Defendants' assets.
>
> 4. The Receiver shall have the duties and responsibilities of a
> receiver under law, shall be answerable and account to the Court for
> the Receiver's activities, and shall maintain a detailed accounting of
> his activities, including without limitation, any and all funds
> collected and used for any purpose.
>
> 5. The Receiver shall not be liable for any debts or liabilities of
> Defendants.

*Id.* at 19-20.  Prime appealed the Court's appointment of the permanent receiver to the Second

Circuit.  *See* Dkt. No. 60.

While the appeal was pending, the Receiver gathered financial records, personal

statements, and other information pertaining to Prime and the Berone Defendants.  *See* Dkt. Nos.

61, 65, 107, 173, 175.  On January 29, 2024, the Receiver filed a third-party complaint on behalf

of Prime and against Kris D. Roglieri, Tina M. Roglieri, Kimberly A. Humphrey, Prime

Commercial Lending, LLC, Commercial Capital Training Group, LLC, The Finance Marketing

Group, National Alliance of Commercial Loan Brokers and FUPME, LLC.  *See* Dkt. No. 71.  The

Receiver alleged that Mr. Roglieri was the sole owner of Prime as well as the other named entities

which he used to defraud creditors.  *See id.*  The Receiver brought a claim for piercing the

corporate veil against Roglieri.  *See id.*  Mr. Levine also filed a motion for a temporary restraining

order to keep the named parties from selling, disposing, or withdrawing property or funds.  *See*

Dkt. No. 72.

Counsel for Prime Capital, Mr. Pieter Van Tol, opposed the filing, arguing in part that Mr.

Levine did not have authority to file the third-party complaint on Prime's behalf.  *See* Dkt. No. 74.

On January 30, 2024, the Court entered a temporary restraining order and scheduled a show cause

hearing for February 15, 2024.  *See* Dkt. No. 78.

On January 31, 2024, counsel for Compass e-mailed Appellees' counsel.  *See Levine*, No.

24-939, Dkt. No. 12-4 at 9.  Compass' counsel acknowledged the arbitration award that Appellees

had won and inquired of their intent to proceed in their action against Prime.  *See id.*  Through the

exchange of numerous e-mails and a phone call, counsel for Appellees' and the Receiver came to

the following agreement:

> 1. [Appellees] can submit the proposed Order to the state court to
> have the Arbitration award confirmed.
>
> 2. [Appellees] agree not to take any action on that confirmed
> judgment for 15 days, including enrolling or domesticating that
> judgment in other jurisdiction[s] (including Virginia).
>
> 3. This agreement will not prevent [Appellees] from opposing any
> anti-litigation injunction request filed in the Receiver Action.

*Id.* at 3.  On February 2, 2024, the Receiver "[a]greed."  *Id.* at 2.  On February 8, 2024, the Albany

County Supreme Court confirmed the Appellees' arbitration award.  *See* Dkt. No. 12-5.  On

February 12, 2024, Appellees' counsel e-mailed the Receiver and notified him of their judgment.

*See* Dkt. No. 12-7.  Appellees' counsel stated, "Please accept this as our 15-day notice of intent to

enroll/domesticate in Virginia."  *Id.*

Approximately one hour before the Court was set to begin the show cause hearing on

February 15, 2024, Mr. Roglieri filed a voluntary Chapter 11 bankruptcy petition.  *See In re*

*Roglieri*, No. 24-10157 (Bankr. N.D.N.Y.), Dkt. No. 1.  Given the automatic stay provisions

applicable to bankruptcy proceedings, this Court's show cause hearing and its focus on the

Receiver's requested restraining order was upended.  The Court ordered the parties to brief the

impact of Mr. Roglieri's bankruptcy filing on the Court's case.  *See Compass*, 24-55, Dkt. No.

139.  All parties complied.  *See* Dkt. Nos. 141-45.

On February 28, 2024, Appellees filed notice of their judgment in the City of Virginia

Beach, Virginia Judgment Lien Docket.  *See Levine*, No. 24-939, Dkt. No. 12-8.  This created a

lien on Prime's Virginia Beach House, which is currently occupied by Kimberly Humphrey—a

third-party defendant in *Compass*.  *See* Dkt. No. 12 at 18, n.11.

On March 8, 2024, the Berone Defendants filed an emergency motion to vacate the

appointment of the permanent receiver.  *See Compass*, No. 24-55, Dkt. No. 148.  The Court set an

order to show cause hearing for March 18, 2024.  *See* Dkt. No. 149.  Following the hearing, the

Court denied the Berone Defendants' motion, but granted the Receiver's motion to dismiss Mr.

Roglieri as a third-party defendant.  *See* Dkt. No. 160.  The Court stated that the Berone

Defendants could seek permission to renew their request to be relieved from the receivership if

records did not reveal a connection between Compass' money and the Berone Defendants. *See id.* at 40. The Court ordered that no other motions or letter briefs be filed without the Court's permission, except for status reports to be submitted by the Receiver, pending the Second Circuit's resolution of Prime's interlocutory appeal. *See id.* at 72. The Court also stayed all answer deadlines pending the Second Circuit's decision. *See* Dkt. No. 172.

On April 18, 2024, the Receiver filed his fourth status report. *See* Dkt. Nos. 173, 175. In his report, the Receiver noted the status of Appellees' litigation insofar as they had a judgment for their $4.3 million ICA deposit and that the "judgment has been domesticated in Virginia Beach Circuit Court, Virginia." Dkt. No. 173 at 11. The Receiver explained he "had to advance funds to pay the insurance premium due on the house but has since been reimbursed. The Receiver has received a serious inquiry for the sale of the house. However, due to the Court's prohibition on filing substantive motions pending the Second Circuit appeal the Receiver is not presently moving forward in this regard." *Id.* at 12.

The Berone Defendants requested permission to file a supplemental brief, and on May 7, 2024, the Court granted that request. *See* Dkt. Nos. 176, 177.

On May 14, 2024, Mr. Levine filed a Chapter 11 voluntary bankruptcy petition on behalf of Prime. *See In re Prime*, No. 24-10531 (Bankr. N.D.N.Y), Dkt. No. 1. The Receiver listed numerous creditors including Compass. *See id.* On May 15, 2024, Roglieri converted his personal bankruptcy from a Chapter 11 to a Chapter 7. *See In re Roglieri*, No. 24-10157, Dkt. No. 159. The Trustee was appointed that same day. *See* Dkt. No. 160.

