# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF NEW YORK

---

Paul A. Levine, *Permanent Receiver for Debtor
Prime Capital Ventures, LLC et al.,*

Appellants,

v.                          Civil Case No. 24-cv-939 (MAD)

B and R Acquisition Partners, LLC and
JHM Lending Ventures, LLC,

Appellees.

---

## BRIEF FOR APPELLANTS

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
        lkiss@klestadt.com

*General Counsel to Prime
 Capital Ventures, LLC*

**THE DRIBUSCH LAW FIRM**
Christian H. Dribusch, Esq.
187 Wolf Road, Suite 300-020
Albany, New York 12205
Tel: (518) 227-0026
Email: cdribusch@chd-law.com

*General Counsel to Christian H.
Dribusch, Chapter 7 Trustee of the
Estate of Daniel Kris Roglieri*

**NOLAN HELLER KAUFFMAN LLP**
Justin A. Heller, Esq.
Matthew M. Zapala, Esq.
80 North Pearl Street, 11th Floor
Albany, New York 12207
Tel: (518) 449-3300
Email: jheller@nhkllp.com
        mzapala@nhkllp.com

*Co-Counsel to Compass-Charlotte 1031, LLC*

**PARKER POE ADAMS &
BERNSTEIN LLP**
William L. Esser IV, Esq. (pro hac vice)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: (704) 335-9507
Fax: (704) 334-4706
Email: willesser@parkerpoe.com

*Co-Counsel to Compass-Charlotte 1031, LLC*

## CORPORATE DISCLOSURE STATEMENT

Prime Capital Ventures, LLC, the chapter 7 bankruptcy estate of Kris Daniel Roglieri, and Compass-Charlotte 1031, LLC state that no publicly held corporation owns 10% or more of its stock.

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES PRESENTED ......................................................2

STANDARD OF APPELLATE REVIEW........................................................2

STATEMENT OF THE CASE AND RELEVANT FACTS ON APPEAL......................................2

SUMMARY OF THE ARGUMENT ..............................................................6

ARGUMENT ............................................................................7

POINT I – THE BANKRUPTCY COURT ERRED IN HOLDING THAT (I) ROGLIERI CEASED TO BE A MEMBER OF THE DEBTOR UPON HIS BANKRUPTCY FILING AND (II) THE ROGLIERI TRUSTEE HAD NO AUTHORITY TO PARTICIPATE IN THE MANAGEMENT OF THE DEBTOR ................................7

POINT II – THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT THE ROGLIERI TRUSTEE'S RATIFICATION WAS INEFFECTIVE ................................16

    A. Delaware Law Permits Ratification ................................................16

    B. Courts Regularly Permit Ratification of Unauthorized Bankruptcy Petitions..................18

    C. The Roglieri Trustee Had Authority to Ratify Prior Acts of the Receiver.........................18

    D. Appellee's Statute of Limitations Argument is Irrelevant to Effectiveness of Ratification ................................22

CONCLUSION.........................................................................25

## <u>TABLE OF AUTHORITIES</u>

***Cases:***

*Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432 (2d Cir. 2008) .........2

*Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581 (Del. Sup. 1948) ..................................21

*Bureau of Consumer Fin. Prot. v. Citizens Bank, N.A.,* 504 F. Supp. 3d 39 (D. R.I. 2020) .........22

*Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979) .................................9

*Dearborn Process Serv., Inc. v. Storner*, 149 B.R. 872 (Bankr. N.D. Ill. 1993) ..........................18

*Duncan v. Dixie Mgmt. & Inv., Ltd. Partners (In re Dixie Mgmt. & Inv., Ltd. Partners)*, 474 B.R. 698 (Bankr. W.D. Ark. 2011) ..........................................................................................................14

*Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994)...............23, 25

*Frank v. Wilson & Co.*, 32 A.2d 277 (Del. Sup. 1943) .................................................................17

*Fursman v. Ulrich (In re First Prot., Inc.)* 440 B.R. 821 (9th Cir. BAP 2010) ............................15

*Hannigan v. Italo Petroleum Corp.*, 47 A.2d 169 (Del. Sup. 1945).............................................17

*Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997)...............................................................................18

*Impact Sols., LLP v. Irby*, No. 21-cv-15143, 2023 Cal. Super. LEXIS 83691 (L.A. Sup. Ct. Oct. 3, 2023) ...........................................................................................................................................8

*In re A-Z Elecs., LLC*, 350 B.R. 886 (D. Idaho 2006) ..................................................................15

*In re Adelphia Commc'ns Corp.*, 333 B.R. 649 (S.D.N.Y. 2005) ...................................................1

*In re Albright,* 291 B.R. 538 (Bankr. D. Colo. 2003) ...................................................................15

*In re Bresnick*, 406 B.R. 582 (Bankr. E.D.N.Y. 2009) .................................................................19

*In re Eddy*, 304 B.R. 591 (Bankr. D. Mass. 2004) .......................................................................20

*In re Envision Healthcare Corp.*, 655 B.R. 701 (Bankr. S.D. Tex. 2023) .......................10, 11, 13

*In re Melbourne Beach, LLC*, Case No. 17-bk-07975 (KJS), 2019 Bankr. LEXIS 4113 (Bankr. M.D. Fla. Aug. 6, 2019)................................................................................................................16

*In re Richardson Foods, Inc.*, 659 B.R. 154 (Bankr. S.D.N.Y. 2024) ....................................16, 18

*In re Valles Mechanical Industries, Inc.*, 20 B.R. 355 (Bankr. N. Ga. 1982) ..............................21

*In re W.R. Grace & Co.*, 366 B.R. 302 (Bankr. D. Del. 2007) .................................................23, 25

*In re Woodfield*, 602 B.R. 747 (Bankr. D. Or. 2019) .....................................................................14

*Kajmowicz v. Whitaker,* 42 F.4th 138 (3d Cir. 2022) ...................................................................21

*Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d. Cir. 1988).............................................9

*Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738 (Del. Ch. 2004)........8, 9, 13

*Modanlo v. Mead (In re Modanlo)*, No. 06-CV-1168, 2006 U.S. Dist. LEXIS 96045 (D. Md.
    Oct. 11, 2006) ..............................................................................................................12, 15

*Morrison v. United States Trs.*, 09-CV-3565 (CBA), 2010 U.S. Dist. LEXIS 63339 (E.D.N.Y.
    June 24, 2010) ..........................................................................................................................9

*NLRB v. Newark Elec. Corp.*, 14 F.4th 152 (2d Cir. 2021) ..........................................................22

*Off. Comm. of Unsecured Creditors of Renaissant Lafayette LLC v. Interforum Holding LLC*,
    Case No. 11-C-0172, 2013 U.S. Dist. LEXIS 38723 (E.D. Wis. Mar. 20, 2013) ..................18

*Omanoff v. Reifler (In re Reifler)*, 2023 U.S. Dist. LEXIS 152972 (S.D.N.Y. Aug. 25, 2023) ...10,
15

*Powers v. American Honda Fin. Corp.*, 216 B.R. 95 (N.D.N.Y. 1997)............................................2

*Prebul v. Bensusan (In re Prebul)*,
    No. 1:11-CV-214, 2012 U.S. Dist. LEXIS 170098 (E.D. Tenn. Nov. 30, 2012) ...................14

