**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────

**PAUL A. LEVINE, ESQ.** *as Permanent Receiver*
*for Debtor Prime Capital Ventures, LLC*, **PRIME**
**CAPITAL VENTURES, LLC, COMPASS-CHARLOTTE,**
**1031, LLC, and CHRISTIAN H. DRIBUSCH, ESQ.,**
*as Chapter 7 Trustee in the Matter of Kris Daniel*
*Roglieri,*

                                    **Appellants,**

            **vs.**                                   **1:24-CV-939**
                                                      **(MAD)**

**B AND R ACQUISITION PARTNERS, LLC and**
**JHM LENDING VENTURES, LLC,**

                                    **Appellees.**

─────────────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

**LEMERY GREISLER, LLC**                  **PAUL A. LEVINE, ESQ.**
677 Broadway - 8th Floor
Albany, NY 12866
Attorney for Paul Levine as Permanent Receiver
over Prime Capital Ventures, LLC

**BOND, SCHOENECK & KING, PLLC**          **ANDREW SCOTT RIVERA, ESQ.**
One Lincoln Center                        **EDWARD J. LOBELLO, ESQ.**
110 West Fayette Street                   **JUSTIN S. KRELL, ESQ.**
Syracuse, New York 13202                  **STEPHEN A. DONATO, ESQ.**
Attorneys for Debtor Prime
Capital Ventures, LLC

**KLESTADT WINTERS JURELLER**             **FRED STEVENS, ESQ.**
**SOUTHARD STEVENS, LLP**                 **LAUREN KISS, ESQ.**
200 West 41st Street, 17th Floor
New York, New York 10036
Attorneys for Debtor Prime
Capital Ventures, LLC

**DRIBUSCH LAW FIRM**                     **CHRISTIAN H. DRIBUSCH, ESQ.**
187 Wolf Road, Suite 300-20

Albany, New York 12205
Attorney for Chapter 7 Trustee in the
Matter of Kris Daniel Roglieri, Case No.
24-10157

**NOLAN HELLER KAUFFMAN, LLP**          **JUSTIN A. HELLER, ESQ.**
80 State Street, 11th Floor                              **MATTHEW M. ZAPALA, ESQ.**
Albany, New York 12207
Attorneys for Creditor Compass-Charlotte 1031, LLC

**BALCH & BINGHAM**                               **M. PATRICK EVERMAN, ESQ.**
188 E. Capitol Street – Suite 1400
Jackson, Mississippi 39201
Attorney for Appellees B and R Acquisition Partners,
LLC and JHM Lending Ventures, LLC

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Currently before the Court is an appeal from Prime Capital Ventures, LLC ("Prime" or "Prime Capital"), Christian H. Dribusch, the previous Chapter 7 trustee (the "Trustee") of Kris Daniel Roglieri's bankruptcy ("Roglieri"), and Compass-Charlotte 1031, LLC ("Compass"; collectively with the Trustee, "Appellants"). *See* Dkt. No. 1. Appellants ask this Court to vacate an Order of the United States Bankruptcy Court for the Northern District of New York entered on July 23, 2024, dismissing a Chapter 11 bankruptcy petition filed on behalf of Prime Capital by Paul A. Levine, the Receiver for Prime Capital ("Receiver"). *See id.*; *see also* Dkt. No. 34. Appellees B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC ("B&R" or "Appellees") respond in opposition. *See* Dkt. No. 36. Appellants reply. *See* Dkt. No. 38.

For the following reasons, the bankruptcy court's Order is affirmed in part and vacated in part.

2

## II. BACKGROUND

At the time Appellants filed their appeal, they also field an emergency motion to stay the bankruptcy case pending their appeal. *See* Dkt. No. 2. Appellees opposed the stay application. *See* Dkt. No. 12. On August 15, 2024, this Court denied Appellants' motion for a stay. *See* Dkt. No. 21. In its decision, the Court thoroughly explained the factual background and procedural posture of this case, which included a discussion of related pending matters in bankruptcy court and this Court. *See id.* at 2-11. The Court therefore assumes the parties' familiarity with the facts underlying this case and the interconnected cases.

The Court will add, however, that since the issuance of its August 15, 2024, Memorandum-Decision and Order, Roglieri has been criminally indicted on wire fraud and conspiracy to commit wire fraud charges, *see United States v. Roglieri*, No. 1:24-CR-392, Dkt. No. 82 (N.D.N.Y.), and the trial is scheduled to commence on January 5, 2026. *See id.*, Dkt. No. 87. The United States also filed a civil forfeiture action against property associated with Roglieri and Prime Capital including cars, watches, and the Virginia Beach House (interest in which is the subject of this appeal). *See United States v. One 2003 Ferrari Enzo AB Version E, VIN #: ZFFCZ56B000132659, et al.*, No. 1:24-CV-1345 (N.D.N.Y.). Additionally, Christian Dribusch, as Trustee of Roglieri's personal bankruptcy case, filed a voluntary Chapter 11 bankruptcy petition on behalf of Prime Capital on September 16, 2024. *See In re Prime Capital Ventures, LLC*, No. 24-11029 (Bankr. N.D.N.Y.).[1]

---

[1] In their brief, Appellants state that the Roglieri Trustee filed a voluntary Chapter 11 bankruptcy petition on behalf of Prime Capital on September 16, 2024. *See* Dkt. No. 34 at 7 n.2. Appellants explain that "[a]s a result, the Receiver is no longer a party to the instant appeal and has been replaced by Prime, which is managed by the Roglieri Trustee and represented by the law firm of Klestadt Winters Jureller Southard & Stevens, LLP." *Id.*

At that time, Dribusch was both the bankruptcy trustee in Roglieri's personal bankruptcy case and the personal representative for Prime Capital because Roglieri's estate was the sole member of Prime Capital. *See In re Prime Capital*, No. 24-11029, Dkt. No. 233 at 1. On May 6, 2025, because of a potential conflict with Dribusch's actions taken in his two roles, the bankruptcy court entered an Order to Show Cause requesting justification as to why it should not appoint a trustee over Prime Capital. *See id.* at 2-5. On May 23, 2025, following Dribusch's resignation as Trustee, a new trustee was appointed. *See In re Roglieri*, No. 24-10157, Dkt. No. 487.