On May 31, 2024, Mr. Van Tol filed a motion to dismiss the Receiver's filing of the voluntary bankruptcy petition, arguing that the Receiver lacked the authority to file it. *See In re*

*Prime*, No. 24-10531, Dkt. No. 36.  On the same day, Christian H. Dribusch, the bankruptcy trustee of Mr. Roglieri's voluntary Chapter 7 bankruptcy, filed a notice of withdrawal of the motion to dismiss.  *See* Dkt. No. 40.  The Trustee stated as follows:

> As the legal representative of the Roglieri bankruptcy estate which is the sole member of Prime Capital Ventures, LLC, I am withdrawing the motion by Prime Capital Ventures, LLC to dismiss its bankruptcy case.  The motion was filed without the requisite authority.
>
> If Mr. Roglieri believes that he has authority over Prime Capital Ventures, LLC, then he will need to file the appropriate motion with the Bankruptcy Court in his personal Chapter 7 bankruptcy case seeking Bankruptcy Court authority to act on behalf of Prime Capital Ventures, LLC before he may authorize Prime Capital Venture, LLC to file a motion to dismiss in this bankruptcy case.

*Id.*

On May 24, 2024, this Court granted the Berone Defendants' motion to be relieved from the receivership and terminated the receivership over them.  *See Compass*, No. 24-55, Dkt. No. 184.

On May 28, 2024, the Receiver filed a Declaration Under Penalty of Perjury for Non-Individual Debtors in Prime's voluntary bankruptcy proceeding.  *See In re Prime*, No. 24-10531, Dkt. No. 31.  The Receiver listed Prime's total assets at $61,564,495.10, total liabilities as $125,973,314.50, and the Virginia Beach house as being valued at $3,750,000.  *See id.* at 2, 5. On June 25, 2024, Appellees filed a motion to dismiss the bankruptcy petition filed by the Receiver.  *See* Dkt. No. 57.  They argued that the Receiver did not have the authority to file the petition.  *See id.*  On July 9, 2024, the Trustee ratified the bankruptcy petition "in his capacity as the Chapter 7 Trustee to the bankruptcy estate of Chris [sic] Daniel Roglieri (N.D.N.Y.

Bankruptcy Case Number 24-10157) which bankruptcy estate is the sole member of Prime Capital Ventures, LLC . . . ."  Dkt. No. 66.

On July 15, 2024, Compass and the Berone Defendants entered into a joint stipulation of dismissal without prejudice in the district court action.  *See Compass*, No. 24-55, Dkt. No. 186. The Court signed the stipulation and ordered dismissal on July 22, 2024.  *See* Dkt. No. 187.

On July 23, 2024, the Bankruptcy Court granted Appellees' motion to dismiss the bankruptcy petition on the grounds that the Receiver did not have the authority to bring the petition nor did the Trustee have the authority to ratify the petition.  *See In re Prime*, No. 24-10531, Dkt. No. 85.  Anticipating an appeal of his decision, Bankruptcy Judge Robert E. Littlefield addressed whether a stay would be appropriate pending appeal.  *See id.* at 14.  He concluded that a stay was not warranted because Appellants would not suffer irreparable injury, Appellees' rights would be frustrated by a stay, Appellants do not have a likelihood of success on appeal, and a stay would negatively impact public interest.  *See id.* at 14-15.  Judge Littlefield did grant a brief stay until August 2, 2024, to allow Appellants to appeal his decision to this Court.

On July 30, 2024, Appellants filed an emergency motion for a temporary restraining order staying the bankruptcy order pending their appeal.  *See Levine*, No. 24-939, Dkt. No. 2.  On July 31, 2024, this Court entered an order to show cause, ordering Appellees to respond to the motion by August 2, 2024.  *See* Dkt. No. 10.  The Court extended the temporary stay until August 16, 2024.  *See id.*  Appellees responded in opposition, *see* Dkt. No. 12, and Appellants replied.  *See* Dkt. No. 13.

Presently before the Court is Appellants' motion for a stay pending appeal of the bankruptcy court's order dismissing the Receiver's voluntary bankruptcy petition. For the following reasons, the Court denies the motion.

### III. DISCUSSION

**A.      Standard of review**

Federal Rule of Bankruptcy Procedure 8007 governs motions to stay pending appeal of bankruptcy court orders. *See* FED. R. BANKR. P. 8007. Generally, a Rule 8007 motion must first be made in the bankruptcy court. *See id.* A motion for such relief may subsequently be made in the district court so long as it states "that the [bankruptcy] court has ruled [on the motion] and set[s] out any reasons given for the ruling." *Id.* at 8007(b)(2)(B). In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. *See In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699, 703 (S.D.N.Y. 2002) (citation omitted). "[T]he decision to grant or deny a stay pending appeal is within the discretion of the bankruptcy court." *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995) (citations omitted). Thus, the district court "review[s] the bankruptcy court's decision [to deny a stay pending appeal] only for abuse of discretion." *Id.* (citations omitted).

The Second Circuit has established a four-pronged test for determining whether to grant a motion for a stay pending an appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39

(2d Cir. 1993) (quotations omitted); *accord In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996) (citations omitted); *In re Turner*, 207 B.R. 373, 375 (2d Cir. B.A.P. 1997).  This standard has been routinely applied to a motion for a stay of an order of a bankruptcy court, pending an appeal to the district court.  *See, e.g.*, *In re Rossi*, No. 1:08-MC-0081, 2008 WL 4519008, *1 (N.D.N.Y. Sept. 26, 2008); *In re Brunswick Baptist Church*, No. 1:05-CV-1085, 2007 WL 294087, *2 (N.D.N.Y. Jan. 25, 2007).

    "Failure to satisfy one prong of this standard for granting a stay will doom the motion."  *In re Turner*, 207 B.R. at 375; *accord In re Bijan-Sara Corp.*, 203 B.R. 358, 360 (2d Cir. B.A.P. 1996); *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003) (citation omitted).  As a result, "[t]he moving party must show 'satisfactory' evidence on all four criteria."  *In re Bijan-Sara Corp.*, 203 B.R. at 360 (citation omitted); *accord In re Albert*, No. 99-31520, 2002 WL 1432663, *3 (Bankr. S.D.N.Y. June 20, 2002) (citation omitted).  "[S]tays pending appeal are the exception, not the rule."  *In re Norwich Historic Pres. Tr., LLC*, No. 3:05-CV-12, 2005 WL 977067, *4 (D. Conn. Apr. 21, 2005) (citing *In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997)).

**B.    Appellants' Motion**

    "'[T]he decision to grant or deny a stay pending appeal is within the discretion of the bankruptcy court.' . . .  Thus, the district court 'review[s] the bankruptcy court's decision [to deny a stay pending appeal] only for abuse of discretion.'"  *State Emps. Fed. Credit Union v. S.G.F. Properties, LLC*, No. 1:15-CV-00418, 2015 WL 7573220, *2 (N.D.N.Y. Nov. 25, 2015) (quoting *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995)); *see also In re Regan*, No. 3:21-CV-1231, 2022 WL 1775713, *3 (N.D.N.Y. June 1, 2022); *In re Mongiello*, No. 24-CV-694, 2024 WL 729865, *2 (S.D.N.Y. Feb. 22, 2024), *reconsideration denied* (Feb. 23, 2024).