*State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177 (D. D.C. 2016) ...............................22

*Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*,
    Case No. 16-13164 (JLG), 2021 Bankr. LEXIS 182 (Bankr. S.D.N.Y. 2021) .......................20

*Union Bank v. Wolas*, 502 U.S. 151, 112 S. Ct. 527, 116 L. Ed. 2d 514 (1991)...........................25

*Warner v. Warner,* 480 B.R. 641, 647 (Bankr. N.D. W. Va. 2012) ..............................................14

*Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.*), 648 B.R. 434 (S.D.N.Y. 2022)..14

*Wilmington Trust, N.A. v. Pinnacle Land Grp., LLC (In re Pinnacle Land Grp., LLC)*,
    Case No. 17-23339 (GLT), 2018 Bankr. LEXIS 2764 (Bank. W.D. Pa. Sept. 10, 2018)........17

*Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 (Del. 2021) .......................................7, 8

*Other Authorities:*

11 U.S.C. § 108 ..................................................................................................24

11 U.S.C. § 323 ..................................................................................................20

11 U.S.C. § 541 ...............................................................9, 10, 11, 13, 16, 14, 19

11 U.S.C. § 546(a) .............................................................................................24

11 U.S.C. § 547(b) .......................................................................................7, 24, 25

11 U.S.C. § 547(b)(4) ...................................................................................22, 23

11 U.S.C. § 548(a)(1) ........................................................................................24

11 U.S.C. § 1101(1) ...........................................................................................19

11 U.S.C. § 1107(a) ...........................................................................................19

11 U.S.C. § 1108 ................................................................................................19

28 U.S.C. § 157(b)(1) ..........................................................................................1

28 U.S.C. § 158(a)(1) ...........................................................................................1

28 U.S.C. § 1334 ..................................................................................................1

Delaware Limited Liability Company Act § 18-304(1)(b) ...............7, 8, 9, 11

Delaware Limited Liability Company Act § 18-402 .......................................10

Delaware Limited Liability Company Act § 18-702 ...............................9, 10, 12

Delaware Limited Liability Company Act § 18-801 .......................................11

Delaware Limited Liability Company Act § 18-801(a)(4) ..............................11

Delaware Limited Liability Company Act § 18-806 .......................................12

Federal Rule of Bankruptcy Procedure 8002(a)(1) ..........................................1

19 C.J.S. Corporations sec. 692 ......................................................................20

Fletcher Cyclopedia of the Law of Corporations sec. 762 ............................21

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of New York (the "District Court") has jurisdiction to consider the within appeal (the "Appeal") pursuant to 28 U.S.C. § 158(a)(1) as this is an appeal from a final judgment, order or decree entered by the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court").

The within appeal is timely under Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Memorandum Decision and Order dismissing the Debtor's chapter 11 case was entered by the Bankruptcy Court on July 23, 2024 (Doc. No. 27, Exhibit 32)[1] and is a final order.  *See In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 656 (S.D.N.Y. 2005) ("A bankruptcy court's order is 'final' if it 'completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to proper relief.'") (citations omitted).  On July 29, 2024, (i) Paul A. Levine, the permanent receiver (the "Receiver") of Prime Capital Ventures, LLC (the "Debtor" or "Prime") appointed by Order dated January 24, 2024 of the District Court, (ii) Christian H. Dribusch, the Chapter 7 trustee (the "Roglieri Trustee") of Kris Daniel Roglieri ("Roglieri"), and (iii) Compass-Charlotte 1031, LLC ("Compass", and collectively with the Receiver and the Roglieri Trustee, the "Appellants")[2],  timely filed a notice of appeal of the Bankruptcy Court's Memorandum Decision and Order.  *See* Doc. No. 27, Exhibit 34.  The Bankruptcy Court had jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §

---

[1] References to the record will be in the form of "Doc. No.___, Exhibit ___" and, if necessary, to the exhibits attached thereto, and/or paragraphs or page numbers in order to refer to the particular document lodged on the ECF docket of this Appeal.

[2] On September 16, 2024, the Roglieri Trustee, acting as the manager of Prime, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court for Prime.  *See In re Prime Capital Ventures, LLC*, Case No. 24-11029 (Bankr. N.D.N.Y.), Dkt. No. 1.  As a result, the Receiver is no longer a party to the instant appeal and has been replaced by Prime, which is managed by the Roglieri Trustee and represented by the law firm of Klestadt Winters Jureller Southard & Stevens, LLP.

157(b)(1) and 28 U.S.C. § 1334, as the proceedings therein represented a core proceeding bought under Title 11 of the United States Code (the "Bankruptcy Code").

## STATEMENT OF ISSUES PRESENTED

1.    Whether the Bankruptcy Court erred when it held that under Delaware law and the Debtor's operating agreement, the Roglieri Trustee had no authority to participate in the management of the Debtor and therefore ratify and validate the Debtor's bankruptcy case.

2.    Whether the Bankruptcy Court erred when it held that the Roglieri Trustee's ratification of the Debtor's bankruptcy case was not effective to validate the Debtor's bankruptcy case.

## STANDARD OF APPELLATE REVIEW

The District Court shall accept the Bankruptcy Court's findings of fact unless they are erroneous; however, questions of law are reviewed de novo.  *See Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 448–49 (2d Cir. 2008) (citations omitted); *Powers v. American Honda Fin. Corp.*, 216 B.R. 95, 96–97 (N.D.N.Y. 1997).

## STATEMENT OF THE CASE AND RELEVANT FACTS ON APPEAL

On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC, and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of the Bankruptcy Code commencing Case No. 23-11302 ("Case 1").  *See In re Prime Capital Ventures, LLC*, Case No. 23-11302 (Bankr. N.D.N.Y.), Dkt. No. 1.  The Petitioning Creditors commenced Case 1 for the obvious purpose of ensuring that the Debtor's assets and liabilities could be liquidated in a single, public forum, and that no single creditor could win the proverbial "race to the courthouse".

On December 22, 2023, upon order of the Bankruptcy Court, the Office of the United States Trustee (the "United States Trustee") appointed Christian H. Dribusch ("Dribusch") as the interim

chapter 7 trustee of the Debtor's estate.  *Id.* at Dkt. No. 15.

On January 8, 2024, the Petitioning Creditors filed a motion to dismiss Case 1 [*Id.* at Dkt. No. 74], which motion was granted by the Bankruptcy Court on January 9, 2024 [*Id.* at Dkt. No. 87].  The Petitioning Creditors sought to dismiss Case 1 in order to proceed in a forum which could provide relief both as to the Debtor and as to Berone Capital (an entity that Roglieri claimed held over $50 million of the Debtor's cash).  Thereafter, Dribusch was discharged from his duties as chapter 7 trustee.

Three (3) days after dismissal of Case 1, on January 12, 2024, Petitioning Creditor Compass-Charlotte 1031, LLC commenced an action in the District Court under Case No. 24-cv-00055 (MAD) (CFH) (N.D.N.Y. Jan. 12, 1014) (the "Receivership Case"), seeking, among other things, the appointment of a federal equity receiver to take possession and control of the Debtor's assets and affairs.  *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.,* Case No. 1:24-cv-55 (N.D.N.Y.), Dkt. No. 1.  That same day, the District Court entered an order appointing Paul Levine as the temporary receiver.  *Id.* at Dkt. No. 8.