At the time of this decision, Roglieri is proceeding *pro se* in his Chapter 7 personal bankruptcy case. *See id.*, Dkt. No. 479. Marianne T. O'Toole has been appointed as the Trustee in that case. *See id.*, Dkt. No. 491. Yann Geron has been appointed as the trustee for Prime Capital in the case that was filed on behalf of Prime by Dribusch. *See In re Prime Capital*, 24-11029, Dkt. No. 285. A new trustee has not been appointed in the bankruptcy case that underlies this appeal. *See In re Prime Capital*, No. 24-10531.

### III. DISCUSSION

**A.    Standard of review**

In reviewing the judgment of a bankruptcy court, a district court reviews findings of fact for clear error and conclusions of law de novo. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). A bankruptcy court's determination is "clearly erroneous when, on consideration of the record as a whole, the court is left with the definite and firm conviction that a mistake has been committed." *Hilton v. Wells Fargo Bank, N.A.*, 539 B.R. 10, 15 (N.D.N.Y. 2015) (citing *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (further citations omitted)).

**B.    Merits of Appeal**

In reviewing Appellants' motion for a stay pending appeal, the Court was tasked with considering Appellants' likelihood of success on the merits of their appeal.  *See* Dkt. No. 21 at 12, 22.  The Court considered two issues that were presented by Appellant's: (1) whether the Receiver had the authority to file the voluntary bankruptcy petition on Prime Capital's behalf; and (2) whether the Trustee's ratification of the Receiver's petition cured any deficiencies in the Receiver's initial filing.  *See id.* at 22-34; *see also* Dkt. Nos. 1, 2.  The Court concluded it was plausible that the Trustee had authority over Roglieri's estate, which included control over Prime Capital, but that the Receiver did not have authority to file the initial petition and the Trustee's ratification was likely too late to save the improper filing.  *See* Dkt. No. 21 at 33-34.

In their brief, Appellants no longer challenge the Receiver's authority to file the initial bankruptcy petition.  *See* Dkt. No. 34 at 13.  They argue only that the Trustee's subsequent ratification validated the filing.  *See id.* at 8; *see also* Dkt. No. 36 at 14 n.2.

For the reasons stated in the Court's August 15, 2024, decision, which the Court incorporates by references herein, and the additional reasons set forth below, the Court concludes that the Trustee had the authority to ratify the Receiver's filing, but that ratification would be inequitable, and therefore, should not be given effect.

### 1. Trustee's Authority to Act on Prime Capital's Behalf

The Trustee ratified the Receiver's bankruptcy filing on July 9, 2024, and did so "in his capacity as the Chapter 7 Trustee to the bankruptcy estate of [Kris] Daniel Roglieri . . . which bankruptcy estate is the sole member of Prime Capital Ventures, LLC . . . ."  Dkt. No. 27-23.  The bankruptcy court concluded that the Trustee did not have the authority to do so because, under

5

Delaware law, "'[a] person ceases to be a member of a limited liability company upon' the filing of a voluntary bankruptcy petition."  Dkt. No. 27-32 at 12 (quoting 6 Del. C. § 18-304(1)(b)) (footnote omitted).  Appellants disagree with the bankruptcy court's conclusion, whereas Appellees agree.

### a. Parties' Arguments

Appellants argue the bankruptcy court erred in its conclusion because Delaware law permits Roglieri to continue to be a member of Prime Capital, which is a single-member LLC, so long as he consents to its continuation.  *See* Dkt. No. 34 at 14 (citing 6 Del. C. § 18-304(1)(b)). Appellants also rely on federal law, 11 U.S.C. § 541 of the United States Bankruptcy Code, which they contend preempts Delaware law and provides that a bankruptcy estate consists of all property, including Roglieri's membership interest in Prime Capital.  *See id.* at 15.  Lastly, Appellants argue that if the Court were to find that Roglieri's membership interest was dissolved, then Delaware law permits a member of an LLC to consent to revocation of a dissolution.  *See id.* at 17-18.  Appellants argue that Roglieri, and then the Trustee, consented to such revocation through their actions and representations in the various court proceedings.  *See id.* at 18; *see also* Dkt. No. 38 at 8.

Appellees argue that Delaware law and Prime Capital's Operating Agreement control and result in the conclusion that Roglieri lost his interest in the LLC when he filed for personal bankruptcy and, therefore, the Trustee did not obtain management rights over the LLC.  *See* Dkt. No. 36 at 14.  Appellees contend the Operating Agreement controls unless state law overrides the contract.  *See id.* at 15.  The Operating Agreement states as follows:

> A bankruptcy of a Member, or other involuntary transfer of a
> Member's Membership Interest, shall constitute a material breach of

> this Agreement by such Member.  The creditor, transferee, or other
> claimant, shall only have the rights of an Assignee, and shall have
> no right to become a Member, or to participate in the management
> of the business and affairs of the Company as a Member or
> Manager under any circumstances.

*Id.* at 16 (quotation omitted).  Appellees argue that Roglieri breached the Operating Agreement by filing for bankruptcy which means "'the Trustee has no inherent rights 'to participate in the management of the business and affairs' of Prime Capital . . . ."  *Id.* (quoting *Ross v. Thomas*, 460 Fed. Appx. 16, 17 (2d Cir. 2012)).  Appellees state this is consistent with Delaware law which provides that a person ceases to be a member of an LLC when they file for bankruptcy.  *See id.* (quoting 6 Del. C. § 18-304).

To the extent Prime Capital is a single-member LLC, Appellees agree that Delaware law permits revocation of a dissolution, but they argue that neither Roglieri nor the Trustee attempted to resuscitate Prime Capital.  *See id.* at 17-18.  Appellees concede that resuscitation does not require a formal writing, but they assert that "the Trustee never meaningfully attempted to resuscitate the LLC—beyond the Appellants' bare citation to the Trustee's ratification of the bankruptcy filing."  *Id.* at 18 n.5.