As Appellees state in their response, Appellants did not address the abuse of discretion standard in their motion.  *See* Dkt. No. 12 at 15 (citing, *inter alia*, *State Emps.*, 2015 WL 7573220, at *3).  Appellants did, however, address all four factors relevant to a stay.  *See* Dkt. No. 2-2.

### 1. Irreparable Injury Absent a Stay to Movant and Substantial Injury to Non-Movant if a Stay is Issued

Appellants argue that there will be irreparable harm to Prime's bankruptcy estate if a stay is not issued because "[i]f the Court does not grant the requested stay, the assets of the Debtor's estate may no longer be available to be administered for the benefit of all creditors."  Dkt. No. 2-2 at ¶ 27.  They contend that "it is likely that the Debtor's numerous creditors will each seek to enforce their respective interests against the Debtor's assets causing the proverbial 'race to the courthouse' . . . ."  *Id.*  "Should this occur, the Debtor's estate, the assets of which should be administered for the benefit of all creditors, faces a risk of substantial monetary loss because it is probable that only a select few creditors will realize any benefit from the disposition of the Debtor's assets."  *Id.*  Appellants argue that "it is even possible that a foreclosure of the Virginia Beach House could moot the appeal."  *Id.* at ¶ 29.  They contend that "although Movants do not concede that this Appeal would be definitively mooted by the termination of the Stay, the mere risk that this Appeal could be mooted supports a finding of irreparable harm to the Debtor's estate."  *Id.*  Appellants further assert that "[i]rreparable harm also clearly exists as to Compass who could be left with an uncollectible claim against a clearly insolvent Debtor, while other creditors, but in particular the Appellees, freely make off with the Debtor's limited assets."  *Id.*

On the other hand, Appellants argue that Appellees will not be harmed because "other

than the Appellees' lien and a notice of pendency filed by the Receiver, the Virginia Beach House is unencumbered, so entry of a stay pending resolution of this Appeal will not result in harm to any other creditor constituencies.  Further, the Appellees have not commenced foreclosure or judgment enforcement proceedings, so a stay will not stop any ongoing action." *Id.* at ¶ 35. Appellants contend that the sale of the Virginia Beach House is in everyone's best interest, but that they and Appellees differ on the aftermath of the sale because "Appellees want[] 100% of the funds for themselves and Movants want[] the funds available for all similarly situated creditor victims on a *pro rata* basis (as would be the case if the Dismissal Order is reversed and the Prime Bankruptcy [is] allowed to continue)." *Id.* at ¶ 36.  Appellants aver that a delay in the time before the Virginia Beach House could be sold is "not 'substantial' harm, but it can easily be cured by allowing the Receiver to move forward with a sale of the Virginia Beach House pending the Appeal, with the proceeds being deposited with the Court for disposition." *Id.*

Appellees argue that Appellants will not suffer irreparable harm absent a stay because the only potential harm to them is monetary. *See* Dkt. No. 12 at 16.  Specifically, Appellees contend that "[i]f the B&R Parties were to enforce the Judgment Lien and foreclose on the Virginia Beach House during this appeal, Appellants' right to litigate their appeal would not be mooted." *Id.* at 17.  They assert that "[t]he only difference would be a reduction (roughly 6.00%) of the currently known Prime's assets for division among creditors – in other words, a loss of money." *Id.* Appellees derive the 6.00% figure from the Receiver's bankruptcy filing in which he valued the Virginia Beach House at $3,750,000 and Prime's total assets as $61,564,495.10. *See id.* at 4, n.2. Appellees also assert that Appellant's "race to the courthouse" argument is speculative and not demonstrative of a specific risk sufficient to establish irreparable harm. *Id.* at 17.  Finally,

Appellees argue that they will suffer substantial injury if a stay is issued because "[t]he diminution of value of [their] secured interest in the Virginia Beach House would constitute substantial harm." *Id.* at 18.

As Appellants explain, there is caselaw concluding that irreparable harm exists where a denial of a stay pending appeal would moot the appeal. *See* Dkt. No. 2-2 at ¶ 26; *see also In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007) ("A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm. However, several courts, including ones within this Circuit, have held to the contrary. While Appellees have strained to distinguish each of these cases, the fact is that loss of appellate rights is a 'quintessential form of prejudice.' Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied") (footnotes omitted). Additionally, Appellants correctly quote this Court wherein it has stated that "[t]he potential mooting of an appeal, coupled with the risk of substantial monetary loss, is sufficient to establish irreparable injury." *State Emps.*, 2015 WL 7573220, at *3 (quoting *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992)); *see also* Dkt. No. 2-2 at ¶ 30.

"The bankruptcy courts in the Second Circuit are divided as to whether mootness of an appeal is enough to show irreparable injury." *In re Simpson*, No. 17-10442, 2018 WL 1940378, at *10 (Bankr. D. Vt. Apr. 23, 2018). "An injury that may be fully remedied by monetary damages does not constitute irreparable harm." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014) (citing *In re Atkinson*, No. 12-74366, 2012 WL 6138217, *3 (Bankr. E.D.N.Y. Dec. 11, 2012)). "Irreparable harm should only be found where there is a risk of mooting '*significant* claims of error.'" *Id.* (quotation omitted). "The fact that that [] property will be sold

absent a stay does not automatically constitute irreparable harm." *In re Giambrone*, 600 B.R. 207, 213 (E.D.N.Y. 2019).  Likewise, courts across the country have concluded that "[r]esumption of collection activity during the pendency of an appeal does not constitute irreparable harm." *In re Smithers*, No. 03-65561, 2005 WL 4030095, *4 (Bankr. S.D. Ohio July 13, 2005) (collecting cases) (citing, *inter alia*, *In re Abbo*, 191 B.R. 680, 684 (N.D. Ohio 1996) ("The monetary harm that the Debtor would suffer if the plaintiffs are permitted to enforce their pre[-]petition state court judgment against him does not constitute irreparable harm")); *see also In re Vincent Andrews Mgmt. Corp.*, 414 B.R. 1, 7 (D. Conn. 2009) ("[C]reditors' efforts to collect on a judgment during the pendency of an appeal generally do not constitute irreparable harm because debtors can be adequately compensated by monetary damages if they succeed on their appeal").  This is because "'[t]he fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages. . . .'"  *Id.* (quoting *Overstreet v. Lexington-Fayette Urb. County Gov't*, 305 F.3d 566, 579 (6th Cir. 2004)).  "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'"  *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

This Court has concluded that an appellant "failed to show that, absent a stay, there would be any risk that it would not be able to recover sufficient money from foreclosure sales on the remaining properties to satisfy the indebtedness in the event of a default" because "[t]he total value of the properties secured by Appellant's mortgages is $1,815,282.00.  The value of the Locust Park Parcel is $260,000.00.  If the mortgage to the Locust Park Parcel is released,

Appellant still has $1,555,282.00 worth of collateral from the remaining properties subject to its mortgages." *State Emps. Fed. Credit Union*, 2015 WL 7573220, at \*4.  Here, too, although the sale of the Virginia Beach House would diminish Prime's estate, the sale would not deplete its assets entirely.  This weighs against a finding of Appellant's suffering irreparable harm.