On January 24, 2024, the District Court entered a memorandum decision and order making the Receiver's appointment permanent and defining his powers with respect to the Debtor and its property.  *Id*. at Dkt. No. 56.

On February 15, 2024 (the "Roglieri Petition Date"), Roglieri filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code commencing Case No. 24-10157 (REL) (the "Roglieri Case") and an estate was created consisting of all of Roglieri's legal and equitable interests in property as of the Roglieri Petition Date (the "Roglieri Bankruptcy Estate"). *See* Doc. No. 28, Exhibit 1.

On April 23, 2024, the United States Trustee filed a motion to convert the Roglieri Case to

3

Chapter 7 and appoint a Chapter 7 Trustee to administer the Roglieri Bankruptcy Estate (the "Conversion Motion"). Numerous creditors filed joinders to the Conversion Motion. Roglieri did not file any objection or response to the Conversion Motion by the due date of May 8, 2024 (one week before the scheduled hearing date). On May 13, 2024, counsel for Roglieri confirmed to the Receiver that Roglieri was not opposing conversion of his case to Chapter 7.

On May 14, 2024, the Debtor, by and through the Receiver, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court commencing Case No. 24-10531 ("Case 2"). *See* Doc. No. 27, Exhibit 1.

One of the Debtor's assets is a luxury home located at 600 Linkhorn Drive, Virginia Beach, Virginia 23451 (the "Virginia Beach House"), which the Debtor purchased in January 2023 for $3,750,000 in cash. *See* Doc. No. 27, Exhibit 2, ¶ 26.

Prior to the Commencement of Case 2, on January 15, 2024, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (together, the "B&R Parties" or the "Appellees") obtained an arbitration award against the Debtor related to a certain deposit they paid to the Debtor which was not returned. *See* Doc. No. 12, Exhibit 3. On February 8, 2024, the Appellees obtained a judgment confirming the arbitration award against the Debtor in the amount of $4,300,000, plus interest and costs, from the New York State Supreme Court, County of Albany (Index No. 900844-24) (the "B&R Judgment"). *See* Doc. No. 12, Exhibit 5.

On February 28, 2024, the Appellees domesticated the B&R Judgment to Virginia where it attached as a lien against the Virginia Beach House (the "B&R Judgment Lien"). *See* Doc. No. 12, Exhibit 8.

The precipitating cause of the Receiver filing Case 2 for the Debtor was the need to commence proceedings within the 90-day preference period under section 547 of the Bankruptcy

Code in order to be able to avoid the B&R Judgment Lien against the Virginia Beach House and preserve its value for the benefit of all of the Debtor's creditors. *See* Doc. No. 27, Exhibit 2, ¶ 4.

On May 15, 2024, the Bankruptcy Court entered an order converting Roglieri's case to one under chapter 7 of the Bankruptcy Code. *See* Doc. No. 29, Exhibit 23. Thereafter, the United States Trustee appointed Dribusch as the interim chapter 7 trustee. *See* Doc. No. 29, Exhibit 24. Dribusch has since qualified and is currently serving as permanent trustee and defined above as the Roglieri Trustee.

On June 25, 2024, the B&R Parties filed a motion to dismiss Case 2 on the basis that the Receiver was not authorized to file the petition on behalf of the Debtor because they asserted that he lacked the authority pursuant to the terms of the orders of the District Court. *See* Doc. No. 27, Exhibit 17.

On July 9, 2024, the Roglieri Trustee filed a statement of ratification on the authority for the Debtor to file Case 2 (the "Roglieri Trustee Ratification"). *See* Doc. No. 27, Exhibit 23.

On July 23, 2024, the Bankruptcy Court entered a Memorandum Decision and Order (the "Dismissal Order") dismissing Case 2 finding essentially that the Receiver did not have the authority to file Case 2 on behalf of the Debtor and that the Roglieri Trustee did not have the ability to waive the defect and ratify the filing *ex post facto*. *See* Doc. No. 27, Exhibit 32.

As part of the Dismissal Order, the Bankruptcy Court declined to grant a stay pending appeal, but granted a brief stay of all proceedings against the Debtor under section 105 of the Bankruptcy Code effective until August 2, 2024 at 4:00 p.m., to permit any aggrieved party time to seek a stay from the District Court. *See* Doc. No. 27, Exhibit 32, p. 16.

On July 29, 2024, the Appellants filed a Notice of Joint Appeal of the Dismissal Order. *See* Doc. No. 27, Exhibit 34.

On July 30, 2024, the Appellants filed a joint motion for a stay pending appeal with the District Court (the "Motion to Stay"). *See* Doc. No. 2, Exhibit 2.

On August 15, 2024, the District Court issued a Memorandum-Decision and Order denying the Motion to Stay (the "Order Denying Motion to Stay"). *See* Doc. No. 21. As part of the Order Denying Motion to Stay, the District Court confirmed that it had limited the Receiver's authority and the Receiver was not given the authority to bring causes of action on the Debtor's behalf, thereby finding that the Receiver lacked the authority to file a bankruptcy petition for the Debtor. *See* Doc. No. 21, pp. 23-27.

On September 16, 2024, the Debtor, through the Roglieri Trustee, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court commencing Case No. 24-11029 (REL) ("Case 3"). *See In re Prime Capital Ventures, LLC*, Case No. 24-11029 (Bankr. N.D.N.Y.), Dkt. No. 1. In Case 3, the Debtor is under the control of the Roglieri Trustee as the party in possession and control of all equity interests in the Debtor, who is acting as the manager of the Debtor.

## SUMMARY OF THE ARGUMENT

The issue in this case is whether the multi-million dollar value of the Virginia Beach House should go to a single creditor of the Debtor (race to the courthouse), or should be shared amongst all of the many victims of the Debtor's Ponzi scheme (equitable distribution). In the Dismissal Order, the Bankruptcy Court erroneously held that (i) Roglieri ceased to be a member of the Debtor upon his bankruptcy filing and (ii) the Roglieri Trustee had no authority to participate in the management of the Debtor. The Dismissal Order is fatally flawed in that it, among other things, (i) entirely misses key provisions in a Delaware statute, (ii) fails to address or discuss bankruptcy preemption of Delaware statutes, and (iii) is contrary to substantial caselaw. Prior to Roglieri's filing of his bankruptcy case, he wholly owned and controlled the Debtor, a single member-

managed limited liability company organized under the laws of the State of Delaware. Once Roglieri filed a voluntary petition for relief under the Bankruptcy Code, Roglieri's membership interest in the Debtor became property of the Roglieri Bankruptcy Estate. Upon conversion of the Roglieri Case and the appointment of the Roglieri Trustee, the Roglieri Trustee succeeded to all of Roglieri's rights, including the right to manage the Debtor and the right to ratify the filing of Case 2. The Roglieri Trustee's ratification of Case 2 on July 9, 2024 was a valid exercise of his powers and such ratification relates back to May 14, 2024, the time of the unauthorized conduct by the Receiver in filing Case 2. Therefore, Appellants respectfully request that that this Court vacate the Dismissal Order and reinstate Case 2 in order to allow the Debtor to use Case 2 as a vehicle to commence an action against the B&R Parties seeking to avoid and recover the B&R Judgment Lien as a preferential transfer under section 547(b) of the Bankruptcy Code.