Appellants disagree, asserting that (1) "Roglieri himself acknowledged his ongoing membership interest in the Debtor and his management authority over the Debtor (as debtor in possession) by continuing to direct the actions of the Debtor after he filed his personal bankruptcy"; and (2) "it is clear through the actions of the Roglieri Trustee that he intended to and did in fact take control of the Debtor immediately upon his appointment as the Roglieri Trustee."  Dkt. No. 38 at 4-6.  Appellants list the following actions taken by Roglieri or the Trustee as evidence of an intention to maintain control over the interest in Prime Capital:

On February 20, 2024, the Debtor and Roglieri filed a letter brief with this Court in the Receivership Case in which Roglieri asserted that he continued to own the membership interests in the Debtor, despite his bankruptcy filing. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, Case No. 1:24-cv-55 (N.D.N.Y.), Dkt. No. 144 at p. 2 ("Here, there is no dispute that Mr. Roglieri is the sole member of, and wholly owns, Prime Capital . . . .").

On February 22, 2024, in his Declaration Pursuant to Local Bankruptcy Rule 2015-2, Roglieri stated the following:

> I am a businessman and the sole owner of certain entities including: Prime Capital Ventures, LLC . . . I remain in possession of substantially all of my property and am continuing to manage my property and affairs as a debtor in possession. . . . My assets include . . . my equity holdings in the Entities [including the Debtor]. *See* Doc. No. 28, Exhibit 5, ¶¶ 2–3, 14.

On March 7, 2024, the Debtor (through Roglieri as debtor in possession) filed an opposition to the motion of CoNextions Medical Inc. to intervene in the Receivership Case. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, Case No. 1:24-cv-55 (N.D.N.Y.), Dkt. No. 147.

On March 22, 2024, Roglieri filed his Schedules of Assets and Liabilities and Statement of Financial Affairs, wherein he listed his 100% ownership in the Debtor as an asset of his bankruptcy estate. *See* Doc. No. 28, Exhibits 22 and 23.

On April 12, 2024, Roglieri signed and filed the Official Form 426, Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest, wherein Roglieri verified that he was the sole owner of the Debtor. *See* Doc. No. 29, Exhibit 11. . . .

On May 31, 2024, the Roglieri Trustee filed a letter withdrawing the motion filed by Hogan Lovells US LLP, purportedly acting on behalf of the Debtor, to dismiss Case 2. *See* Doc. No. 27, Exhibit 7. In his letter, the Roglieri Trustee stated the following:

> I am the Chapter 7 Trustee to the bankruptcy estate of Kris Daniel Roglieri (24-10157). The Roglieri bankruptcy estate

is the sole (100%) member of Prime Capital Ventures, LLC which is 11 U.S.C. §541 property of Mr. Roglieri's individual bankruptcy estate.  As the legal representative of the Roglieri bankruptcy estate which is the sole member of Prime Capital Ventures, LLC, I am withdrawing the motion by Prime Capital Ventures, LLC to dismiss its bankruptcy case.  *Id.*

Additionally, at the hearing on July 17, 2024[,] to consider the motion to dismiss filed by the Appellees, the Appellees asserted that the requirements for ratification under Delaware law had not been satisfied.  *See* Doc. No. 27, Exhibit 36, p. 33, L1 to p. 34, L6.  In response, the Roglieri Trustee made it clear that he had satisfied the necessary requirements:

> I wanted to address the -- again, with respect to the property, the estate issue.  And, Your Honor, the Delaware -- I -- first of all, I'm the trustee, and I've done the due diligence with respect to the Delaware law and the LLC.  And the distinction that counsel's not drawing that is that in that instance of a multi-member LLC, the treatment's different than in a single-member LLC.  And when it's a single-member LLC, that authority is with the with the bankruptcy estate and the trustee.
>
> And quite frankly, this issue was raised in the Roglieri case when I sought that motion with respect to the turnover -- that supplemental.  I provided the Court two pages of string cites with respect to that particular issue, including this type of law.
>
> So it's clear that in a single-member LLC scenario -- unlike a multi-member LLC scenario, which I can see it is different -- but in a single-member LLC scenario, there is no question that the bankruptcy estate has the management authority on that.  And there is a ton of case law, as reflected in the motion that I -- it was -- and I believe counsel participated, or at least listened in, when we had that motion in the Roglieri case.  So, again, I think that's a red herring with respect to this issue.  *See* Doc. No. 27, Exhibit 36, p. 36, L1:23.

Dkt. No. 38 at 5-7.

As to Appellees' reliance on Prime Capital's Operating Agreement, Appellants argue that the Agreement conflicts with U.S. Bankruptcy Code, which is impermissible because a party cannot contract around the law. *See* Dkt. No. 34 at 19. However, Appellees maintain the Bankruptcy Code does not preempt Delaware law or change the Operating Agreement because Delaware is the go-to location for corporate law and deference to those courts "respects the significant interests that Delaware has in the uniform enforcement of its favorable limited liability laws while recognizing the bankruptcy interests that Congress identified in Section 541." Dkt. No. 36 at 21.

Finally, Appellees argue that even if the Trustee's ratification was effective, the Court should not give it retroactive effect because such a conclusion would inequitably strip B&R of its rights. *See* Dkt. No. 36 at 23. Appellees state that if the Trustee's ratification is given effect, B&R will lose certain property rights in the Virginia Beach house. *See id.* Specifically, Appellees assert that if the Trustee's ratification does not take effect, B&R's "lien is no longer subject to the preference attack by the Trustee and thus can't be avoided by the Prime Capital bankruptcy estate under 11 U.S.C. § 547(b)." *Id.* at 24. This is because, pursuant to § 547(b) of the Bankruptcy Code, "[a] transfer made *more* than 90 days before a bankruptcy was filed thus can't generally be avoided as a preference." *Id.* Appellees state that "[i]f the Appellants' [] view of ratification is adopted, B&R goes from a secured creditor not subject to a preference action to a secured creditor that will inevitably face such a preference action" which would constitute "a plain 'diminution of the rights or other interests' that B&R possesses." *Id.* at 25 (quoting RESTATEMENT (SECOND) OF AGENCY § 101). Appellees argue that such a result would create a "detrimental effect of encouraging parties to do as the Receiver did here: file unauthorized

10

'placeholder' bankruptcy petitions in the hope that the lack of authority will go unnoticed or, if noticed, be somehow 'cured' or 'ratified' at some unspecified later point in time." *Id.* at 26 (quotation omitted).