Appellants argue that such a conclusion is incorrect because (1) "this Court has already held that in the context of an insolvent entity, a creditor is irreparably harmed if other creditors are allowed to dissipate the available assets while that creditor seeks a judgment"; and (2) Appellees' representations concerning Prime's estate are "entirely misleading."  Dkt. No. 13 at ¶¶ 4-5.

It is true this Court previously concluded "that Prime Capital's insolvency is likely and imminent such that a judgment could not be enforced against it and Plaintiff would, in turn, be irreparably harmed." *Compass*, No. 24-55, Dkt. No. 160 at 25.  However, that conclusion was based upon the facts before the Court concerning a missing $52 million in ICA deposits which were purportedly held for Prime in a specific bank account. *See id.*  The information presented to the Court at that time was that there was not $52 million in the bank account. *See id.*

Presently, Appellants assert that "Prime's estate consists of certain limited hard, tangible assets [with an] aggregate approximately $8,000,000.00 in value, with the Virginia Beach Property representing nearly 50% of the tangible assets of the estate."  Dkt. No. 13 at ¶ 5. Appellants state that "[t]he other assets of the Prime estate are causes of action and claims against various entities around the  country, as well as loan receivables.  By definition, the causes of action and claims are not liquidated, will take substantial time and money to liquidate, may or may not result in money judgements, and ultimately may or may not be collectible in full or in part." *Id.*

Appellants cite no authority to support a contention that the Court should only consider tangible assets when determining whether there will be irreparable harm based on insolvency. *See id.*  Likewise, Appellants acknowledge that "Prime's bankruptcy schedules also list a number of high-end automobiles as property of its estate.  Those automobiles have been seized by the FBI.  At present, it is uncertain whether the automobiles will be liquidated for the benefit of Prime's estate."  *Id.* at ¶ 5, n.3.  Not only do Prime's bankruptcy schedules list several luxury vehicles, Roglieri's bankruptcy schedules list even more luxury vehicles, valued at over $19 million, other goods such as David and Goliath art and an Andy Warhol screen print of John Gotti totaling over $800,000, and watches totaling over $3 million.  *See In re Roglieri*, No. 24-10156, Dkt. No. 80.  Appellants have not explained why they never sought to bring an action for piercing the corporate veil against Roglieri which could potentially reach Roglieri's assets if they were successful.  In fact, the Receiver did bring such an action as part of his third-party complaint.  *See Compass*, No. 24-55, Dkt. No. 71 at ¶¶ 109-18.[2]

Appellants assert "that all victims of Prime's [alleged] Ponzi scheme deserve equitable and fair treatment with a pro rata distribution of available assets."  Dkt. No. 13 at ¶ 19.  The Court does not believe that the primary issue at this juncture is whether Prime should be in bankruptcy. Bankruptcy Court would indeed be the best place to decide the appropriate disbursement of funds to Prime's creditors should the Bankruptcy Court determine such disbursement is appropriate. However, a conclusion as to fault and remedy cannot be fairly reached if actions are not first appropriately filed.

---

[2] The Court is mindful that after Roglieri filed his personal bankruptcy petition, an automatic stay was placed which prompted his dismissal from the *Compass* action.  However, filing the bankruptcy petition on behalf of Prime is not an appropriate workaround for the issues created by Roglieri filing for bankruptcy.

Further, as Appellees state, Appellants have not explained why the sale of the house would not allow the Court to review the Bankruptcy Court's determinations about the Receiver and Trustee's authority to bring the bankruptcy petition. *See* Dkt. No. 12 at 17. Appellants attempt to detract from this argument by stating that they "do not concede that this Appeal would be definitively mooted by the termination of the Stay, [but] the mere risk that this Appeal could be mooted supports a finding of irreparable harm to the Debtor's estate." Dkt. No. 2-2 at ¶ 29; *see also 29 Brooklyn, LLC v. Chesley*, No. 15-CV-5180, 2015 WL 9255549, *2 (E.D.N.Y. Dec. 16, 2015) ("Appellant also fails to explain why the transfer of escrowed funds pursuant to court order would insulate that order from meaningful appellate review in this court. Accordingly, appellant has failed to show irreparable harm, and this factor weighs against granting a stay").

Additionally, Appellants' assertion that a denial of a stay could result in a "race to the courthouse" by "numerous creditors" is unpersuasive. Dkt. No. 2-2 at ¶ 27. Based on Appellants' filing, it appears that Appellees are the only creditors with a judgment lien on any of Prime's property. *See id.* at ¶ 61. Appellants have not presented any evidence other than their own speculative argument that other creditors will be "rac[ing] to the courthouse" to enforce any judgments over Prime's assets. Therefore, this argument does not alter the Court's weighing of the irreparable harm factor. *See In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) ("A showing of probable irreparable harm is the 'principal prerequisite' for the issuance of a stay pursuant to Rule 8007, and such harm 'must be "neither remote nor speculative, but actual and imminent"'") (quotation omitted).

As to whether Appellees will suffer substantial harm if a stay is issued, in his decision, Judge Littlefield concluded that "[b]y granting a stay pending appeal, the Court would be further

frustrating the B&R Parties' right as established in arbitration and a court of law." *In re Prime*, No. 24-10531, Dkt. No. 85 at 15. As Appellees state in their response, Appellants did not address Judge Littlefield's conclusion in their motion or argue why it was an abuse of discretion. *See Levine*, No. 24-939, Dkt. No. 12 at 18.

Appellants do assert that "the Virginia Beach House is not vacant, and not at risk of deteriorating in value during the time needed for Movants to prosecute this Appeal. The Receiver has paid for insurance on the Virginia Beach House and will maintain that insurance pending the Appeal. The insurance is fully paid for through January 31, 2025." Dkt. No. 2-2 at ¶ 35. They contend that "other than the Appellees' lien and a notice of pendency filed by the Receiver, the Virginia Beach House is unencumbered, so entry of a stay pending resolution of this Appeal will not result in harm to any other creditor constituencies." *Id.* (footnote omitted). Appellees argue that the diminution of value in the home constitutes substantial harm and that they "have serious and justified concerns about [the occupant's] interest and ability to maintain the Virginia Beach House in a satisfactory manner." Dkt. No. 12 at 18, n.11.