## ARGUMENT

### POINT I

#### THE BANKRUPTCY COURT ERRED IN HOLDING THAT (I) ROGLIERI CEASED TO BE A MEMBER OF THE DEBTOR UPON HIS BANKRUPTCY FILING AND (II) THE ROGLIERI TRUSTEE HAD NO AUTHORITY TO PARTICIPATE IN THE MANAGEMENT OF THE DEBTOR

First, the Bankruptcy Court erroneously held that the Roglieri Trustee is unable to ratify the bankruptcy filing of the Debtor because "Roglieri 'cease[d] to be a member' of [the Debtor] upon filing" of Roglieri's personal bankruptcy petition. *See* Doc. No. 27, Exhibit 32, p. 12. To reach that conclusion, the Bankruptcy Court stated: "Under Delaware law, '[a] person ceases to be a member of a limited liability company upon' the filing of a voluntary bankruptcy petition." *Id.* *citing* 6 Del. C. § 18-304(1)(b) and *Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 (Del. 2021) (holding that an LLC membership interest terminates when the member files a personal bankruptcy petition and leaves only the economic rights of said interest). While the Bankruptcy

Court correctly quoted from the statute, it is an *incomplete* quotation and misses key language which entirely changes the outcome when dealing with a limited liability company owned by a single member.

The full relevant language of section 18-304 of Delaware Limited Liability Company Act (the "<u>Delaware Act</u>"), reads as follows:

> A person ceases to be a member of a limited liability company upon the happening of any of the following events:
>
> > (1) Unless otherwise provided in a limited liability company agreement, **<u>or with the consent of all members</u>**, a member . . .
> >
> > (b) Files a voluntary petition in bankruptcy . . .

6 Del. C. § 18-304 (emphasis added).

As discussed above, on February 15, 2024, Roglieri filed his own voluntary bankruptcy petition with the Bankruptcy Court.  In doing so, as the 100% member of the Debtor, he clearly gave his consent to his own voluntarily filed petition such that his filing was "with the consent of all members" of the Debtor because he is the only member of the Debtor.  The provisions of section 18-304 of the Delaware Act are designed to protect partners from being forced into business with unknown third parties.  If the Debtor had been a multi-member limited liability company, the analysis would be different and the Bankruptcy Court's reliance on *Zachman* would have been appropriate.  *See, e.g., Impact Sols., LLP v. Irby*, No. 21-cv-15143, 2023 Cal. Super. LEXIS 83691, at *6 (L.A. Sup. Ct. Oct. 3, 2023) ("The Delaware Supreme Court has confirmed that [§ 18-304] applies to *multi-member LLCs* to dissociate a bankrupt member's rights to participate in management of the LLC while retaining the pure economic interest in the LLC as an asset of the bankruptcy member's Estate.") (emphasis added); *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 754 (Del. Ch. 2004) ("§18-304 represents a default rule of Delaware public

policy . . . that *members* of a Delaware LLC need not fear that they will have as *fellow members* bankruptcy trustees or assigns of bankruptcy trustees.") (emphasis added).  But since the Debtor was 100% owned by Roglieri, the statute is clear that the bankruptcy filing did not terminate Roglieri's membership interest in the Debtor.

Indeed, any other interpretation of the statute would lead to absurd results in the context of a single member limited liability company.  The practical effect of the Bankruptcy Court's ruling would be that no one could file a voluntary bankruptcy for the Debtor – not Roglieri (as the Bankruptcy Court ruled that he was divested of being a member of the Debtor by virtue of his bankruptcy filing) and not the Roglieri Trustee (as his rights are limited to the rights of Roglieri, as he steps into Roglieri's shoes).

Second, in addition to missing language of the Delaware statute, the Bankruptcy Court also failed to consider the fact that federal bankruptcy law preempts any state statute, including sections 18-304(b)(1) and 18-702(a)-(b) of the Delaware Act, that purports to strip a debtor of an asset as a result of filing a bankruptcy petition.  Specifically, section 541 of the Bankruptcy Code provides that the commencement of a case creates an estate comprised of all property wherever located, and by whomever held.  11 U.S.C. § 541; *see also Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91 (2d. Cir. 1988) ("It is well established that a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located.").  Such property interests are generally interpreted under state law.  *See Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to

discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy'".) (citations omitted).

Because the Debtor is a Delaware limited liability company[3], Delaware law applies. There can be no question that on the date of his bankruptcy filing, Roglieri's 100% membership interest in the Debtor was personal property under Delaware law and became property of the Roglieri Bankruptcy Estate. *See* 6 Del. C. § 18–701 (providing that "[a] limited liability company interest is personal property . . .").

Under Delaware law, the management of a limited liability company is vested in the members unless the limited liability company agreement provides otherwise. *See* 6 Del. C. § 18-402; *see also Omanoff v. Reifler (In re Reifler)*, 2023 U.S. Dist. LEXIS 152972, at *23 (S.D.N.Y. Aug. 25, 2023) ("Delaware's default rule provides that 'the management of a limited liability company shall be vested in its members' . . .") (citations omitted).

The Debtor's limited liability company agreement (the "Operating Agreement") states that the Debtor is managed by its "Voting Members" and Exhibit A lists Roglieri as the sole member of the Debtor. *See* Doc. No. 14, Exhibit 2, § 2.4 and Exhibit A.

Statutory ipso facto provisions, such as sections 18-304 and 18-702 of the Delaware Act, which purport to strip a debtor of property rights as a result of filing a bankruptcy petition are preempted by section 541 of the Bankruptcy Code. This issue was dealt with in *In re Envision Healthcare Corp.*, 655 B.R. 701 (Bankr. S.D. Tex. 2023). In that case, the bankrupt debtor owned a 25% membership in a Delaware limited liability company. *Id.* at 707. Upon the debtor's filing, the other members of the Delaware LLC claimed that the debtor had lost its membership interest

---

[3] The Debtor's Operating Agreement (defined herein), dated January 6, 2022, identifies the Debtor as a "Delaware Liability Company". *See* Doc. No. 14, Exhibit 2, p. 1.

in the company as a result of section 18-304 of the Delaware Act (the exact statute in this case). *Id.* The *Envision* court, in a detailed analysis, held that the debtor had not lost its membership interest upon its bankruptcy filing because "[s]ection 18-304 of the Act directly conflicts with, and must give way to, § 541 of the Bankruptcy Code." *Id.* at 712. In its analysis, the court cited section 541(c)(1)(B) of the Bankruptcy Code to reinforce Congress's mandate that all legal and equitable interests in property become property of the estate. Section 541(c)(1)(B) provides:

> [A]n interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law – . . .
>
> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1)(B).

The court in *Envision* then clarified "that a member of a Delaware LLC who starts a bankruptcy case keeps *all* legal and equitable interests in the LLC that it held as of the commencement of the case." *Id*. at 711.