### b. *Analysis*

It is true, as the bankruptcy court held and Appellees argue, that pursuant to Delaware law, "[a] person ceases to be a member of a limited liability company upon the happening of any of the following events: . . . b. Files a voluntary petition in bankruptcy[.]" 6 Del. C. § 18-304(1)(b); *see also* Dkt. No. 27-32 at 12; Dkt. No. 36 at 16. As explained by Appellees, Prime Capital's Operating Agreement closely tracks this language, stating that the bankruptcy filing "of a member" "shall constitute a material breach of this Agreement" and that individual "shall have no right . . . to participate in the management of the business and affairs of the Company as a Member or Manager under any circumstances." Dkt. No. 36 at 16.

Read in isolation, section 18-304(1) and the Operating Agreement support the conclusion that Roglieri ceased to have any membership interest in Prime Capital the moment he voluntarily filed for bankruptcy. However, as Appellants note, and this Court acknowledged in its Augst 15, 2024, Memorandum-Decision and Order, membership in an LLC ceases upon the filing of a voluntary bankruptcy action "[u]nless otherwise provided in a limited liability company agreement, *or with the consent of all members*[.]" 6 Del. C. § 18-304(1) (emphasis added); *see also* Dkt. No. 34 at 14; Dkt. No. 21 at 27-28. Appellants argue that Roglieri, as the sole member of Prime Capital, consented to its continuance. *See* Dkt. No. 34 at 14.

Both parties also acknowledge that under section 18-806(3), "Delaware law allows revocation of dissolution if 'the personal representative of the last remaining member agrees to

continue the limited liability company.'"  Dkt. No. 36 at 17 (quoting 6 Del. C. § 18-806(3)); *see also* Dkt. No. 34 at 18.

In Appellees' brief, they assert that "[w]hen the lone member of a single member Delaware LLC declares for bankruptcy, the LLC is dissolved by operation of law unless a personal representative 'resuscitates' the LLC by 'agree[ing] in writing to the admission of the personal representative of such member or its nominee or designee to the limited liability company as a member.'"  Dkt. No. 36 at 17-18 (quoting *In re Modanlo*, No. 06-CV-1168, 2006 WL 4486537, *5 (Bankr. D. Md. Oct. 11, 2006)) (additional quotation and quotation marks omitted).  Appellees acknowledge, however, that "Section 18-806 has subsequently been amended to delete the writing requirement." *Id.* at 18 n.5.  They concede as such in a footnote of their brief.  *See id.*

Under the current state of the law, Roglieri was not required to agree to continue Prime Capital "in writing."  Rather,

> [a]t any time there are no members; provided, that the limited liability company is not dissolved and is not required to be wound up if: . . .
>
> > a. Unless otherwise provided in a limited liability company agreement, within 90 days or such other period as is provided for in the limited liability company agreement after the occurrence of the event that terminated the continued membership of the last remaining member, *the personal representative of the last remaining member agrees to continue the limited liability company*.

6 Del. Code Ann. § 18-801(a)(4)(a) (emphasis added).  Likewise,

> the limited liability company shall not be dissolved and its affairs shall not be wound up if, prior to the filing of a certificate of cancellation in the office of the Secretary of State, the limited

liability company is continued, effective as of the occurrence of such event: . . .

> (3) In the case of dissolution effected by the occurrence of an event that causes the last remaining member to cease to be a member, pursuant to the vote *or consent of the personal representative of the last remaining member of the limited liability company* or the assignee of all of the limited liability company interests in the limited liability company (and the approval of any other persons whose approval is required under the limited liability company agreement to revoke a dissolution contemplated by this paragraph).

6 Del. Code Ann. § 18-806(3) (emphasis added).

Appellees argue that "the Trustee [] never meaningfully attempted to resuscitate the LLC—beyond the Appellants' bare citation to the Trustee's ratification of the bankruptcy filing." Dkt. No. 36 at 18 n.5. Yet, Appellees do not acknowledge that, after Roglieri filed for bankruptcy, Prime Capital filed a letter stating Roglieri was the sole member of the company, Roglieri filed a declaration stating he was the sole owner of Prime "and am continuing to manage my property and affairs as a debtor in possession," and Roglieri filed documents in bankruptcy court indicating his sole ownership of Prime Capital. Dkt. No. 38 at 5-6 (citing *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, No. 1:24-CV-55 (N.D.N.Y.), Dkt. No. 144 at 2; Dkt. No. 28-5 at ¶¶ 2-3, 14).

As to the Trustee, Appellees argue that none of the Trustee's actions occurred within 90 days of Roglieri filing for bankruptcy, which is a requirement under section 18-801(a)(4)(a). *See* Dkt. No. 36 at 18 n.5. However, section 18-806(3) does not have a 90-day time limit on revoking dissolution through "consent of the personal representative of the last remaining member of the limited liability company." 6 Del. Code Ann. § 18-806(3). As Appellants explain, the Trustee asserted his intention to exercise control of Prime Capital's affairs. *See* Dkt. No. 38 at 6-7 (citing

Dkt. No. 27-7; Dkt. No. 27-36 at 36).  For example, only two weeks after the Receiver filed the bankruptcy petition, on May 31, 2024, the Trustee filed a letter stating he was "the Chapter 7 Trustee to the bankruptcy estate of Kris Daniel Roglieri (24-10157).  The Roglieri bankruptcy estate is the sole (100%) member of Prime Capital Ventures, LLC which is 11 U.S.C. §541 property of Mr. Roglieri's individual bankruptcy estate."  Dkt. No. 38 at 7 (quotation omitted).  The Trustee "[a]s the legal representative of the Roglieri bankruptcy estate which is the sole member of Prime Capital Ventures, LLC" withdrew a motion filed by Prime Capital.  *Id.*  Roglieri's actions, which occurred within 90 days of his filing for bankruptcy, and the Trustee's actions thereafter, clearly indicate an intention to continue membership in Prime Capital.