Courts have concluded that the diminution of property value can establish substantial injury if a stay is issued. *See In re Jones*, No. 23-35048, 2023 WL 3856333, *3 (Bankr. S.D.N.Y. June 6, 2023) ("The Court finds that there may be substantial harm to the secured creditor, Pennymac, if the stay is imposed for the duration of the appeal. Granting the Debtors' relief would further delay Pennymac's foreclosure action which it seeks to pursue with respect to its mortgage on the Debtor's property"); *G.L.A.D. Enterprises, LLC v. Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2006-1*, No. 23-CV-3985, 2023 WL 5127835, *2 (S.D.N.Y. Aug. 10, 2023) (collecting cases concerning delay in foreclosure actions); *In re Kossoff PLLC*,

No. 21-10699, 2024 WL 665913, *7 (Bankr. S.D.N.Y. Feb. 16, 2024) ("Meanwhile, as discussed above, Debtors (here, the estate) will suffer substantial harm if a stay is granted due to the delay in completion of estate administration, the inevitable accrual of additional expense, and the resulting delay in compensation to the crime victims who are the primary creditors of the estate"); *In re Sphere Holding Corp.*, 162 B.R. 639, 644-45 (E.D.N.Y. 1994) ("This case does not involve, for example, the need to protect against diminution in the value of property pending appeal. . . . Because there is no collateral at stake neither the creditors nor the U.S. Trustee will likely be damaged if debtor is unsuccessful on appeal") (citation omitted).  As Appellees contend, it appears that they followed an appropriate path in obtaining a judgment lien for their ICA deposit. A stay would only continue to delay any relief they are legally entitled to and would delay compensation for at least one of Prime's victims.

Based on the foregoing, the Court concludes that the first two factors weigh against issuing a stay pending appeal.

### 2. Substantial Possibility of Success on Appeal

Appellants argue that the Bankruptcy Court misconstrued a Delaware statute, failed to consider federal law preempting state law, and erred in concluding that the Receiver's authority did not extend to filing the bankruptcy petition on Prime's behalf.  *See* Dkt. No. 2-2 at ¶¶ 39-56.

Appellees argue that the Receiver did not have authority to file the bankruptcy petition, the Trustee did not have authority to ratify the petition, and even if the Trustee did have the authority to ratify it, the ratification is ineffective.  *See* Dkt. No. 12 at 18-26.

### a.  Receiver's Authority

"As a court-created entity, a receiver has only those powers provided for in the appointment order and may perform only those acts expressly authorized by the appointing court." *Sec. Pac. Mortg. & Real Est. Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 211 (2d Cir. 1992) (citing *Daro Indus. v. RAS Enters.*, 44 N.Y.2d 969, 970 (1978)). "Subsequent to the appointment of a receiver, 'a court retains the equitable power to review the actions of the receiver and the propriety of continuing the receivership.'" *Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 829 F. Supp. 82, 85 (S.D.N.Y. 1993) (quotation omitted). "Federal courts may grant a receiver powers that include the day-to-day management of the business entity, including the authority to liquidate assets, the authority to pursue claims, and the authority to file for bankruptcy." *In re Bayou Grp., L.L.C.*, 363 B.R. 674, 683 (S.D.N.Y. 2007), *aff'd sub nom. In re Bayou Grp., LLC*, 564 F.3d 541 (2d Cir. 2009) (collecting cases)

Appellants rely on this Court's grant of authority to the Receiver conferring "exclusive dominion and control over all of the assets, books and records, operations, and business affairs of the Debtor." Dkt. No. 2-2 at 18 (quotation omitted). However, as Appellees correctly explain, this Court expressly limited the Receiver's authority upon his permanent appointment by removing power over all claims, demands, or causes of action of any kind. *Compare Compass*, No. 24-55, Dkt. No. 8, *with* Dkt. No. 56. This change was not accidental. The Court specifically omitted from the permanent appointment, the power over "all claims, demands, or causes of action of any kind." Dkt. No. 8 at 2.

Additionally, as the Bankruptcy Court correctly explained, this Court reiterated the purpose of the Receiver numerous times, which was "to locate the assets of Prime and ICA payments of the plaintiff to provide a clear picture of the financial situation to the District Court

and all parties involved." Dkt. No. 85 at 9 (quotation omitted); *see also Compass*, No. 24-55, Dkt. No. 56 at 11; Dkt. No. 160 at 23-24, 33; Dkt. No. 184 at 9.

Appellants contend that their motion and appeal "are easily resolved" based on "[t]he prior interpretation by the Court of its own order . . . ." Dkt. No. 13 at ¶ 1. They argue "[t]he Court should reject [Appellees'] request to reverse its prior March 19, 2024 Decision and Order." *Id.* Appellants rely on two sources of authority: (1) the Court's decision granting the Receiver's motion for "pre-judgment attachment . . . over the monies related to Prime Capital that can be verifiably traced as being sent from Prime Capital to the Third-Party Defendant entities" *Compass*, No. 24-55, Dkt. No. 160 at 53; and (2) a New York County Supreme Court, Commercial Division decision which relied on this Court's appointment of the Receiver. *See In re Prime*, No. 24-10531, Dkt. No. 77-3. In the New York Supreme Court's decision, the court explained as follows:

> Defending lawsuits is part of the "operations and business affairs of" a company and thus is within the scope of the receivership order (Dkt. 47 at 20; *see Wenger v L.A. Wenger Contracting Co.*, 114 AD3d 694, 695 [2d Dept 2014]). Deciding whether to settle or litigate, and indeed how much to spend on attorneys, can materially affect a company's finances. Given the nature of the receiver's role, the context of his appointment, and the breadth of his duties, it seems doubtful that the district court intended to carve out directing the company's legal affairs from the scope of his authority.

*In re Prime*, No. 24-10531, Dkt. No. 77-3 at 2. The court noted, "[a]fter all, the district court permitted the federal third-party action commenced by the receiver to proceed. Presumably the district court would not have done so if the receiver was not in charge of the company's legal affairs." *Id.* The court did state however that it, "of course, will defer to the district court if it makes clear that the receiver lacks such authority." *Id.*

Appellants' reliance on these decisions is unpersuasive.  First, this Court granted pre-judgment attachment over monies traceable to Prime after the Receiver moved for such relief. *See Compass*, No. 24-55, Dkt. No. 72.  The Receiver never requested permission to file a bankruptcy petition on behalf of Prime.  Second, in the Court's appointment order, it granted the Receiver "exclusive dominion and control over all of the assets, books and records, operations and business affairs of" Prime extended such authority "to all of [Prime's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located." Dkt. No. 56 at 19.  It is axiomatic to state that "monies related to Prime Capital that can be verifiably traced as being sent from Prime Capital to the Third-Party Defendant entities" falls under the umbrella of Prime's "equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located."  Dkt. No. 160 at 53; Dkt. No. 56 at 19.  There is not such a clear and obvious provision under which the power to file for bankruptcy falls. Indeed, the Court recognized that "receivership should not be used as an alternative to bankruptcy." Dkt. No. 56 at 18 (quotation omitted).