Assuming, *arguendo*, that Roglieri's bankruptcy filing terminated Roglieri's membership interest in the Debtor such that the Debtor was to be dissolved under Section 18-801(a)(4)[4] of the Delaware Act because it had no remaining members, the Roglieri Trustee Ratification prevented the dissolution of the Debtor and continued its existence. Section 18-806 of the Delaware Act provides that:

> [N]otwithstanding the occurrence of an event set forth in §18-801(a)(1), (2), (3), or (4) of this title, the limited liability company shall not be dissolved and its affairs

---

[4] Section 18-801 of the Delaware Act provides that "[a] limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following . . . (4) At any time there are no members . . . ." 6 Del. C. § 18-801(a)(4).

shall not be wound up if, prior to the filing of a certificate of cancellation in the office of the Secretary of State, the limited liability company is continued, effective as of the occurrence of such event . . .

(3) In the case of dissolution effected by the occurrence of an event that causes the last remaining member to cease to be a member, pursuant to the vote or consent of the personal representative of the last remaining member of the limited liability company or the assignee of all of the limited liability company interests in the limited liability company (and the approval of any other persons whose approval is required under the limited liability company agreement to revoke a dissolution contemplated by this paragraph).

6 Del. C. § 18-806.  Here, the Roglieri Trustee, by filing the Roglieri Trustee Ratification, as the personal representative of the only member of the Debtor, consented to the revocation of a dissolution (if one even occurred) and acknowledged in writing the appointment of the Roglieri Bankruptcy Estate as the sole member of the Debtor.  *See* Doc. No. 27, Exhibit 23; *see also Modanlo v. Mead (In re Modanlo)*, No. 06-CV-1168, 2006 U.S. Dist. LEXIS 96045, at *10 (D. Md. Oct. 11, 2006) (acknowledging that "[w]hen an LLC is dissolved for lack of remaining members, section 18-806 empowers the bankruptcy trustee, as personal representative of the last remaining member, to consent to the continuation of the LLC and to become the sole member of the LLC.") (*citing* 6 Del. C. § 18-806).

Section 6.4 of the Debtor's Operating Agreement which mirrors the default rule under section 18-702(a)-(b) of the Delaware Act[5], and which was relied upon by the Bankruptcy Court in determining that the Roglieri Trustee lacked managerial authority over the Debtor, is an unenforceable *ipso facto* clause for the same reasons set forth by the court in *Envision*.  Section 6.4 of the Operating Agreement provides, in part, that a member's bankruptcy constitutes a breach

---

[5] "Section 18-702 is a default rule under the Delaware Act that limits an 'assignment' of an interest in a limited liability company to the 'limited liability company interest,' *i.e.*, a member's share of the profits and losses of a limited liability company and a member's right to receive distributions of the limited liability company's assets."  *In re Modanlo*, 412 B.R. 715, 729 (Bankr. Md. 2006).

of the operating agreement and that the creditor, or transferee, shall have rights as an assignee.[6] This language is in direct conflict with section 541(c)(1)(B) of the Bankruptcy Code. Parties to an operating agreement "cannot contract around what becomes estate property . . . ." *Envision*, 655 B.R. at 710. The Bankruptcy Court and Appellees also fail to recognize that section 6.4 of the Operating Agreement is meant to protect nonbankrupt members of the limited liability company from becoming partners with a creditor or a trustee of a bankrupt member which, in the case of this single member limited liability company, simply does not apply. *See, e.g., Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 760–61 (Del. Ch. 2004) (finding that "it is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent. The same logic applies when a member of an LLC must remain in a relationship with a member that has filed for bankruptcy. By terminating the bankrupt filer's status as a member with governance rights, the solvent members only have to live with the bankrupt filer as an assignee with a passive economic interest.").

Courts in the Second Circuit and elsewhere have reached similar conclusions when interpreting the limited liability company acts of other states. *See, e.g., Weiss v. All Year Holdings Ltd. (In re All Year Holdings Ltd.)*, 648 B.R. 434, 456 (S.D.N.Y. 2022) (holding, under New York law, that state "laws cannot be read to terminate or modify LLC membership interests solely due

---

[6] Section 6.4 of the Operating Agreement provides:

> **Involuntary Transfer of a Membership Interest**. A creditor's charging order or lien on a Member's Membership Interest, bankruptcy of a Member, or other involuntary transfer of Member's Membership Interest, shall constitute a material breach of this Agreement by such Member. The creditor, transferee or other claimant, shall only have the rights of an Assignee, and shall have no right to become a Member, or to participate in the management of the business and affairs of the Company as a Member or Manager under any circumstances, and shall be entitled only to receive the share of profits and losses, and the return of capital, to which the Member would otherwise have been entitled. . . .

*See* Doc. No. 14, Exhibit 2, § 6.4.

to a bankruptcy filing, as the law would then act to 'deprive the trustee of that interest.'") (citations omitted); *Prebul v. Bensusan (In re Prebul)*, No. 1:11-CV-214, 2012 U.S. Dist. LEXIS 170098, at *30–*31, *33 (E.D. Tenn. Nov. 30, 2012) (holding that all of the debtor's rights as of the petition date were vested in the trustee, "including those as a member", and that New York state law that "required the dissolution of [an LLC] upon [a member's] bankruptcy [is] in contravention of the Bankruptcy Code."); *In re Woodfield*, 602 B.R. 747, 756 (Bankr. D. Or. 2019) (holding that a "[d]ebtor's rights as an LLC member cannot be terminated or modified solely as a result of his bankruptcy petition. Any provision of the Operating Agreements or the [Oregon] LLC Act that purports to vitiate [a] [d]ebtor's voting rights is unenforceable in bankruptcy under § 541(c)(1)"); *Warner v. Warner*, 480 B.R. 641, 647, 656 (Bankr. N.D. W. Va. 2012) (concluding that, under West Virginia law, "[B]ecause non-economic rights are property of the estate and fit under the canopy of § 362(a)(3), the provision in the Defendants' Resolution that disassociates the Debtor is void. . . . § 541(c)(1) acts to vitiate the application of the Operating Agreement calling for dissolution upon the Debtor's bankruptcy filing."); *Duncan v. Dixie Mgmt. & Inv., Ltd. Partners (In re Dixie Mgmt. & Inv., Ltd. Partners)*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding that, under Arkansas law, debtor's membership interest in the limited liability company was not terminated upon the debtor's bankruptcy filing because "under § 541(c)(1), an interest of the debtor in property becomes property of the estate, 'notwithstanding any provision in an agreement . . . that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under this title.'") (citations omitted).

Once a chapter 7 trustee is appointed, the trustee possesses all the rights of the debtor and essentially "steps into the shoes of the debtor." *See Omanoff v. Riefler (In re Reifler)*, Case No. 22–CV–10201 (CS), 2023 U.S. Dist. LEXIS 152972, at *15 (S.D.N.Y. Aug. 25, 2023) ("When a

bankruptcy petition is filed under Chapter 7 of the Bankruptcy Code . . . a Chapter 7 Trustee is charged with the administration of the debtor's estate for the benefit of the estate's creditors. The Bankruptcy Trustee 'steps into the shoes of the debtor' and 'possesses only the rights of the debtor.'") (citations omitted).