However, even if neither Roglieri nor the Trustee "agreed to continue the limited liability company," 6 Del. C. §§ 18-801(a)(4)(a), 18-806(3), and Roglieri ceased to be a member of Prime Capital under Delaware law, then § 541 of the Bankruptcy Code protects Roglieri's interest in Prime Capital.

As stated in this Court's previous decision, "[n]umerous courts across the country have concluded [that] '[w]here the bankruptcy estate in a Chapter 7 bankruptcy has a membership interest in a single-member LLC, the trustee controls the LLC.'"  Dkt. No. 21 at 29 (quoting *In re B & M Land & Livestock, LLC*, 498 B.R. 262, 266 (D. Nev. 2013); citing *In re A-Z Elecs., LLC*, 350 B.R. 886, 890 (D. Idaho 2006) ("[T]he difference between a single-member LLC and a multi-member LLC . . . [is that] 'there are no other members in the LLC, . . . the Debtor's bankruptcy filing effectively assigned her entire membership interest in the LLC to the bankruptcy estate, and the Trustee obtained all her rights, including the right to control the management of the LLC'"); *In re Modanlo*, 2006 WL 4486537, at *10; *In re Cleveland*, 519 B.R. 304, 306-07 (D. Nev. 2014); *In*

*re Chatha*, No. 17-25335-B-7, 2022 WL 4101292, *2 (Bankr. E.D. Cal. Sept. 6, 2022); *In re*

*Fontenot*, No. 20-50588, 2023 WL 3047842, *5 (Bankr. W.D. La. Apr. 20, 2023)); *see also In re*

*Dzierzawski*, 528 B.R. 397, 410 (E.D. Mich. 2015) ("In their arguments, the Debtor and Vulpina

both assume that if the Chapter 7 Debtor in this case is established as the sole member of this

LLC, the Chapter 7 Trustee could step into the Debtor's shoes as the sole member of the LLC, and

exercise the Debtor's rights to control the management of the LLC. . . .  [T]hese assumptions

appear to reflect a correct view of the law") (collecting cases).

Additionally, "cases have concluded that state law and/or an operating agreement can be

preempted by § 541 of the Bankruptcy Code where the issue concerns 'termination or

modification of an interest solely due to a debtor's bankruptcy.'" Dkt. No. 21 at 30 (quoting *In re*

*Prebul*, No. 1:11-CV-214, 2012 WL 5997927, *11 (E.D. Tenn. Nov. 30, 2012)); see *also In re*

*Woodfield*, 602 B.R. 747, 756 (D. Or. 2019); *In re Warner*, 480 B.R. 641, 647, 656 (N.D. W. Va.

2012); *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (W.D. Ark. 2011); *In re*

*Envision Healthcare Corp.*, 655 B.R. 701, 711-12 (Bankr. S.D. Tex. 2023).

In *Envision*, the court held "Section 18-304 of the [Delaware] Act directly conflicts with,

and must give way to, § 541 of the Bankruptcy Code." *Envision*, 655 B.R. at 712.  Appellants

rely on the *Envision* case to support its argument that § 541 preempts the Delaware laws at issue.

*See* Dkt. No. 34 at 17.  Appellants are correct that a bankruptcy court in the Southern District of

Texas "clarified 'that a member of a Delaware LLC who starts a bankruptcy case keeps all legal

and equitable interests in the LLC that it held as of the commencement of the case.'" *Id.* (quoting

*Envision*, 655 B.R. at 711).

Appellees do not attempt to distinguish the facts of the case or the holding from *Envision*. *See* Dkt. No. 36 at 22. Rather, Appellees state that Appellants "rely heavily on a lone decision from the Southern District of Texas's bankruptcy court that decided Section 18-304 was preempted, but ignore the many other cases reaching the opposite conclusion. . . . And again, it's well known that 'Delaware is a popular state for incorporation because of its favorable business laws.'" *Id.* (citing *Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650, 657 (Wash. 2015); quoting *Tse v. Apple Computer, Inc.*, No. 05-CV-2149, 2006 WL 2583608, *6 (D. Md. Aug. 31, 2006)). Appellees contend that, "[a]s courts have recognized, 'Delaware's judiciary are recognized as specialists in the field of corporate law. Courts of other states consider the decisions of Delaware courts on corporate matters to be instructive.'" *Id.* (quoting *McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399, 409 (6th Cir. 2006)). "Consequently, one Texas bankruptcy decision—barely a year old—shouldn't be allowed to upset Delaware business laws as interpreted by Delaware courts." *Id.*

The Court is aware that "many courts . . . look to the views of Delaware's learned jurists when analyzing issues of corporate law." *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 206 (S.D.N.Y. 2009), *aff'd sub nom. RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 Fed. Appx. 337 (2d Cir. 2011); *see also Sealed Filer v. Priaulx*, No. 4:22-CV-01310, 2023 WL 4144734, *4 (S.D. Tex. Mar. 31, 2023) ("[C]ourts across the United States, look to Delaware's well-developed corporate law"); *United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 163 n.14 (E.D.N.Y. 2018). However, this deference to the Delaware judiciary's expertise does not automatically answer the preemption question posed by Appellants.

Appellees cite *Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650 (Wash. 2015) as "reaching the opposite conclusion" of *Envision*'s conclusion that "Section 18-304 was preempted." Dkt. No. 36 at 22. In *Northwest Wholesale*, the Supreme Court of Washington held that Bankruptcy Code §§ 541 and 365 did not preempt the Washington Limited Liability Company Act's dissociation provision. *See Nw. Wholesale*, 357 P.3d at 663. The court stated that "'[a]lthough the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.'" *Id.* at 656 (quoting *In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000); citing *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998)). The court distinguished a case from the Ninth Circuit which "held that under § 541(a) all of the debtor's rights devolved to the estate and into the hands of the trustee, including the right to manage and control the LLC." *Id.* at 657 (citing *In re First Protection, Inc.*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010)). "On the one hand, such holding arguably made practical sense in that the decision addressed a single-member LLC and, thus, there were no other members to manage the LLC if the trustee could not do so, nor were there any other nondebtor members' interests to be considered and protected." *Id.*