Third, the Court respects the New York Supreme Court's decision and interpretation of this Court's decision.  However, the Court did intend to carve out complete control over legal affairs from the Receiver's duties.  The appointment of a receiver is a rare remedy and indeed a remedy this Court has never before granted.  The Court expressly limited the Receiver's authority in its permanent appointment order to omit control over "all claims, demands, or causes of action of any kind," but maintained the Receiver's "authori[ty] to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets." Dkt. No. 56 at 19.  Much like the request for pre-judgment attachment over

assets traceable from Prime, the Receiver could have moved this Court for permission to file a bankruptcy petition on Prime's behalf if he felt that it was appropriate to help ascertain Prime's assets.

Fourth, the New York Supreme Court relied, in part, on this Court "permit[ing] the federal third-party action commenced by the receiver to proceed." *In re Prime*, No. 24-10531, Dkt. No. 77-3 at 2.  Mr. Van Tol filed a motion to dismiss the third-party complaint. *See Compass*, No. 24-55, Dkt. No. 109.  The Court struck the motion for failure to comply with the Court's Individual Rules which require a pre-motion letter and conference concerning dispositive motions. *See* Dkt. No. 110.  Mr. Van Tol subsequently complied and filed such a letter. *See* Dkt. No. 115. However, in its seventy-three-page decision, ruling on ten different requests and/or motions, the Court denied the request for a pre-motion conference "pending completion of arbitration." Dkt. No. 160 at 72.  The Court also ordered that no further motions or letters briefs be filed without the Court's permission pending the Second Circuit's resolution of Prime's appeal. *See id.*

The Court finds is important to remind Appellants that Prime's appeal related solely to the Court's appointment of a permanent receiver.  If the Second Circuit were to reverse the Court, then every action requested or taken by the Receiver would have been improper.  It was, therefore, prudent for the Court to learn of the Second Circuit's decision prior to taking any further action in the *Compass* case as every single action necessarily concerned the Receiver.  The Receiver filed the bankruptcy petition on May 14, 2024.  The appeal to the Second Circuit was withdrawn by stipulation on June 17, 2024. *See Compass*, No. 24-55, Dkt. No. 183.  Had the appeal not been withdrawn and the Second Circuit decided that the Receiver's appointment was inappropriate, then the bankruptcy petition also would have been improper.  It is unclear to the

Court why the Receiver filed the bankruptcy petition when an appeal was pending questioning his appointment, a Trustee had not yet been appointed in Roglieri's personal bankruptcy, and he could have sought permission from this Court to file the petition. The Court concurs with Judge Littlefield's assessment that absent rectifying the appropriate procedure for filing a bankruptcy action or seeking additional relief on behalf of Prime, all of the cases and parties involved in the various litigations "would be in a constant state of uncertainty as [a] flawed foundation threatens to topple what is built upon it." *In re Prime*, No. 24-10531, Dkt. No. 85 at 13.

Next, as the parties explain, the Trustee did ratify the Receiver's bankruptcy filing. *See* Dkt. No. 2-2 at ¶ 18; Dkt. No. 12 at 23. The Trustee did so "in his capacity as the Chapter 7 Trustee to the bankruptcy estate of [Kris] Daniel Roglieri . . . which bankruptcy estate is the sole member of Prime Capital Ventures, LLC . . . ." *In re Prime*, No. 24-10531, Dkt. No. 66. However, the Bankruptcy Court concluded that the Trustee did not have the authority to do so because under Delaware Law, "'[a] person ceases to be a member of a limited liability company upon' the filing of a voluntary bankruptcy petition." Dkt. No. 85 at 12 (quoting 6 Del. C. § 18-304(1)(b)) (footnote omitted).

Appellants argue that in relying on Delaware Law, the Bankruptcy Court failed to consider the applicable statute in its entirety. *See* Dkt. No. 2-2 at ¶ 39. The Bankruptcy Court concluded that "Prime's operating agreement does not contradict Delaware law, therefore Roglieri 'cease[d] to be a member' of Prime upon filing." *In re Prime*, No. 24-10531, Dkt. No. 85 at 12.

The statute provides as follows:

> A person ceases to be a member of a limited liability company upon the happening of any of the following events:

> (1) Unless otherwise provided in a limited liability company agreement, or with the consent of all members, a member:
>
>> a. Makes an assignment for the benefit of creditors;
>>
>> b. Files a voluntary petition in bankruptcy;
>>
>> c. Is adjudged a bankrupt or insolvent, or has entered against the member an order for relief, in any bankruptcy or insolvency proceeding;
>>
>> d. Files a petition or answer seeking for the member any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation;
>>
>> e. Files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the member in any proceeding of this nature; [or]
>>
>> f. Seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the member or of all or any substantial part of the member's properties[.]

6 Del. C. § 18-304(1).

Appellants argue that the Bankruptcy Court failed to consider the clause, "or with the consent of all members," which would alter the decision because "Roglieri filed his own voluntary bankruptcy petition with the Bankruptcy Court.  In doing so, as the 100% member of Prime, he clearly gave consent to his own voluntarily filed petition such that his filing was 'with the consent of all members' of Prime because he is the only member of Prime."  Dkt. No. 2-2 at ¶¶ 40-41.  They also argue that § 541 of the Bankruptcy Code preempts Delaware law and allows the Trustee to maintain rights over Prime and, in turn, the authority to ratify the bankruptcy filing.  *See id.* at ¶¶ 44-47.

Appellees contend that Appellants have merely asserted the Trustee had the authority to control Prime, but have not otherwise proven that the Trustee had such authority. *See* Dkt. No. 12 at 23. Appellees explain that Appellants failed to address Prime's Operating Agreement in its motion, and that the Delaware Supreme Court has concluded that section 18-304 of Delaware Law is not preempted by the Bankruptcy Code. *See id.* (citations omitted).

It is true that Delaware courts have concluded

> that federal bankruptcy law partially preempts Section 18-304, to the extent that Section 18-304 deprives a member of a limited liability company of the member's economic rights in the company. Specifically, it wrote that "the practical effect of [this] ruling leaves § 18-304 with continued vitality. Essentially, . . . § 18-304 means that a member who files for bankruptcy still ceases to be a member, but becomes an assignee with the economic rights specified in § 18-702(b)."

*Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 at *3 (Del. 2021) (quoting *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 762 (Del. Ch. 2004)). However, both *Zachman* and *Milford Power* concerned companies with more than one member. Here, Prime is a single member owned company.

Numerous courts across the country have concluded "[w]here the bankruptcy estate in a Chapter 7 bankruptcy has a membership interest in a single-member LLC, the trustee controls the LLC." *In re B & M Land & Livestock, LLC*, 498 B.R. 262, 266 (D. Nev. 2013); *In re A-Z Elecs., LLC*, 350 B.R. 886, 890 (D. Idaho 2006) ("[T]he difference between a single-member LLC and a multi-member LLC. . . [is that] 'there are no other members in the LLC, . . . the Debtor's bankruptcy filing effectively assigned her entire membership interest in the LLC to the bankruptcy estate, and the Trustee obtained all her rights, including the right to control the management of the LLC'") (quoting *In re Albright*, 291 B.R. 538, 540 (D. Colo. 2003)); *In re*

*Modanlo*, No. 06-CV-1168, 2006 WL 4486537, *10 (Bankr. D. Md. Oct. 11, 2006); *In re Cleveland*, 519 B.R. 304, 306-07 (D. Nev. 2014); *In re Chatha*, No. 17-25335-B-7, 2022 WL 4101292, *2 (Bankr. E.D. Cal. Sept. 6, 2022); *In re Dzierzawski*, 528 B.R. 397, 410 (E.D. Mich. 2015) ("In their arguments, the Debtor and Vulpina both assume that if the Chapter 7 Debtor in this case is established as the sole member of this LLC, the Chapter 7 Trustee could step into the Debtor's shoes as the sole member of the LLC, and exercise the Debtor's rights to control the management of the LLC. . . .  There has been no expression of any dispute between the Debtor and Vulpina about these assumptions, and in any event, these assumptions appear to reflect a correct view of the law") (collecting cases).; *In re Fontenot*, No. 20-50588, 2023 WL 3047842, *5 (Bankr. W.D. La. Apr. 20, 2023).

Appellees distinguish *In re Modanlo*, 2006 WL 4486537, at *5, because "[t]he *Modanlo* trustee, unlike the Trustee here, took steps to resuscitate the LLC under Delaware law and amended the LLC's operating agreement to grant himself authority to place that entity in bankruptcy." Dkt. No. 12 at 24.  Appellees are correct that the trustee in *Modanlo* "acted in an attempt to resuscitate NYSI under Delaware law by executing the LLC Amendment and later the LLC Consent."  2006 WL 4486537, at *5.  Nevertheless, the court acknowledged "[w]hen an LLC is dissolved for lack of remaining members, section 18-806 empowers the bankruptcy trustee, as personal representative of the last remaining member, to consent to the continuation of the LLC and to become the sole member of the LLC." *Id.* at *10 (citing Del.Code Ann. tit. 6, § 18-806).

Moreover, as Appellants explain, cases have concluded that state law and/or an operating agreement can be preempted by § 541 of the Bankruptcy Code where the issue concerns

"termination or modification of an interest solely due to a debtor's bankruptcy." *In re Prebul*, No. 1:11-CV-214, 2012 WL 5997927, *11 (E.D. Tenn. Nov. 30, 2012); *see also* Dkt. No. 2-2 at ¶¶ 44-46 (citing *In re Woodfield*, 602 B.R. 747, 756 (D. Or. 2019); *Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 647, 656 (N.D. W. Va. 2012); *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (W.D. Ark. 2011). Additionally, as Appellants explain, a case out of the Southern District of Texas has concluded the same. *See* Dkt. No. 13 at ¶ 17 (citing *In re Envision Healthcare Corp.*, 655 B.R. 701, 711-12 (Bankr. S.D. Tex. 2023)). In *Envision*, the court held "Section 18-304 of the Act directly conflicts with, and must give way to, § 541 of the Bankruptcy Code." *Envision*, 655 B.R. at 712.

Although, as explained by Appellees, other courts have concluded that Delaware section 18-304 is not preempted, those cases were being applied in the context of multi-member owned corporations. The cases concluding otherwise in the context of single-member LLCs are persuasive.

The Court also agrees that, as a practical matter, the Bankruptcy Court's conclusion that "the Trustee has no authority to participate in the management of Prime," is questionable. This is potentially an unworkable conclusion because if the Trustee does not have authority over Prime's ability to enter bankruptcy, who does? Roglieri does not because his assets are controlled by the Trustee. The Receiver does not because the Court purposefully omitted such authority from its grant of power. This practical issue combined with the authority set forth above suggests that the Trustee did have the authority to ratify the Receiver's bankruptcy filing.

Nevertheless, as Appellees argue, that ratification must have been effective under the law. *See* Dkt. No. 12 at 25. Appellees state that during the bankruptcy proceedings, Appellants relied

on *In re W.R. Grace & Co.*, 366 B.R. 302, 306 (D. Del. 2007), to support the contention that the Trustee had the authority to ratify the bankruptcy petition.  *See id.*  In his decision, Judge Littlefield noted that "[a]t the hearing on the Motion, the B&R Parties raised the argument that the Trustee's ratification is invalid because he did not have such authority on the date that Prime's bankruptcy was filed. . . . While this argument appears valid, further analysis is unnecessary since Roglieri's membership interest ceased to exist upon the filing of his personal bankruptcy."  *In re Prime*, No. 24-10531, Dkt. No. 85 at 12, n.8.  The Court agrees that Appellees argument appears valid.

The Supreme Court has explained that "[t]he intervening rights of third persons cannot be defeated by the ratification.  In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made.'"  *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994) (quoting *Cook v. Tullis*, 85 U.S. (18 Wall.) 332, 338 (1874)) (emphasis omitted); *see also Grace & Co.*, 366 B.R. at 306 ("[U]nauthorized acts can be ratified or affirmed.  However, ratification is not effective when it takes place after a deadline").

The Trustee was not appointed until May 15, 2024.  *See In re Roglieri*, No. 24-10157, Dkt. No. 160.  The Receiver filed the Bankruptcy petition one day prior, on May 14, 2024.  *See In re Prime*, No. 24-10531, Dkt. No. 1.  Therefore, as Appellees contend, at the time the bankruptcy petition was filed, the Trustee could not have ratified the filing.  *See Levine*, No. 24-939, Dkt. No. 12 at 25.  Nevertheless, neither party provides "a deadline" by which ratification was required to have occurred.  *Grace*, 366 B.R. at 306.