Numerous courts have therefore concluded that when the sole member of a single member limited liability company files for bankruptcy, the trustee succeeds to all of the debtor's rights, including the right to manage the limited liability company. *See, e.g., Fursman v. Ulrich (In re First Prot., Inc.)* 440 B.R. 821, 830 (9th Cir. BAP 2010) (finding that upon the bankruptcy filing the trustee "stepped into Debtors' shoes, succeeding to all of their rights, including the right to control" the limited liability company of which the Debtors were the sole owners and members of"); *In re A-Z Elecs., LLC*, 350 B.R. 886, 890 (D. Idaho 2006) ("[T]he difference between a single-member LLC and a multi-member LLC . . . [is that] 'there are no other members in the LLC . . . the Debtor's bankruptcy filing effectively assigned her entire membership interest in the LLC to the bankruptcy estate, and the Trustee obtained all her rights, including the right to control the management of the LLC.") (*quoting In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003)); *In re Modanlo*, 412 B.R. 715, 731 (Bankr. D. Md. 2006) (concluding that the trustee "possesses both the economic and governance rights to participate in the management of [the debtor's single member Delaware limited liability company] that the Debtor himself enjoyed prior to his bankruptcy filing"); *In re Albright*, 291 B.R. 538, 541 (Bankr. D. Colo. 2003) (granting chapter 7 trustee's motion for authority to liquidate property owned by individual debtor's wholly owned limited liability company because debtor's bankruptcy filing effectively assigned debtor's membership interest in the limited liability company to the chapter 7 estate, and trustee obtained all of the debtor's rights, including right to manage the limited liability company).

15

Here, the Roglieri Trustee succeeded to Roglieri's 100% membership interest in the Debtor, including the right to manage the Debtor in accordance with the Debtor's Operating Agreement. Consequently, as Roglieri's sole membership interest in the Debtor did not terminate, and thus became property of the Roglieri Bankruptcy Estate pursuant to section 541 of the Bankruptcy Code, the Roglieri Trustee was well within his authority to ratify the Debtor's bankruptcy filing for Case 2. This is consistent with the District Court's analysis of the issue as part of the Order Denying Stay:

> The Court also agrees that, as a practical matter, the Bankruptcy Court's conclusion that 'the Trustee has no authority to participate in the management of Prime,' is questionable. This is potentially an unworkable conclusion because if the Trustee does not have authority over Prime's ability to enter bankruptcy, who does? Roglieri does not because his assets are controlled by the Trustee. The Receiver does not because the Court purposefully omitted such authority from its grant of power. This practical issue combined with the authority set forth above suggests that the Trustee did have the authority to ratify the Receiver's bankruptcy filing.

*See* Doc. No. 21, p. 31.

## POINT II

### THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT THE ROGLIERI TRUSTEE'S RATIFICATION WAS INEFFECTIVE

A.    Delaware Law Permits Ratification

The effectiveness of the Roglieri Trustee's ratification of the bankruptcy filing is governed by Delaware law. *See generally In re Richardson Foods, Inc.*, 659 B.R. 154, 170 (Bankr. S.D.N.Y. 2024) (since debtor was a Florida corporation, resolution of ratification issue was governed by Florida law); *In re Melbourne Beach, LLC*, Case No. 17-bk-07975 (KJS), 2019 Bankr. LEXIS 4113, at *10 (Bankr. M.D. Fla. Aug. 6, 2019) ("To determine whether a principal ratified a company's unauthorized bankruptcy filing, courts apply the state law of the filing company.")

It is well established that "Delaware law recognizes that previously unauthorized actions can be validated by ratification" and that such ratification relates back to the time of the unauthorized conduct. *Wilmington Trust, N.A. v. Pinnacle Land Grp., LLC (In re Pinnacle Land Grp., LLC)*, Case No. 17-23339 (GLT), 2018 Bankr. LEXIS 2764, at *21 (Bank. W.D. Pa. Sept. 10, 2018). As the Delaware Supreme Court has held:

> [T]he authorities are uniform that when an unauthorized act [] is, after knowledge of the facts, duly and properly ratified by that authority which would have been completely empowered to legally authorize the act in the first instance, then the ratified act becomes a binding obligation of the corporation.
>
> . . .
>
> The effect of a subsequent ratification is that it relates back and gives validity to the unauthorized act or contract, as of the date when it was made and affirms it in all respects as though it had been originally authorized. The act is legalized from its inception. Accordingly when the ratification occurs there is no further necessity of showing previous authority. The principle is tersely explained in the proposition that a ratification is equivalent to an original authorization.

*Hannigan v. Italo Petroleum Corp.*, 47 A.2d 169, 340, 342 (Del. Sup. 1945) (citing to 2 Fletcher on Corp., Perm Ed. Sec. 782).

All that is needed for ratification under Delaware law is knowledge of the material facts and evidence of the ratification, which can be either implied by conduct or expressed by words. *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del. Sup. 1943). Each of these elements is clearly met in the Roglieri Trustee Ratification. *See* Doc. No. 27, Exhibit 23. First, it expressly states that the Roglieri Trustee "has reviewed the May 14, 2024 voluntary bankruptcy petition filed by [the Debtor] as electronic court filing number 1", thereby evidencing that the Roglieri Trustee was fully aware of the material facts at the time. Second, the Roglieri Trustee Ratification itself is evidence

of the Roglieri's Trustee's express ratification.  Thus, the Roglieri Trustee's Ratification on its face complies with applicable Delaware state law and is effective.

B.     Courts Regularly Permit Ratification of Unauthorized Bankruptcy Petitions.

Not only is ratification of prior corporate actions a widely accepted concept, it has also been widely adopted and applied in the bankruptcy context to validate an unauthorized filing of a bankruptcy petition such that the ratification relates back to the original filing and "is equivalent to an original authorization."  *See e.g., Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997) (holding that "the unauthorized filing of a voluntary petition in bankruptcy on behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally."); *Off. Comm. of Unsecured Creditors of Renaissant Lafayette LLC v. Interforum Holding LLC*, Case No. 11-C-0172, 2013 U.S. Dist. LEXIS 38723, at *14 (E.D. Wis. Mar. 20, 2013) ("an unauthorized filing of a voluntary petition in bankruptcy on behalf of a corporation may be ratified in appropriate circumstances by ensuring conduct of persons with power to have authorized it originally"); *In re Richardson Foods, Inc.*, 659 B.R. 154, 171 (Bankr. S.D.N.Y. 2024) ("find[ing] that [the members of the board of directors] have implicitly ratified the Trustee's filing of the [corporation's] bankruptcy through conduct inconsistent with an intent to repudiate the filing."); *Dearborn Process Serv., Inc. v. Storner*, 149 B.R. 872, 878–79 (Bankr. N.D. Ill. 1993) (holding that defective authority to file "can be cured here by subsequent ratification or acquiescence by the directors.").

C.     The Roglieri Trustee Had Authority to Ratify Prior Acts of the Receiver.

Appellees attempt to overcome the effectiveness of the Roglieri Trustee's ratification by raising two different timing arguments. First, they claim that because the Roglieri Trustee was appointed one (1) day after the Receiver filed Case 2, the Roglieri Trustee could not have ratified

the filing on May 14 and therefore the later ratification was ineffective. *See* Doc. No. 12, p. 25. However, this argument improperly confuses a particular *individual* with a particular *position of authority*, and is inconsistent with both Delaware and bankruptcy law.

The Roglieri Bankruptcy Estate was created on February 15, 2024. Section 541(a) of the Bankruptcy Code broadly defines all property of the estate as consisting of "property, wherever located and by whomever held: [including] (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Pursuant to section 541(a), the Roglieri Bankruptcy Estate consisted of, among other things, Roglieri's 100% interest in the Debtor. Thus, as of February 15, 2024, it was **not** Kris Roglieri who owned the membership interests in the Debtor, but it was the Roglieri Bankruptcy Estate which owned them.

Upon commencement of a chapter 11 case, a debtor automatically becomes "debtor in possession" and retains control over the bankruptcy estate. *See Morrison v. United States Trs.*, 09-CV-3565 (CBA), 2010 U.S. Dist. LEXIS 63339, at *6 (E.D.N.Y. June 24, 2010) (*citing* 11 U.S.C. §§ 1101(1) and 1108); *see also* 11 U.S.C. § 1107(a) ("Subject to any limitations on a trustee serving in a case under this chapter . . . a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."). Therefore, beginning on February 15, 2024, Roglieri was the *representative* of the Roglieri Bankruptcy Estate and was in control of decision-making for the Roglieri Bankruptcy Estate. Roglieri's status as representative of the Roglieri Bankruptcy Estate terminated on May 15, 2024, when the Roglieri Case was converted from a chapter 11 case to a case under chapter 7 of the Bankruptcy Code and the Roglieri Trustee was appointed. *See In re Bresnick*, 406 B.R. 582, 585 (Bankr. E.D.N.Y. 2009) (noting that conversion from chapter 11 to chapter 7 terminates the debtor's status as debtor-in-possession). At that point, the Roglieri Trustee became vested with the

sole right and obligation to administer the Roglieri Bankruptcy Estate. *See Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*, Case No. 16-13164 (JLG), 2021 Bankr. LEXIS 182, at *14 (Bankr. S.D.N.Y. Jan. 26, 2021) ("A chapter 7 trustee is the representative of the debtor's estate . . .") (*citing* 11 U.S.C. § 323); *see also In re Eddy*, 304 B.R. 591, 599 (Bankr. D. Mass. 2004) ("If a Chapter 11 case is converted to Chapter 7 case, the appointed Chapter 7 trustee is essentially a successor estate representative. . . . As such, the Chapter 7 trustee takes over the duties of the debtor in possession.").

Stated in the language of principals and agents, the principal (at all relevant times) was the Roglieri Bankruptcy Estate and that principal has not changed since February 15, 2024 to the present. The only thing that changed were *the agents* of the principal, which was first Roglieri and then the Roglieri Trustee, depending on the stage of the case. From February 15, 2024 through May 14, 2024 (the chapter 11 stage of the Roglieri Case), only Roglieri, as agent of the Roglieri Bankruptcy Estate, had the ability to authorize the filing of a bankruptcy petition for the Debtor. Starting on May 15, 2024 and continuing throughout the Roglieri Case (the chapter 7 stage of the Roglieri Case), only the Roglieri Trustee, as agent of the Roglieri Bankruptcy Estate, had the ability to authorize the filing of a bankruptcy petition for the Debtor. While the *agents* changed, what is undisputed is that *the principal never changed*, and the Roglieri Bankruptcy Estate had the ability at all times to authorize the filing of a bankruptcy petition for the Debtor. *See generally* 19 C.J.S. Corporations sec. 692 ("A corporation may ratify and become bound by the unauthorized acts or contracts of its directors, officers, or agents which are within the scope of its corporate powers and which might have been previously authorized by it.") The only variable during the Roglieri Case was who was the individual that was authorized to direct the Debtor to file the petition on behalf of the Roglieri Bankruptcy Estate.

It is blackletter law that a change in *agents* does not prevent later ratification.  Delaware has recognized this since at least the 1940s.  In *Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581 (Del. Sup. 1948), the Delaware Supreme Court noted that a board of directors' actions in 1939 were unauthorized because the board lacked a quorum with various director seats unfilled.  *Id.* at 600–01.  However, the Court also held that those same company actions were later expressly ratified by the vote of a properly constituted board of the "Directors in office on September 31, 1941", some two years later.  *Id.* at 604; *see also* Fletcher Cyclopedia of the Law of Corporations Sec. 762 ("A board may ratify acts of a former board"); *id.* at 752 n. 3 ("The test of the effectiveness of the ratification of an unauthorized act of an officer of a corporation is whether corporation or its board of directors making the ratification could in the first instance have authorized such an act.")  Indeed, this principle has been applied directly in the context of the filing of a bankruptcy petition.  *See In re Valles Mechanical Industries, Inc.*, 20 B.R. 355 (Bankr. N. Ga. 1982) (finding that the "Board of Directors could have authorized the filing of [the corporation's] bankruptcy petition [on July 2, 1981] and that they intended to do this on July 6, 1981" despite the fact that between the unauthorized filing of the bankruptcy petition on July 2, 1981 and the board decision to ratify the bankruptcy filing on July 6, 1981, one director resigned and a new director was elected).  In each case, the fact that the agents changed did not prevent the principal (through later different agents) from ratifying prior actions.

Not only is this the law in Delaware, it is the general law of corporations and is routinely applied by courts in circumstances similar to the present case where the party that is ratifying the act was not part of the underlying initial act so long as the *principal* had the authority at all times to take the challenged action.  *See, e.g., Kajmowicz v. Whitaker,* 42 F.4th 138, 147 (3d Cir. 2022) ("If a lawfully appointed official ratifies his *predecessor*'s action and does so in accordance with

the law, that ratification may 'remedy a defect arising from the decision of an improperly appointed' predecessor.") (emphasis added) (citations omitted); *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 162 (2d Cir. 2021) ("Following the Supreme Court's instructions in *NRA Political Victory Fund* and our own case law, we apply the same principles now to the *Board General Counsel's* ratification of an *Acting General Counsel's* earlier-filed complaint.  Valid ratification occurs, therefore, when the General Counsel, possessing the authority necessary to undertake the ratified act at the time of ratification . . . and with full knowledge of the material facts . . . manifests an intent to ratify the act in question.") (emphasis added) (citations omitted); *Bureau of Consumer Fin. Prot. v. Citizens Bank, N.A.,* 504 F. Supp. 3d 39, 40 (D. R.I. 2020) (stating that in the context of ratification "[t]he basic idea is that a legitimate agent (here, the CFPB Director, post-<u>Seila Law</u>) can ratify a decision made by an improper agent (the Director, pre-<u>Seila Law</u>) on behalf of a principal (the CFPB itself))"; *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 184 (D. D.C. 2016) (emphasizing that "it is the *principal*, the [government agency], who must at all times have the authority to take the challenged action", rather than the agent or the director of the government agency).  Thus, Appellee's first argument against ratification fails.

        D.     Appellees' Statute of Limitations Argument is
             <u>Irrelevant to the Effectiveness of Ratification</u>

Second, the Appellees try to assert a time-bar defense, disguised as a challenge to ratification.  Their argument goes as follows.  There is a period of 90 days before a bankruptcy petition is filed in which certain transfers are deemed preferential and can be avoided.  *See* 11 U.S.C. 547(b)(4).  Because the Roglieri Trustee did not file his express ratification until July 9, 2024, Appellees argue that the 90 day preference period should be counted from July 9 (rather than from the petition filing date of May 14, 2024), and therefore their judgment lien on February 28, 2024 is outside the applicable 90 day period and cannot be avoided.  *See* Doc. No. 12, pp. 25–26.

In support, the Appellees cite to *In re W.R. Grace & Co.*, 366 B.R. 302 (Bankr. D. Del. 2007) and *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994). Each of those cases dealt with deadlines which had passed (a deadline for filing proofs of claim in *W.R. Grace*, and a deadline for filing a certiorari petition in *Federal Election Commission*) and therefore the respective courts held that ratification could not be used to extend those deadlines.

Appellees' argument here is misguided and a red herring for multiple reasons. First, and most importantly, the Bankruptcy Code does not set any deadline for filing a bankruptcy petition. For that reason alone, Appellees' argument fails because the Roglieri Trustee's express ratification did not take place after any required deadline for filing the petition.

Second, even assuming that Appellees' argument was meritorious (which it is not), it is misplaced in the context of a motion to dismiss a bankruptcy petition. At most, Appellees' argument constitutes an asserted defense to a potential future preference avoidance action by the Debtor against Appellees. The fact that Appellees may have a defense specific to them (which could be asserted in any future avoidance action) does not mean that the Roglieri Trustee's ratification of the bankruptcy petition itself was ineffective. Appellants want a May 14, 2024 bankruptcy petition date for more than just dealing with the avoidance of Appellee's Judgment Lien. For instance, section 547(b)(4) of the Bankruptcy Code also allows avoidance of preferential transfers made to *insiders* in a one year period before the bankruptcy filing date. If the Court determines that ratification was effective and the May 14, 2024 bankruptcy petition was proper, then the one year look back period for insider preference claims will go back to May 14, 2023 (one year before Case 2 was filed). But if ratification was not effective, then the one year look back period for insider preference claims would only go back to September 16, 2023 (one year before Case 3 was filed). The practical effect would be that the creditor body would lose out on the ability

to avoid preferential transfers made to insiders of the Debtor in a 4 month period. This is not a speculative harm. *See generally* Verified Third Party Complaint (Case 24-cv-0055, Doc. 71) at ¶¶ 75, 84 (identifying $16,396.702.63 in transfers to insiders between March 11, 2022 and December 22, 2023). Additionally, the 2 year look back period for fraudulent transfers would not extend as far back. *See* 11 U.S.C. 548(a)(1) (permitting avoidance of fraudulent transfers "made or incurred on or within 2 years before the date of the filing of the petition"); *see also* 11 U.S.C. § 108 (tolling the statute of limitations for non-bankruptcy claims for two years from the date of the bankruptcy petition). If Appellees believe they have a defense to a potential future preference avoidance action, they can raise it at the appropriate time in response to a future avoidance action. But a defense as to a particular preference claim against Appellees simply does not render the overall Roglieri Trustee's ratification of the bankruptcy petition ineffective.

Finally, even if the Court were to consider Appellees' preference defense in this context, the defense fails. In order to avoid a transfer as a preference, a plaintiff must show, among other things, that the transfer was made on or within 90 days before the filing of the bankruptcy petition. *See* 11 U.S.C. § 547(b). Therefore, if the Debtor wanted to avoid the B&R Judgment Lien as a preferential transfer, it had to file a bankruptcy petition on or before May 28, 2024 in order to capture the B&R Judgment Lien in the preference period. The Receiver did just that by filing Case 2 on May 14, 2024. The filing of the bankruptcy petition had the effect of providing for a two year period within which to file actions to avoid preferential transfers. *See* 11 U.S.C. § 546(a) ("An action or proceeding under section . . . 547 . . . of this title may not be commenced after the earlier of – (1) the later of – (A) 2 years after the entry of the order for relief . . ."). Therefore, using the petition date of May 14, 2024, the B&R Judgment Lien is included in the preference period and the Debtor has until May 14, 2026 to commence an action against B&R seeking to avoid and

recover the B&R Judgment Lien as a preferential transfer. The Roglieri Trustee Ratification by the Roglieri Trustee occurred on July 9, 2024, prior to the May 14, 2026 expiration of the statute of limitations. Therefore, unlike in *W.R. Grace & Co.* and *Federal Election Commission*, there are no deadlines or statute of limitations concerns. The Appellants acknowledge that, for the Roglieri Trustee Ratification to be effective, it had to occur prior to May 14, 2026, which it did.

Preference actions under section 547(b) of the Bankruptcy Code are intended to serve two basic policies:

> A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate. The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section – that of equality of distribution.

*Union Bank v. Wolas*, 502 U.S. 151, 160–61, 112 S. Ct. 527, 116 L. Ed. 2d 514 (1991) (citations omitted). These goals, preventing a "race to the courthouse" and ensuring equality of distribution among creditors, would be severely undermined if the Dismissal Order is not vacated.

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's Dismissal Order should be vacated so Case 2 can be reinstated, together with such other and further relief as may be just, necessary and proper.

Dated:  December 9, 2024
      New York, New York

      **KLESTADT WINTERS JURELLER**
      **SOUTHARD & STEVENS, LLP**


By:  */s/ Lauren C. Kiss*
      Fred Stevens Bar Number 3013851
      Lauren C. Kiss Bar Number 5003637
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Telephone No.: (212) 972-3000
      Email: fstevens@klestadt.com
            lkiss@klestadt.com

      *General Counsel to Prime Capital Ventures,*
      *LLC*


Dated:  December 9, 2024
      Albany, New York


      **THE DRIBUSCH LAW FIRM**


By:  */s/ Christian H. Dribusch*
      Christian H. Dribusch Bar Number 2591089
      187 Wolf Road
      Suite 300-020
      Albany, New York 12205
      Telephone No.: (518) 227-0026
      Email:  cdribusch@chd-law.com

      *General Counsel to Christian H. Dribusch,*
      *Chapter 7 Trustee of the Estate of Daniel Kris*
      *Roglieri*

26

Dated:    December 9, 2024
         Albany, New York

**NOLAN HELLER KAUFFMAN LLP**

By:  */s/ Justin A. Heller*

Justin A. Heller Bar Number 2395424
Matthew M. Zapala Bar Number 5312020
80 North Pearl Street, 11th Floor
Albany, New York 12207
Telephone No.: (518) 449-3300
Email: jheller@nhkllp.com
       mzapala@nhkllp.com

**PARKER POE ADAMS &**
  **BERNSTEIN LLP**
William L. Esser IV (pro hac vice)
620 South Tryon Street
Suite 800
Charlotte, North Carolina 28202
Telephone No.: (704) 335-9507
Email:  willesser@parkerpoe.com

*Counsel for Compass-Charlotte 1031, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH BANKRUPTCY RULE 8015(a)(7)(b)</u>

This brief complies with the type-volume limitations of Bankruptcy Rule 8015(a)(7)(B) because this brief contains 8,711 words, excluding the parts of the brief exempted by Bankruptcy Rule 8015(g).

Dated:   December 9, 2024
            New York, New York

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:  */s/ Lauren C. Kiss*
      Fred Stevens Bar Number 3013851
      Lauren C. Kiss Bar Number 5003637
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Telephone No.: (212) 972-3000
      Email: fstevens@klestadt.com
             lkiss@klestadt.com

*General Counsel to Prime Capital Ventures, LLC*