However, the court expressed concern for the Ninth Circuit's holding, explaining that the Ninth Circuit "acknowledged the *Butner* rule—that a debtor's interest is determined by state law—but failed to apply that rule. The court acknowledged that a state statute specifically defined an LLC member's interest as 'a member's share of the profits and losses' of the LLC and the right to receive distributions of [LLC] assets." *Id.* at 658 (quotation and quotation marks omitted). The court explained that "[n]evertheless, the [*First Protection*] court applied § 541(a)'s

17

language, all legal or equitable interest in the bankruptcy estate, broadly to include not just the interest as above defined by state law but also to include management rights." *Id.* The *Northwest Wholesale* court stated that "[s]uch expansive use of § 541(a) to define a debtor's interest is contrary to the Ninth Circuit's analysis in *Farmers*." *Id.* (citing *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) (holding that § 541(a) addresses only the transfer of debtor's interest to the estate and is "irrelevant" as to the threshold determination of the existence and scope of the debtor's interest)). "As this portion of the *First Protection* decision does not adhere to *Butner*, does not follow Ninth Circuit precedent, and is contrary to the presumption against preemption that this court applies," the *Northwest Wholesale* court did "not find this portion of *First Protection* persuasive." *Id.*

In *Northwest Wholesale*, the court was discussing §§ 365 and 541 of the Bankruptcy Code and preemption through the lens of its own prior instruction that it "applies a strong presumption against finding preemption [of State law] in an ambiguous case. . . . State laws are not superseded by federal law unless that is the clear and manifest purpose of Congress." *Id.* at 654 (quotations and quotation marks omitted). That court explained that "[e]ven if there is an express preemption clause, this court will give it a 'fair but narrow reading.'" *Id.* at 654-55 (quotations omitted).

The Southern District of New York has noted that "the federal interest in Section 541(c) of the Bankruptcy Code, which is at issue here, is notably different for preemption purposes than Section 365 of the Bankruptcy Code, which was at issue in . . . *Nw. Wholesale*." *In re All Year*, 648 B.R. at 457. "Section 365, for example, does not permit assumption of personal services executory contracts." *Id.* (footnote omitted). "*Nw. Wholesale* also concluded that under Section 365, 'applicable law excuses a party, other than the debtor [, i.e., the nondebtor members], . . .

from accepting performance from or rendering performance to . . . an assignee.'" *Id.* (quoting *Nw. Wholesale*, 357 P.3d at 662). "[T]hose Section 365 considerations are not present" where the company "is a single-member LLC, and Section 541 vests in the bankruptcy estate all legal and equitable interests of the debtor (which includes membership interests)." *Id.*

The Second Circuit has also instructed that "[o]nce a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale preemption of state laws regarding creditors' rights." *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 82 (2d Cir. 2019) (citing *Eastern Equip. and Servs. Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117, 120 (2d Cir. 2001) ("The United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights"); *In re Miles*, 430 F.3d 1083, 1091 (9th Cir. 2005) ("Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust all of the rights and duties of creditors and debtors alike")).

As such, courts in the Second Circuit have concluded that "Section 541(c) of the Bankruptcy Code commands that a debtor's interest in property becomes property of the estate 'notwithstanding any provision in . . . applicable nonbankruptcy law' that either (A) 'restricts or conditions transfer of such interests by the debtor' or (B) 'is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.'" *In re All Year Holdings Ltd.*, 648 B.R. 434, 456 (S.D.N.Y. 2022) (quoting 11 U.S.C. § 541(c)(1); citing *In re S.W. Bach & Co.*, 435 B.R. 866, 877 (Bankr. S.D.N.Y. 2010)). The Second Circuit has stated that "[i]t is hard to imagine language that more clearly and expressly preempts [a] reading of [New

York law] to restrict the transfer of [] membership interest and require 'forfeiture, modification, or termination' of the membership interest solely because of [the company's] filing for bankruptcy." *Id.* Therefore, "as the bankruptcy court held, not only is there is no presumption against preemption in matters concerning bankruptcy, but Section 541(c) expressly preempts conflicting state laws." *Id.*

"Bankruptcy courts reviewing a prior version of [New York laws] and similar state laws have held that such laws cannot be read to terminate or modify LLC membership interests solely due to a bankruptcy filing, as the law would then act to 'deprive the trustee of that interest.'" *In re All Year*, 648 B.R. at 456 (quoting *In re Prebul*, 2012 WL 5997927, at *10-11 (finding that the trustee succeeded to all of debtor's rights "including those as a member" of an LLC, that section 701 "was rendered inapplicable here because it would modify or terminate" the debtor's interest in an LLC, and that, therefore, section 541 of the Bankruptcy Code "renders inapplicable termination or modification of an interest solely due to a debtor's bankruptcy"); citing *In re Dixie* , 474 B.R. at 701; *In re Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995); *In re Klingerman*, 388 B.R. 677, 678 (Bankr. E.D.N.C. 2008)); *see also In re Garcia*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013) ("[W]hen a member of an LLC files a bankruptcy petition, his interest in the LLC, and any rights he has under the LLC's operating agreement, becomes property of the estate"); *In re B & M Land & Livestock, LLC*, 498 B.R. 262, 267 (Bankr. D. Nev. 2013) ("[W]here a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee's rights automatically include the right to manage that entity.  A trustee need not take further specific actions to comply with state law before exercising management functions"); *In re Thomas*, No. 16-27850, 2020 WL 2569993, *9

(Bankr. W.D. Tenn. May 8, 2020) ("[U]pon the filing of the Debtor's bankruptcy petition, his membership interest in TI Properties became property of his bankruptcy estate notwithstanding the attempt by the Tennessee Revised Act to prevent that result. . . .  This conclusion is consistent with the reported decisions concerned with governance of a single-member limited liability company when the sole member files a bankruptcy petition.  "[T]he trustee in bankruptcy [or debtor in possession] is the only person who can assure that management rights are exercised for the benefit of the estate and its creditors") (collecting cases); *In re Chatha*, No. 17-25335, 2022 WL 4101292, *7 (Bankr. E.D. Cal. Sept. 6, 2022) ("By virtue of his 100% interest in the entity, the chapter 7 trustee has complete control over MOH and its assets"); *In re Cleveland*, 519 B.R. 304, 306 (D. Nev. 2014) ("Numerous bankruptcy courts have held, and the Court agrees, that where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control").

Additionally, "[t]he clear lack of Congressional intent to preempt [certain] state law[s regarding] . . . property of the estate is even more telling given the explicit language that Congress uses when it intends to displace state nonbankruptcy law in other provisions of the Bankruptcy Code." *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997); *see also In re Trib. Co. Fraudulent Conv. Litig.*, 499 B.R. 310, 319 (S.D.N.Y. 2013), *aff'd on other grounds*, 818 F.3d 98 (2d Cir. 2016), *opinion vacated and superseded*, 946 F.3d 66 (2d Cir. 2019), *and aff'd on other grounds*, 946 F.3d 66 (2d Cir. 2019) ("Congress's *explicit* preemption of all creditors' state-law claims in one section of the Code undermines the suggestion that Congress

intended to *implicitly* preempt state-law claims only two sections later").  One such provision in the Bankruptcy Code where Congress indicated a clear intent to preempt state laws is § 541 which states that "an interest of the debtor in property becomes property of the estate . . . *notwithstanding any provision in . . . applicable nonbankruptcy law* (A) that restricts or conditions transfer of such interest by the debtor . . ." 11 U.S.C. § 541(c)(1).

"Congress' intention [in creating § 541 is] to 'bring anything of value that the debtors have into the estate.'" *In re Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) (quoting H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 176, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6136).  "The Bankruptcy Code disapproves of statutory and contractual provisions which are triggered by the commencement of a bankruptcy case." *In re Warner*, 480 B.R. at 655 (citing *In re W.R. Grace & Co.*, 475 B.R. 34, 152 (D. Del. 2012); *In re Railway Reorganization Estate, Inc.*, 133 B.R. 578, 583 (Bankr. D. Del. 1991)).  "In particular, § 541(c) was promulgated to 'invalidate restrictions on the transfer of property of the debtor, in order that all the interests of the debtor in property will become property of the estate.'" *Id.* (quoting H.R. Rep. No. 595, 95th Cong. 1st Sess. 368-69 (1977)).

Appellees are correct that "[w]hether the debtor has a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (quoting *Butner v. United States*, 440 U.S. 48, 54 (1979)); *see also* Dkt. No. 36 at 15.  However, "[a]ny property of the debtor upon which a judgment creditor might obtain a lien under state law flows to the bankruptcy estate." *Id.*  And Roglieri and the Trustee did consent to the continuation of Prime Capital which revokes potential dissolution of an LLC under Delaware law.

As to Prime Capital's Operating Agreement, Appellees ask the Court to accept the plain meaning of this provision despite the fact that acceptance of the plain meaning would result in their being no members of the single-member LLC and, therefore, no one to manage its affairs. *See* Dkt. No. 36 at 16 n.3. They also argue that Appellants' reliance on "other courts [that] have concluded that a trustee automatically succeeds to the rights of a single member LLC under other states' laws is of no moment here." *Id.* at 18.

Appellees are incorrect. Appellants citations are relevant and persuasive because the cases, although not interpreting Delaware laws, interpret similar laws that would strip a debtor of his interest in an LLC through the filing of bankruptcy. *See* Dkt. No. 34 at 19-20. For example, in *In re Dixie Mgmt. & Inv., Ltd. Partners*, the district court concluded that § 541 preempted Arkansas state law and overrode an operating agreement which stated that "a person ceases to be a member of the LLC upon the occurrence of one of six events of disassociation. One of the enumerated events is a 'voluntary or involuntary action indicating bankruptcy, insolvency, liquidation, reorganization or arrangement for relief from debt.'" 474 B.R. at 701 (quotation omitted). "Similarly, under the Arkansas Code, a person ceases to be a member of an LLC when the member '[f]iles a voluntary petition in bankruptcy.'" *Id.* (quoting Ark. Code. Ann. § 4-32-802(a)(4)(B) (Repl. 2001)).

The court held "that the [operating agreement's] language regarding the alleged disassociation of a member based on the filing of its bankruptcy petition is in contravention of the bankruptcy code, specifically, § 541(c)(1), and, therefore, is ineffective." *Id.* It also concluded that "under the Supremacy Clause of the United States Constitution, the Court holds that the Arkansas statute that recognizes the disassociation of a member upon the filing of a voluntary

petition in bankruptcy is not enforceable because it is in conflict with federal law." *Id.* (citation

omitted); *see also In re Warner*, 480 B.R. at 654 ("[T]he Operating Agreement requires that [the]

Farm dissolve because the Debtor filed for bankruptcy" but "§ 541(c)(1) invalidates § 10(a)(ii) of

the Operating Agreement and renders it unenforceable").

The Arkansas laws and the terms of the operating agreement at issue in *Dixie*

*Management* are similar to the Delaware laws and terms of the Operating Agreement at issue in

this case.  Likewise, the operating agreement in *Warner* contemplated the same outcome as Prime

Capital's Operating Agreement.  Therefore, those courts conclusions are helpful to this Court's

decision making.  Those courts concluded that the operating agreements could not be enforced.

Based on the foregoing, the Court concludes that the bankruptcy court erred in concluding

that the Trustee did not have authority to ratify the Receiver's filing for bankruptcy on Prime

Capital's behalf.  When Roglieri filed for bankruptcy, his rights in Prime Capital as a single-

member LLC became property of the bankruptcy estate under 11 U.S.C. § 541.  Prime Capital's

Operating Agreement and Delaware law contradict Congress' intention in promulgating § 541,

which brings all of a debtor's property into the estate, including membership interest in a single-

member LLC.  And, in any event, Roglieri and the Trustee consented to the continuation of Prime

Capital under Delaware law.  Therefore, this aspect of the bankruptcy court's order is vacated.

The next issue is whether the Trustee's ratification was effective.

### 2. Trustee's Ratification

In the bankruptcy court's decision, it noted that "[a]t the hearing on the Motion, the B&R

Parties raised the argument that the Trustee's ratification is invalid because he did not have such

authority on the date that Prime's bankruptcy was filed. . . . While this argument appears valid,

further analysis is unnecessary since Roglieri's membership interest ceased to exist upon the filing of his personal bankruptcy." Dkt. No. 27-32 at 12 n.8.

Appellants argue the Trustee's ratification was effective because "[a]ll that is needed for ratification under Delaware law is knowledge of the material facts and evidence of the ratification, which can be either implied by conduct or expressed by words. . . . Each of these elements is clearly met in the Roglieri Trustee Ratification." Dkt. No. 34 at 23. Specifically, Appellants contend the Trustee expressly stated an awareness of the facts underlying the bankruptcy petition and the "[r]atification itself is evidence of the Roglieri's Trustee's express ratification." *Id.* at 23-24.

Appellees do not dispute either of Appellants' points, that (1) the Trustee was aware of the material facts and evidence of ratification and (2) did ratify the bankruptcy filing. *See generally* Dkt. No. 36. Rather, Appellees argue that the ratification should not be given retroactive effect because "[i]t severely and irrevocably impairs B&R's otherwise unassailable property rights." *Id.* at 23. Appellees contend that if the ratification is given effect, its lien on the Virginia Beach house would be subject to a preference action by the Trustee. *See id.* at 24. They explain that their lien would not otherwise be "subject to avoidance as a preference" under 11 U.S.C. § 547(b)(4)(A). *Id.* Essentially, "[i]f the Appellants' unfettered view of ratification is adopted, B&R goes from a secured creditor *not subject to a preference action* to a secured creditor that will *inevitably* face such a preference action . . . ." *Id.* at 25.

In their reply, Appellants aver that Appellees' argument regarding a preference action is hypothetical and not an appropriate justification for rejecting the Trustee's ratification. *See* Dkt. No. 38 at 12. Appellants state that "the Roglieri Trustee may never commence a preference

action against the Appellees." *Id.* Appellants also note that the Virginia Beach house has been named in the civil forfeiture action presently pending before this Court; therefore, "the B&R Judgment Lien may be stripped by the civil forfeiture complaint, which would preclude the Debtor from filing a preference avoidance action against the Appellees." *Id.* at 13.

The Supreme Court has explained that "[t]he intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made.'" *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994) (quoting *Cook v. Tullis*, 85 U.S. (18 Wall.) 332, 338 (1874)) (emphasis omitted); *see also Zoetis, Inc. v. Boehringer Ingelheim Vetmedica, GmbH*, No. 21-CV-8319, 2022 WL 17586092, *3 (S.D.N.Y. Dec. 12, 2022) ("[E]ven though parties generally may be able to contract to retroactively affect their own obligations, they may not ratify past actions to the detriment of a third party") (citations omitted).

The Second Circuit has reiterated "the well settled rule that ratification does not date back to destroy intervening rights of third persons or otherwise to achieve an inequitable result." *Pape v. Home Ins Co.*, 139 F.2d 231, 235 (2d Cir. 1943) (collecting cases); *see also Cook v. Tullis*, 85 U.S. 332, 341 (1873) (explaining that a bankruptcy trustee "took the property of the bankrupt subject to all legal and equitable claims of others").

In their reply, Appellants argue that Appellees' contentions concern "a hypothetical preference action" because "the Roglieri Trustee may never commence a preference action against the Appellees." Dkt. No. 38 at 12. Yet, in their initial brief, Appellants admit to Appellees' fear, stating as follows:

> The precipitating cause of the Receiver filing Case 2 for the Debtor
> was the need to commence proceedings within the 90-day
> preference period under section 547 of the Bankruptcy Code in
> order to be able to avoid the B&R Judgment Lien against the
> Virginia Beach House and preserve its value for the benefit of all of
> the Debtor's creditors.

Dkt. No. 34 at 10-11.

Appellants argue that Appellees' potential defense to a hypothetical preference avoidance action is not ripe and should be raised at a later time. *See* Dkt. No. 38 at 13. However, Appellants do not acknowledge the case law stating that ratification cannot be used to strip a third-party of its rights. *See id.* That is precisely what the Receiver and Trustee are attempting to do. *See* Dkt. No. 34 at 10-11; *see also In re Tronox Inc.*, 503 B.R. 239, 267 (Bankr. S.D.N.Y. 2013) ("Backdating cannot be used . . . if it has an improper effect, such as compromising the rights of third parties") (citing *SEC v. Solucorp Industries, Ltd.*, 197 F. Supp. 2d 4, 11 (S.D.N.Y. 2002); *Jeffrey Kwall & Stuart Duhl, Backdating*, 63 BUS. LAW. 1153, 1159, 1169-1171 (2008)).

This Court, therefore, entirely agrees with the bankruptcy court's statements and conclusion as follows:

> To permit this case to continue would be for the Court to sanction
> misuse of the Bankruptcy Code. Every subsequent act or
> proceeding in this case would be overshadowed by its impropriety.
> All work performed and progress made by the parties would be in a
> constant state of uncertainty as the case's flawed foundation
> threatens to topple what is built upon it.
>
> Many creditors have already initiated litigation against Prime to
> recover moneys owed. There is no risk of Prime flagrantly
> diminishing its assets in the interim as they remain under the control
> of the Receiver.
>
> The Court is aware that a properly filed bankruptcy benefits
> creditors in the aggregate as it allows for a more even distribution

of assets in satisfaction of debts owed.  However, it is clear to the
Court that the current bankruptcy case is untenable.

Dkt. No. 27-32 at 13-14.

Although the Trustee had authority to ratify the Receiver's bankruptcy filing, the Receiver

took the action "in order to be able to avoid the B&R Judgment Lien against the Virginia Beach

House and preserve its value for the benefit of all of the Debtor's creditors," Dkt. No. 34 at 10-11,

despite having zero authority to do so.  The Court declines to give effect to a ratification that

would strip a third-party of its rights.  This aspect of the bankruptcy court's Order is affirmed.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the appeal (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the bankruptcy court Order is **AFFIRMED in part and VACATED in
part**; and the Court further

**ORDERS** that the Clerk of the Court shall remand this case to the bankruptcy court; and
the Court further

**ORDERS** that the bankruptcy court shall dismiss the bankruptcy court action for the

reasons sets forth herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 20, 2025
        Albany, New York

Mae A. D'Agostino
U.S. District Judge