Appellants argue that "since Roglieri (the debtor) had the right to ratify the Prime bankruptcy filing, the Trustee would have the same right *regardless of when he was appointed*." *Levine*, No. 24-939, Dkt. No. 13 at ¶ 13 (emphasis added).  They reiterate this contention, stating "because Roglieri was the sole member of Prime on May 14, 2024, the day the Receiver filed the Prime bankruptcy petition, the Trustee, *regardless of when he was appointed*, succeeds to that authority, and therefore clearly had the right to ratify the filing of the Prime bankruptcy by the Receiver." *Id.* at ¶ 15 (emphasis added).  Appellants provide no authority to support their statements. *See id.* at ¶¶ 13, 15.

Appellees also argue "Section 547(b) allows the trustee to avoid a 'transfer of an interest of the debtor in property' if it occurred within 90 days of the date of the filing of the bankruptcy petition, and certain other conditions are met . . . ." *In re Perosio*, 277 Fed. Appx. 110, 111 (2d Cir. 2008); *see* Dkt. No. 12 at 25.  Appellees assert that "[b]etween the May 14 filing and the Trustee's July 9, 2024 purported ratification, the 90 day period for a transfer to be subject to a § 547 avoidance action expired." Dkt. No. 12 at 25-26.  However, if the Trustee's ratification dates back to the original filing of the petition, then the "transfer of an interest" through Appellees' judgment lien entered on February 28, 2024, was within 90 days of the May 14, 2024, bankruptcy filing. Appellants do not address the applicability of § 547 in their reply.  *See* Dkt. No. 13.

As Appellants explain, the "substantial possibility" of success standard "is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'" *In re Plasterer*, No. 8-22-71632, 2023 WL 6217801, *5 (Bankr. E.D.N.Y. Sept. 25, 2023) (quotation and quotation marks omitted); *see also* Dkt. No. 13 at ¶ 9.  Appellants have presented a persuasive argument that the Trustee had control over Roglieri's estate which included

control of his solely owned company, Prime, such that he had the authority to ratify the Receiver's filing.  However, the Receiver's authority is derived from the Court that appointed it and the permanent appointment order does not include authority to bring causes of actions on Prime's behalf.  It also does not appear that the Trustee could have "do[ne] the act ratified at the time the act was done," *i.e.*, he could not have filed the bankruptcy petition on May 14, 2024, because he was not yet appointed as Trustee.  *Fed. Election Comm'n*, 513 U.S. at 98.  Based on the foregoing, the Court concludes that Appellants have not shown a substantial possibility of success and this factor weighs against a stay.

### 4. Public Interest

Appellants agree "[i]t is well settled that "[t]he interests of creditors are a significant determinant of the public interest in a bankruptcy case.'"  Dkt. No. 2-2 at ¶ 59 (quoting *In re Taub*, No. 08-44210, 2010 WL 3911360, *6 (Bankr. E.D.N.Y. Oct. 1, 2010)) (citations omitted).  They argue that the public interest is not served "by placing the interests of one creditor, the Appellees, over the interests of every other creditor."  *Id.* at ¶ 61.  They contend that "[t]he lack of a stay pending appeal would deprive the other creditors of the protection of the automatic stay which prevents the race to the courthouse which would allow the dismantling of Prime's remaining assets, many of which the Receiver has located."  *Id.*  Appellants assert that "[t]he only way to maintain the status quo pending appeal and ensure proper application of the Bankruptcy Code (including the goal of preserving valuable estate assets in the form of preference avoidance claims and to preserve the automatic stay so that other estate assets are not subject to numerous lawsuits) is to grant the requested stay."  Dkt. No. 13 at ¶ 19.

Appellees argue that a stay would harm the public interest because "[l]ike other creditors, [Appellees] fell victim to a brazen Ponzi scheme.  Unlike other creditors, [Appellees] pursued their claims strictly in accordance with [their credit agreement], obtained an arbitration award and judgment against Prime, and enrolled that Judgment."  Dkt. No. 12 at 26.  They aver that "[t]he Receiver's unauthorized filing was and is an attempt to inappropriately wield the Bankruptcy Code for purpose of depriving [Appellees] of their real property interest."  *Id.*

"'The law permits the stay pending appeal of an order where the high standards for a stay are met.  But where . . . those standards are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest.'"  *In re 473 W. End Realty Corp.*, 507 B.R. at 508 (quoting *In re Taub*, 2010 WL 3911360, at *6).  "In general, '[c]ourts recognize that the public interest disfavors stays because the public interest favors the expedient administration of the bankruptcy proceedings.'"  *G.L.A.D. Enterprises*, 2023 WL 5127835, at *4 (quoting *In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 WL 2657345, *11 (Bankr. S.D.N.Y. July 8, 2022)).  "That is particularly so where a debtor has abused the bankruptcy process to 'frustrate and delay . . . creditor[s] from exercising [their] legitimate rights.'"  *Id.* (quoting *In re Melton*, No. 11-70984, 2011 WL 1600506, at *5 (Bankr. E.D.N.Y. Apr. 27, 2011)); *see also In re Baker*, No. 1:01-24227, 2005 WL 2105802, *10 (E.D.N.Y. Aug. 31, 2005) ("Having determined that the Debtor is unlikely to succeed on appeal, I find that the public interest is better served by allowing distributions under the Plan to proceed in an expeditious manner").

The Court finds no abuse of discretion in Judge Littlefield's conclusion that a stay would not advance the public interest where the harm to Appellants is monetary, the harm to Appellees

is an inability to enforce their legally awarded judgment, and Appellants have not demonstrated a substantial possibility of success on appeal.  As explained by Judge Littlefield and Appellees, Appellants are not without legal recourse.  *See* Dkt. No. 12 at 17; *In re Prime*, No. 24-10531, Dkt. No. 85 at 9.  Contrary to Appellants' assertion that "[t]he *only* way to maintain the status quo pending appeal," is to grant a stay, it is possible that the Trustee could file for bankruptcy on Prime's behalf, or the Receiver could apply for additional powers or authority.  Interestingly, in the Receiver's last status report submitted to this Court on April 18, 2024, he acknowledged that Appellees' arbitration award had been converted to a judgment.  *See Compass*, No. 24-55, Dkt. No. 173 at 11.  However, he stated nothing about his intention to stop the execution of that judgment, bring a bankruptcy proceeding, or otherwise challenge any of Appellees' conduct related to its claims against Prime.  The reason why such intended actions were not reported to the Court despite the Court's appointment order stating that the Receiver "shall be answerable and account to the Court for the Receiver's activities," is unclear.  The public interest is not served when the most appropriate path to pursue legal recourse is not followed.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Appellants' motion for a stay pending appeal (Dkt. No. 2) is **DENIED**; and the Court further

**ORDERS** that the stay entered on July 31, 2024, is **VACATED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 15, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge